**Hearing Date and Time: November 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: November 6, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Scott J. Greenberg

- and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                   :
In re:                                             :    Chapter 11
                                                   :
NII Holdings, Inc., <u>et al.</u>,[1]              :    Case No. 14-12611 (SCC)
                                                   :
                              Debtors.             :    (Jointly Administered)
                                                   :
------------------------------------------------------------x

## NOTICE OF APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTIONS 327(a), 328, 330, 331 AND 1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND 2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1, FOR AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND <u>ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO OCTOBER 23, 2014</u>

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); and NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA 20190.

**PLEASE TAKE NOTICE** that a hearing on the *Application of Debtors and Debtors in Possession, Pursuant to Sections 327(a), 328, 330, 331 and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b) and Local Bankruptcy Rules 2014-1 and 2016-1, for an Order Authorizing Them to Retain and Employ McKinsey Recovery & Transformation Services U.S., LLC as Turnaround Advisor to the Debtors Nunc Pro Tunc to October 23, 2014* (the "Application") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"), One Bowling Green, Courtroom No. 623, New York, New York 10004, on **November 13, 2014, at 10:00 a.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief sought in the Application must be made in writing, with a hard copy to Chambers, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York and be filed with the Bankruptcy Court and must be served on: (a) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Susan D. Golden, Esq. and Brian Masumoto, Esq.); (b) the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 1000, Reston, VA  20190 (Attn:  General Counsel); and (c) Jones Day, 222 East 41st Street, New York, New York  10017 (Attn:  Scott J. Greenberg, Esq. and George R. Howard, Esq.), not later than **4:00 p.m. (Eastern Time) on November 6, 2014** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only those objections that are timely filed, served, and received will be considered at the hearing.  If no objections are timely filed and served with respect to the Application, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form attached to the Application, which

order shall be submitted and may be entered with no further notice or opportunity to be heard

offered to any party.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Application may be obtained

from the Court's website at http://ecf.nysb.uscourts.gov or, free of charge, at

http://cases.primeclerk.com/nii/.

Dated:  October 23, 2014               Respectfully submitted,
        New York, New York

                                   /s/  Carl E. Black
                                 Scott J. Greenberg
                                 JONES DAY
                                 222 East 41st Street
                                 New York, New York  10017
                                 Telephone:  (212) 326-3939
                                 Facsimile:  (212) 755-7306

                                 - and -

                                 David G. Heiman (admitted *pro hac vice*)
                                 Carl E. Black (admitted *pro hac vice*)
                                 JONES DAY
                                 North Point
                                 901 Lakeside Avenue
                                 Cleveland, Ohio  44114
                                 Telephone:  (216) 586-3939
                                 Facsimile:  (216) 579-0212

                                 ATTORNEYS FOR DEBTORS AND
                                 DEBTORS IN POSSESSION

Hearing Date and Time: November 13, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: November 6, 2014 at 4:00 p.m. (Prevailing Eastern Time)

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Scott J. Greenberg

- and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
NII Holdings, Inc., <u>et al.</u>,[1]                        :    Case No. 14-12611 (SCC)
                                                             :
                    Debtors.                                 :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

## APPLICATION OF DEBTORS AND
## DEBTORS IN POSSESSION, PURSUANT
## TO SECTIONS 327(a), 328, 330, 331 AND 1107(b) OF THE
## BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND
## 2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1, FOR
## AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY
## RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND
## ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO OCTOBER 23, 2014

---

[1]     The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S.
taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International
(Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII
Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l.
(N/A); and NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International
(Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The
location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street,
Suite 1000, Reston, VA 20190.

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

NII Holdings, Inc. ("NII Holdings") and twelve of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully

represent as follows:

## **Background**

1.      On September 15, 2014 (the "Petition Date"), certain of the Debtors

(the "Original Debtors") commenced these cases by filing voluntary petitions for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 8, 2014,

four of the Original Debtors' affiliates also filed chapter 11 bankruptcy petitions in this District.

All of the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are

being administered jointly.

2.      On September 29, 2014, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors

(the "Creditors' Committee") in these chapter 11 cases pursuant to section 1102 of the

Bankruptcy Code.

3.      The Debtors are authorized to continue to operate their business and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.      NII Holdings is the ultimate parent and holding company for its debtor and

non-debtor affiliates.  Certain of the Debtors' non-debtor affiliates (the "Operating Companies")

provide wireless communication services under the Nextel™ brand name for businesses and

consumers in Latin America.

-2-

5.      Additional information regarding the background of the Debtors, the reasons for filing these cases and the Debtors' goals for these cases are set forth in the Declaration of Daniel E. Freiman in Support of First Day Motions and in Accordance with Local Bankruptcy Rule 1007-2 [Docket No. 19].

## Jurisdiction

6.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.      Pursuant to sections 327(a), 328, 330, 331 and 1107(b) of the Bankruptcy Code, Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Debtors hereby seek the entry of an order (a) authorizing the employment and retention of McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS")[2] as turnaround advisor to the Debtors in these chapter 11 cases, nunc pro tunc to October 23, 2014 in accordance with the terms and conditions set forth in the engagement letter agreement executed between the parties dated as of October 23, 2014 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit A; and (b) approving the terms of McKinsey RTS's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter (the "Application").  In support of this Application, the Debtors submit the Declaration of Kevin Carmody, a Practice Leader of McKinsey RTS

---

[2]      Members of McKinsey RTS as used in this Application, include affiliates of McKinsey RTS who provide recovery and transformation services worldwide.

(the "Carmody Declaration"), which is attached hereto as Exhibit B and incorporated herein by reference.

## Qualifications of McKinsey RTS

8.        The Debtors seek to retain McKinsey RTS as their turnaround advisor in connection with these chapter 11 cases to continue to assist the Debtors with the development and refinement of their 5-year strategic business plan (the "Business Plan") based on the qualifications, skill and expertise that McKinsey RTS brings to this task.  McKinsey RTS is a global, full service turnaround advisory and crisis management firm that draws on unmatched industry and functional expertise to support companies through all aspects of recovery and transformation.  Its members have extensive experience in improving the operational performance of financially troubled companies.  McKinsey RTS is deeply experienced in providing chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and development and implementation of operational and/or financial improvement or turnaround plans.  McKinsey RTS has been or is currently involved in numerous large and complex restructurings.

9.        In particular, McKinsey RTS and its affiliates have considerable telecommunications industry experience.  Specifically, McKinsey RTS utilizes the expertise of its affiliates' Global Telecom Practice (the "Global Telecom Practice"), which serves telecom operators, telecom equipment suppliers and other global companies in the telecommunications sector.  Over the last three years, the Global Telecom Practice has completed approximately 1,330 engagements for telecom clients worldwide.  The practice has recently served approximately 80% of the top 30 global telecom operators.  In addition, between 2010 and 2014,

-4-

the Global Telecom Practice served 13 of the 15 global telecom equipment suppliers.  This

experience has given McKinsey RTS and its affiliates a unique understanding of industry trends

and of key strategic operational success factors for the Debtors' business.

      10.    The Global Telecom Practice includes general consultants, dedicated

practice consultants and experts with particularly relevant industry experience and academic

backgrounds.  The practice is backed by dedicated research and information experts who provide

insight into industry structure and dynamics (including mobile services, integrated/wireline

services and telecom equipment), and ensure that teams have access to the latest thinking,

approaches and analyses on financial, market, operational, organizational and strategic matters

for the consulting teams.  The Global Telecom Practice has also implemented several knowledge

development initiatives, including multi-year research projects addressing the most urgent client

topics (e.g., evolution of communications value chain, changing consumer preferences, network

operations excellence and advanced marketing analytics) and several proprietary benchmarks

(e.g., Network ONE, IT360 and iConsumer), in order to ensure that it remains at the forefront of

industry information and trends.  The combination of McKinsey RTS's and the Global Telecom

Practice's experience offer an extensive knowledge and expert base which will benefit the

Debtors in these chapter 11 cases.

      11.    Given McKinsey RTS's substantial experience, prior to the filing of these

chapter 11 cases, the Debtors retained McKinsey RTS to serve as their turnaround advisor

pursuant to a prior engagement letter, dated January 26, 2014 (the "Prepetition Engagement

Letter"), which engagement was principally for the purpose of assisting the Debtors' senior

management to develop the Business Plan.  The Prepetition Engagement Letter was amended

from time to time to modify and adjust, as necessary and appropriate, the services provided by

McKinsey RTS to the Debtors.  Also, prior to the Petition Date, McKinsey RTS and affiliates of McKinsey RTS provided services for certain of the Operating Companies.[3]

       12.    As a result of the prepetition work performed on behalf of the Debtors and certain of the Operating Companies, McKinsey RTS is familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures and related matters.  Since McKinsey RTS's initial engagement, McKinsey RTS personnel have worked closely with the Debtors' management and other professionals in the development of the Business Plan.  In addition, McKinsey RTS supported management in preparing supplemental analyses related to the Business Plan and a potential restructuring and helped management prepare for diligence discussions with various financial advisors to certain of the Debtors' significant creditor constituencies.  Consequently, the Debtors believe that McKinsey RTS has developed significant relevant experience and expertise regarding the Debtors and the circumstances of these cases and has the skills, qualifications and expertise necessary to assist the Debtors with respect to the Business Plan in an efficient and cost-effective manner.  Accordingly, the Debtors submit that the retention of McKinsey RTS on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors and all other parties in interest, and should be granted in all respects.

## Terms of Engagement

       13.    The parties have entered into the Engagement Letter, the terms of which will govern the Debtors' retention of McKinsey RTS during these bankruptcy cases, except as explicitly set forth in any order granting this Application.  As contemplated by Section 10 of the

---

[3]    McKinsey RTS and certain of its affiliates are currently providing, and likely will continue to provide services for certain of the Operating Companies pursuant to separate engagements and have been and will be paid separately by the applicable Operating Companies for such services.

Engagement Letter, McKinsey RTS requests approval of the Engagement Letter nunc pro tunc to October 23, 2014, the date of its execution by the Debtors and McKinsey RTS. The Engagement Letter was negotiated between the Debtors and McKinsey RTS at arm's length and in good faith, and reflects the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

### *Services to be Provided by McKinsey RTS*

14.     The Debtors anticipate that, subject to further order of this Court and consistent with the Engagement Letter, McKinsey RTS will provide a range of necessary services related to the Business Plan.[4] Such services include the following:

    a.     working closely with the Debtors and their advisors to prepare supplemental materials and strategic advice to support potential discussions with key stakeholders relating to the Business Plan, operational turnaround and the chapter 11 restructuring;

    b.     assisting the Debtors with updates to their Business Plan, as applicable;

    c.     if requested by the Debtors, working with the Debtors and their advisors to provide expert testimony relating to the Business Plan that may be required in the Debtors' chapter 11 cases, including but not limited to, expert witness testimony in support of the confirmation of a plan of reorganization;

    d.     preparing supporting diligence materials and presentations for use in various stakeholder meetings;

    e.     attending diligence sessions and working meetings with various stakeholders and constituents in support of the Business Plan and overall restructuring; and

    f.     as appropriate, assisting the Debtors with all other restructuring matters as may be requested by the Debtors that fall within McKinsey RTS's expertise and that are mutually agreed upon between McKinsey RTS and the Debtors, subject to further approval by the Bankruptcy Court.

---

[4]     Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

15.     The services that McKinsey RTS will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  Specifically, the Business Plan prepared with the assistance of McKinsey RTS will continue to be used to develop and analyze potential options for the Debtors' business and forms the foundation for the restructuring of the Debtors' capital structure.

16.     McKinsey RTS's services will complement, and not duplicate, the services rendered by any other professionals retained in these chapter 11 cases.  The Debtors and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey RTS is being retained to perform.  To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court for a supplement to the retention and any related modifications to the Engagement Letter and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

### *Professional Compensation and Expenses*

17.     Subject to Court approval, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

18.     Hourly Rates:  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS personnel at the following hourly billing rates:

| Title of Professional | Hourly Rate |
| --- | --- |
| Practice Leader: | $875-$1,050 |
| Executive Vice President: | $810-$875 |
| Senior Vice President: | $675-$810 |
| Vice President: | $525-$675 |
| Senior Associate: | $435-$525 |

-8-

| | |
|---|---|
| Associate: | $375-$435 |
| Analyst: | $250-$350 |
| Paraprofessional: | $200-$225 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS adjusts its rates generally.  Prior to any increases in rates, McKinsey RTS will file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee and any official committee, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

19.    At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS under the Engagement Letter.

20.    Expenses:  The Debtors will reimburse McKinsey RTS for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but not limited to, travel, consultants, lodging, postage and communications charges following McKinsey RTS's standard expense reporting.   As McKinsey RTS clients frequently request that McKinsey RTS turnaround advisors travel to their offices and work there for extended periods of time, McKinsey RTS developed its own official reimbursement policy with respect to its turnaround advisors' documentation of expenses (the "RTS Reimbursement Policy").  More specifically, McKinsey RTS professionals serving the Debtors will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for lodging.  For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement when exact amounts

-9-

are submitted in lieu of a receipt.  Therefore, the Debtors request that McKinsey RTS be
authorized to maintain detailed documentation of its professionals' actual and necessary costs
and expenses in accordance with the RTS Reimbursement Policy.

21.    The Fee and Expense Structure is comparable to compensation generally
charged by other firms of similar stature to McKinsey RTS for comparable engagements, both in
and out of bankruptcy.  McKinsey RTS and the Debtors believe that the foregoing compensation
arrangements are both reasonable and market-based and consistent with McKinsey RTS's normal
and customary billing levels for comparably sized and complex cases, both in and out-of-court,
involving the services to be provided in these chapter 11 cases.

22.    Finally, pursuant to the Prepetition Engagement Letter, McKinsey RTS
received $250,000 as a retainer (the "Retainer") in connection with its prepetition work.
 McKinsey RTS has drawn a total of $103,015.00 under the Retainer for services rendered and
expenses incurred prior to the Petition Date.  Any remaining amounts of its prepetition Retainer
after reconciliation with its outstanding prepetition fees and expenses will be applied as a credit
toward postpetition fees and expenses, after such postpetition fees and expenses are approved
pursuant to the first order of the Court awarding fees and expenses to McKinsey RTS.

**Time Keeping and Fee Applications**

23.    The Debtors understand that McKinsey RTS intends to apply to this Court
for allowance of compensation for professional services rendered and reimbursement of
expenses incurred and submit monthly fee statements with reasonable detail in accordance with
the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy
Rules, the *Amended Order Establishing Procedures for Monthly Compensation and
Reimbursement of Expenses of Professionals*, dated December 21, 2010, the *Amended Guidelines*

-10-

*for Fees and Disbursements for Professionals in the Southern District of New York*, dated

January 29, 2013, the United States Trustee Fee Guidelines, the *Order Pursuant to Section 105(a)*

*and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1,*

*Establishing Procedures for Interim Monthly Compensation for Professionals* [Docket No. 100]

and any further orders of this Court.

24.    Such applications will include time records setting forth, in reasonable

detail, a description of the services rendered by each professional and the amount of time spent

on each date by each such individual in rendering services on behalf of the Debtors.  McKinsey

RTS will maintain and file contemporaneous time records in one-tenth hour (.1) increments.

McKinsey RTS also will maintain detailed records of any actual and necessary costs and

expenses incurred in connection with the services as discussed above.

***Indemnification Provisions***

25.    As part of the overall compensation payable to McKinsey RTS under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution provisions described in the Engagement Letter (the "Indemnification Provisions").

The Indemnification Provisions provide that the Debtors will indemnify, hold harmless and

defend McKinsey RTS (including its past, present and future affiliates) and each of their

directors, officers, managers, shareholders, partners, members, employees, agents,

representatives, advisors and controlling persons (each, an "Indemnified Party," and collectively,

the "Indemnified Parties") against liabilities arising out of or in connection with the Engagement

Letter and/or McKinsey RTS's retention by the Debtors in these chapter 11 cases, except for any

liabilities judicially determined by a court of competent jurisdiction to have resulted from the

willful misconduct or gross negligence of any of McKinsey RTS or the other Indemnified Parties

-11-

in connection with McKinsey RTS's services provided under the Engagement Letter.  In addition,

if indemnification or reimbursement obligations are held to be unavailable by any court (other

than circumstances where a court determines that liability is from the willful misconduct or gross

negligence of the Indemnified Party), the Engagement Letter allocates contribution obligations

based on the relative benefits and faults of McKinsey RTS and the Debtors.  The Engagement

Letter further sets forth that McKinsey RTS's aggregate liability shall be no more than the

amount of its fees actually received under the Engagement Letter.

26.    The Debtors and McKinsey RTS believe that the Indemnification

Provisions are customary and reasonable for turnaround consulting engagements, both in and out

of court, and reflect the qualification and limitation on indemnification provisions that are

customary in this district and other jurisdictions.  See, e.g.,  In re AMR Corp., Case

No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 2, 2012) (authorizing indemnification of McKinsey

RTS by the Debtors) and In re Harry & David Holdings, Inc., Case No. 1:11-bk-10884-MFW

(Bankr. D. Del. Apr. 26, 2011) (same); see also In re Sbarro LLC, Case No. 14-10557 (MG)

(Bankr. S.D.N.Y. April 8, 2014) (authorizing indemnification of advisors by the Debtors); In re

RDA Holding Co., Case No. 13-22233 (RDD) (Bankr. S.D.N.Y. Mar. 25, 2013) (same); In re

LightSquared, Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. June 11, 2012) (same); In re

Hawker Beechcraft, Inc., Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 30, 2012) (same); In

re Velo Holdings Inc., Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012) (same).

27.    The Debtors respectfully submit that the Indemnification Provisions and

other provisions contained in  the Engagement Letter, viewed in conjunction with the other terms

-12-

of McKinsey RTS's proposed retention, and as modified in the proposed order attached hereto as

Exhibit C,[5] are reasonable and should be approved.

### Disclosure Regarding McKinsey RTS's Disinterestedness

28.    In anticipation of its proposed retention, McKinsey RTS emailed:

(a) members of McKinsey RTS and the McKinsey RTS Team and searched its global client

database to determine the existence of any client service provided by such employees within the

last three years to parties-in-interest (the "Interested Parties") on the interested parties list

attached hereto as Schedule 1 (the "Interested Parties List"),[6] (b) members of McKinsey RTS,

the McKinsey RTS Team and partners at affiliates that provide consulting services to determine

the existence of client services provided by employees within the last three years to any client

that focused on a direct commercial relationship or transaction with the Debtors and (c) all

employees of McKinsey RTS and its affiliates to request information on any relationships with

the Debtors, the U.S. Trustee and the Bankruptcy Court, as well as equity ownership in the

Debtors.

29.    To the best of the Debtors' knowledge, information and belief, other than

as set forth in the Carmody Declaration, McKinsey RTS (a) is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, (b) does not hold or represent an interest

adverse to the Debtors' estates and (c) has no connection to the Debtors, their creditors or their

related parties that would negatively impact McKinsey RTS's disinterestedness.  McKinsey RTS

holds no prepetition claim against the Debtors for services provided or expenses incurred.  As

---

[5]    Consistent with the standard practice in this district, the proposed form of order includes limited modifications to the Indemnification Provisions similar to those that have previously been requested by the U.S. Trustee and approved by this Court in connection with comparable chapter 11 cases.

[6]    The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors' other professional advisors.

-13-

noted above, McKinsey RTS and certain of its affiliates have in the past, and will continue, to

provide services to certain of the Operating Companies pursuant to separate engagement letters,

and receive payment directly from the applicable Operating Companies for such services

pursuant to the terms of the applicable engagement letters. Because these services provided to

the Operating Companies are principally related to business operations and business strategy, the

Debtors do not believe that these ongoing services will impact the disinterestedness of McKinsey

RTS.

30.      In connection with their prepetition engagement of McKinsey RTS, the

Debtors were required to pay certain fees. In the ninety days leading up to the Petition Date,

McKinsey RTS received payments totaling $2,757,011.29 in the aggregate for services rendered

and expenses incurred on behalf of the Debtors. McKinsey RTS received no other payments

from the Debtors during the ninety days immediately preceding the Petition Date. As of the

Petition Date, the Debtors did not owe McKinsey RTS for any fees or expenses incurred prior to

the Petition Date.

31.      McKinsey RTS has informed the Debtors that it has not shared or agreed

to share any of its compensation from the Debtors with any other person, other than as permitted

by section 504 of the Bankruptcy Code.

32.      The Debtors understand that McKinsey RTS will conduct an ongoing

review of its files during the pendency of these chapter 11 cases to ensure that no conflicts or

other disqualifying circumstances exist or arise. If any new material facts or relationships are

discovered or arise, McKinsey RTS will inform the Court.

## Basis for Relief

33.      Under section 327(a) of the Bankruptcy Code, a debtor in possession is

authorized to employ professional persons "that do not hold or represent an interest adverse to

-14-

the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title." 11 U.S.C. § 327(a).[7] Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

34.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment…" 11 U.S.C. 328(a).  The Debtors submit that the terms and conditions of McKinsey RTS's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  Since the Debtors will require substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to employ and retain McKinsey RTS to serve as their turnaround advisor on the terms and conditions set forth herein.

---

[7]     Section 101(14) of the Bankruptcy Code defines the phrase "disinterested person" as:

a person that —

(A)     is not a creditor, an equity security holder, or an insider;

(B)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

NYI-524619414v1

35.    As required by Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1,[8] the above-described facts set forth in the Application and the information in the Exhibits attached hereto set forth:  (a) the specific facts showing the necessity for McKinsey RTS's employment; (b) the reasons for the Debtors' selection of McKinsey RTS as their turnaround advisor in connection with these chapter 11 cases; (c) the professional services proposed to be provided by McKinsey RTS; (d) the arrangement between the Debtors and McKinsey RTS with respect to McKinsey RTS's compensation, including information on retainers and hourly fees and the reasonableness thereof; and (e) to the best of the Debtors' knowledge, the extent of McKinsey RTS's connections, if any, to certain parties in interest in these matters.  Accordingly, McKinsey RTS's retention by the Debtors should be approved.

## Notice

36.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Application has been provided to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing those certain 8.875% senior unsecured notes due in 2019; (d) Paul,

---

[8]    Bankruptcy Rule 2014(a) provides that an application seeking the employment of professional persons pursuant to section 327 of the Bankruptcy Code:

> shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.  The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Local Bankruptcy Rule 2014-1 further provides that "[a]n application for the employment of a professional person pursuant to §§ 327 and 328 of the Bankruptcy Code shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee arrangement."

NYI-524619414v1

Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, New York

10019 (Attn:  Elizabeth McColm, Esq.) on behalf of certain noteholders; (e) Akin, Gump,

Strauss, Hauer & Feld LLP, One Bryant Park, New York, New York  10036 (Attn:  David Botter,

Esq.) on behalf of certain noteholders; (f) Kirkland & Ellis LLP, 601 Lexington Avenue, New

York, New York  10022 (Attn:  Christopher Marcus, Esq.) on behalf of certain noteholders; and

(g) all parties that have filed a request for notice pursuant to Bankruptcy Rule 2002.  The Debtors

submit that no other or further notice need be provided.

### No Prior Request

37.    No prior request for the relief sought in this Application has been made to

this Court or any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as Exhibit C:  (i) granting the relief sought herein; and

(ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  October 23, 2014
         New York, New York

Respectfully submitted,

   /s/    Carl E. Black
Scott J. Greenberg
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

 - and -

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

-18-

## EXHIBIT A

**Engagement Letter**

**AGREEMENT**

Daniel E. Freiman
Vice President and Treasurer
NII Holdings, Inc.
1875 Explorer Street
Suite 1000
Reston, VA 20190, USA

Dear Mr. Freiman:


This letter (the "Agreement"), dated October 23, 2014 (the "Effective Date"), is between McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") and NII Holdings, Inc. ("NII") and twelve of its direct and indirect subsidiaries [1], and their respective assigns and successors (jointly and severally, the "Client"), and sets forth the terms of McKinsey RTS's engagement to provide certain advisory services to the Client as expressly contemplated by this Agreement (the "Engagement"). McKinsey RTS and the Client are collectively referred to in this Agreement as the "Parties," and each a "Party". This Agreement is intended to replace and supersede the prepetition engagement letter dated January 26, 2014 and the amendments thereto executed between the Parties (collectively, the "Prepetition Agreement").

1.    SERVICES.

    (a)    Client hereby agrees to retain McKinsey RTS to provide the services (the "Services") described in this Section 1. The general responsibilities of McKinsey RTS will be as follows:

> i.    working closely with the Client and its advisors to prepare supplemental materials and strategic advice to support potential discussions with key stakeholders relating to the Client's 5-year strategic plan, operational turnaround and the chapter 11 restructuring;
>
> ii.    assisting the Client with updates to its strategic business plan, as applicable;

---

[1] The Client is comprised of the following thirteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).

iii. if requested by the Client, working with the Client and its advisors to provide expert testimony relating to management's strategic business plan that may be required in the Client's chapter 11 cases, including but not limited to, expert witness testimony in support of the confirmation of the Plan of Reorganization;

iv. preparing supporting diligence materials and presentations for use in various stakeholder meetings;

v. attending diligence sessions and working meetings with various stakeholders and constituents in support of the strategic business plan and overall restructuring; and

vi. as appropriate, assisting the Client with all other restructuring matters as may be requested by the Client that fall within McKinsey RTS's expertise and that are mutually agreed upon between McKinsey RTS and the Client, subject to further approval by the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)    To fulfill its responsibilities on a timely basis McKinsey RTS will rely on the Client's timely cooperation regarding the Engagement, including the Client's making available to McKinsey RTS relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying McKinsey RTS of any issues or concerns the Client may have relating to the Services.   The Client understands and acknowledges that McKinsey RTS's delivery of the Services and the Fees (as defined below) charged hereunder are dependent upon timely decisions and approvals by the Client and its management.  The Client and McKinsey RTS shall be responsible for any delays, additional costs or other deficiencies caused by not completing their respective responsibilities. McKinsey RTS will assist and cooperate in developing processes necessary to ensure that the support required by the Client in connection with the matters described in this Agreement are provided by McKinsey RTS and the Client's Advisors (as defined herein) in a coordinated and efficient manner.

(c)    During the term of the Engagement, priorities may shift at the direction of the Client or unexpected events may occur which will necessitate changes to the Services.  In this event, McKinsey RTS and the Client will jointly discuss the anticipated impact on the Services and agree on any appropriate adjustments, including to the scope of work, timeframe, budget and Fees.

2.    COMPENSATION.   The Client shall compensate McKinsey RTS for its professional fees and expenses in connection with the Services (collectively, the "Fees") and hereby agrees to pay McKinsey RTS during the term of this Agreement in accordance with the terms set forth in Schedule 1.  In connection with the retainer (the "Retainer") provided by the Client to McKinsey RTS pursuant to the Prepetition Agreement, McKinsey RTS and the Client agree that this Agreement shall govern, among other things, the application of the Retainer in the Client's chapter 11 proceeding.  Subject to approval by the Bankruptcy Court, McKinsey RTS shall apply any remaining amounts of the Retainer as a credit toward postpetition fees and

expenses, after such postpetition fees and expenses are approved by the Bankruptcy Court in connection with any monthly fee statements and/or interim and final fee applications filed by McKinsey RTS in the Client's chapter 11 Proceeding (as defined herein). McKinsey RTS shall bill the Client on a monthly basis in accordance with any interim compensation orders entered by the Bankruptcy Court. Upon the conclusion of McKinsey RTS's service to the Client (or as otherwise directed by the Bankruptcy Court), McKinsey RTS will promptly return any unapplied portion of the Retainer to the Client.

3.    CONFIDENTIALITY. McKinsey RTS will keep confidential any confidential information furnished by the Client to McKinsey RTS in connection with the Services ("Confidential Information"). McKinsey RTS will disclose Confidential Information only to its employees and agents who have a need to know and are bound to keep it confidential and will use Confidential Information only for purposes of performing the Services. Confidential Information shall not include information that is or becomes publicly available, already known to McKinsey RTS, independently acquired or developed by McKinsey RTS or legally required to be disclosed. In performing the Services, McKinsey RTS will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information. Additionally, in the event that McKinsey RTS is required or requested to disclose Confidential Information under applicable law (whether by oral question, interrogatory, subpoena, civil investigation demand or otherwise), or by order or act of any court or governmental or regulatory authority or body, McKinsey RTS shall provide prompt written notice thereof, to the extent legally permissible, to the Client, and McKinsey RTS may, without liability hereunder, disclose only that portion of the Confidential Information which McKinsey RTS reasonably believes it is required to disclose. Without limiting the foregoing, the Parties agree that as between the Parties to this Agreement, this Agreement supersedes any previous non-disclosure agreements between the Parties, it being understood that any Confidential Information provided pursuant to any such previous non-disclosure agreements shall be deemed to be Confidential Information subject to the applicable provisions of this Agreement.

4.    USE OF McKINSEY NAME AND DELIVERABLES. In connection with the Engagement, McKinsey RTS may furnish the Client with information, advice, reports, analyses, presentations or other such materials (the "Deliverables"). The Client understands and agrees that any such Deliverables are furnished or presented solely for the Client's internal use and benefit (limited to management and the board of directors) and may not be furnished or conveyed in whole or in part to any person or entity other than as described in this Section 4 without McKinsey RTS's prior written consent or as required by law. The Client may furnish and convey Deliverables to its management and directors (and to its legal counsel), to Jones Day ("Jones Day") and Rothschild Inc. ("Rothschild") (Jones Day and Rothschild, together with any other advisors retained by Client in connection with a restructuring ("Restructuring") or proceeding ("Proceeding"), the "Advisors"), provided that the Client shall limit the disclosure of the Deliverables only to such persons who (i) need to know the information set forth, or embodied in such Deliverables, and (ii) are informed of the confidential nature of the Deliverables. Client shall be responsible for any use of the Deliverables by the Advisors and for any failure of the Advisors to comply with the restrictions stated in this Section 4. The Deliverables that identify information as having been prepared or reviewed by McKinsey RTS

3

may not be furnished, conveyed or presented to any person or entity other than as described in this Section 4 unless (A) Client has received McKinsey RTS's oral or written consent to furnish or convey such information; and (B) such third parties (x) are informed of the confidential nature of the information and (y) prior to Client's disclosure, each third party to whom it seeks to disclose such information executes and delivers to McKinsey RTS a letter agreement in a form reasonably acceptable to McKinsey RTS (a "<u>Letter Agreement</u>"). The Client further agrees that, without McKinsey RTS's prior written consent, which shall not be unreasonably withheld, it shall not refer to McKinsey RTS or attribute any information to McKinsey RTS in any document or communication external, or reasonably likely to be disseminated externally, to the Client for any purpose, including in press releases and web sites. The Client also agrees that it shall not, and shall not permit its Advisors to, refer to McKinsey RTS or attribute any information to McKinsey RTS, either generically or by name, without McKinsey RTS's prior written approval except as required by law. McKinsey RTS shall not issue any press release which references this Agreement, Engagement, or the Client, or disclose that it has been engaged by Client to perform the Services without Client's prior written consent. Notwithstanding the foregoing, it is acknowledged and agreed by McKinsey RTS that all or a portion of the Deliverables in a format that does not identify such information as having been prepared by McKinsey RTS contemplated by this Agreement may be used by the Client in conjunction with a Restructuring or related Proceeding, including distribution of such Deliverables to its creditors and other stakeholders.

5.    <u>INTELLECTUAL PROPERTY</u>. Upon payment in full of McKinsey RTS's Fees, the Client will own all Deliverables furnished by McKinsey RTS to the Client in connection with the Services, save that McKinsey RTS retains ownership of all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by McKinsey RTS in connection with the Services (the "<u>McKinsey RTS Tools</u>"), it being understood that none of the McKinsey RTS Tools will contain the Client's Confidential Information. To the extent the Deliverables include any McKinsey RTS Tools, McKinsey RTS hereby grants the Client a non-exclusive, non-transferable, non-sublicenseable, worldwide, royalty-free license to use and copy the McKinsey RTS Tools solely as part of the Deliverables and subject to the above limitations on the use of McKinsey RTS name and Deliverables.

6.    <u>INDEMNIFICATION</u>.

(a)    In order to induce McKinsey RTS to provide the Services to the Client, the Client and its affiliates hereby agree (i) to indemnify, hold harmless and defend McKinsey RTS, and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons (collectively, the "<u>Indemnified Parties</u>" and each individually, an "<u>Indemnified Party</u>"), to the fullest extent lawful, from and against any and all losses, claims, penalties, damages or liabilities (or actions in respect thereof), but excluding claims (not including counterclaims) initiated by McKinsey RTS against the Client, joint or several, caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement; and (ii) to reimburse each Indemnified Party for all reasonable expenses (including, without limitation, the reasonable fees and expenses of counsel and the costs of McKinsey RTS's professional time) as and when they are incurred in connection with investigating, preparing, pursuing, defending, settling or

4

compromising any pending action, suit, dispute, inquiry, investigation or proceeding brought by or against any person or entity for which an Indemnified Party would be entitled to indemnification under clause (i) of this Section 6(a) (whether or not such Indemnified Party is a formal party to any such action, suit, dispute, inquiry, investigation or proceeding), caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement, and in enforcing the indemnification obligations contained in this Section 6. However, the Client and its affiliates shall not be liable under the foregoing indemnity and reimbursement provisions for any loss, claim, damage, penalty or liability which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of such Indemnified Party, but pending any such judicial determination, the Client and its affiliates shall continue to be obligated on, and shall continue to perform, their indemnification and reimbursement obligations contained in this Section 6.

(b)    If for any reason the foregoing indemnification or reimbursement is held by a court of competent jurisdiction to be unavailable to any Indemnified Party or insufficient fully to indemnify or reimburse any such Indemnified Party or to hold it harmless in respect of any losses, claims, damages, penalties, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Client and its affiliates shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, penalties, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Client and its affiliates, on the one hand, and McKinsey RTS, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Client and its affiliates shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Client and its affiliates, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. The Client, its affiliates and McKinsey RTS agree that it would not be just and equitable if contribution pursuant to this Section 6(b) were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above in this Section 6(b). Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of Fees actually received by McKinsey RTS from the Client and its affiliates pursuant to this Agreement.

(c)    The Client and its affiliates shall not, without the prior written consent of McKinsey RTS, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification, reimbursement of expenses or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto) unless the Client has used its reasonable best efforts to obtain, as a term to such settlement, compromise or consent, the unconditional release of such Indemnified Party from all liabilities arising out of such action, suit, dispute, inquiry, investigation or proceeding.

(d)    The Client and its affiliates agree that neither McKinsey RTS nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, its affiliates or any person or entity asserting claims on behalf of or in right of the Client and its affiliates caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client and its affiliates which are finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of McKinsey RTS or any other Indemnified Party.  In no event, however, shall McKinsey RTS's or any other Indemnified Party's liability to the Client or its respective affiliates, successors, or any person claiming on behalf of or in right of the Client, including Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors, exceed, when taken together with all losses for which McKinsey RTS or such other Indemnified Party is liable in connection with this Agreement or the Engagement, the amount of Fees actually received by McKinsey RTS in connection with the Engagement.

(e)    The indemnity, reimbursement, and other obligations and agreements of the Client and its affiliates set forth in this Section 6: (i) shall apply to any Services provided by McKinsey RTS in connection with the Engagement (whether provided prior to, on or after the Effective Date) and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Client and its affiliates may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Client, its affiliates or any Indemnified Party, or any other person or entity, (iv) shall survive the completion of the Services described in, and any expiration or termination of the relationship established by, this Agreement and (v) shall be binding on any successor or assign of the Client and its affiliates.  In no event shall any Indemnified Party be responsible for any loss profits or special, punitive, exemplary, indirect or consequential damages.

7.    CLIENT ACKNOWLEDGMENT.  It is McKinsey RTS's long-standing policy to serve competing clients and clients with potentially conflicting interests as well as counter-parties in merger, acquisition and alliance opportunities, and to do so without compromising McKinsey RTS's professional responsibility to maintain the confidentiality of client information. Consistent with such practice and McKinsey RTS's confidentiality obligations to its other clients, McKinsey RTS is not able to advise or consult with the Client about McKinsey RTS's serving the Client's competitors or other parties.  To avoid situations of potential conflict, McKinsey RTS will not assign consultants, who are providing the Services and who receive Confidential Information, to a competitively sensitive project for a significant period of time (typically two years) following an assignment for the Client.  For clarity, McKinsey RTS acknowledges and agrees that it shall not provide services in connection with matters relating to the Client on this Engagement or any Restructuring or any related Proceeding to any other of its clients (including but not limited to serving a creditor in a Proceeding against the Client) without the prior written approval of the Client, which approval may be given or withheld in the Client's discretion.

8.    TERM AND TERMINATION.  The Engagement will commence as of the Effective Date and shall continue until the earlier of:  (a) the completion of the Services

6

hereunder or (b) the termination of this Agreement by either Party by giving written notice to the other Party, provided, however, that McKinsey RTS may not terminate this Agreement other than for cause except upon 30 days' prior written notice. In the event of any termination, the Client will pay McKinsey RTS's reasonable Fees and expenses up to the effective date of termination.

9.    RELATIONSHIP OF THE PARTIES.    The Parties intend that an independent contractor relationship will be created by this Agreement. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between McKinsey RTS and the Client, or its board of directors. More specifically, for purposes of this Agreement, neither McKinsey RTS, its affiliates, nor any individual consultant providing services to the Client shall be acting as an officer, director, manager, trustee, or in any other agency or fiduciary capacity. Notwithstanding McKinsey RTS's provision of the Services described in Section 1, none of McKinsey RTS, its affiliates, nor any individual consultant providing services to the Client shall be (i) deemed a fiduciary; or (ii) be required to perform any tasks, actions or functions, and shall not be required to assume any roles, assignments or capacities, that (in any such case) could give rise to fiduciary status to McKinsey RTS, its affiliates or any Indemnified Party with respect to the Client.

10.    BANKRUPTCY MATTERS.    Upon execution of this Agreement, the Client will promptly apply to the Bankruptcy Court pursuant to section 327 of the Bankruptcy Code, to obtain approval of the retention of McKinsey RTS and this Agreement *nunc pro tunc* to the Effective Date of this Agreement. It is understood that the terms and conditions of this Agreement, particularly the compensation provisions, are subject to prior approval of the Bankruptcy Court to be treated as administrative expenses of the bankruptcy case. McKinsey RTS shall file applications for approval of its fees and expenses in accordance with the terms of any interim compensation orders or other orders approved by the Bankruptcy Court.

11.    MISCELLANEOUS.    This Agreement and any schedules hereto constitute the entire agreement between the Parties, and there are no prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter that are not fully expressed herein or therein. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles and shall inure to the benefit of and be binding on the successors and assigns of the Client and McKinsey RTS. The following Sections shall survive the completion or any termination of the Services: 3 (Confidentiality), 4 (Use of McKinsey RTS Name and Deliverables), 5 (Intellectual Property), 6 (Indemnification), 7 (Client Acknowledgement), 8 (Term and Termination), 9 (Relationship of the Parties), 10 (Bankruptcy Matters) and 11 (Miscellaneous), and any other provision which by law or by its nature should survive. Neither Party may assign its rights or obligations under this Agreement to any person or entity without the written consent of the other Party, not to be unreasonably withheld, provided, however, that either Party may assign its rights and obligations under this Agreement to its affiliates upon reasonable written notice to the other Party but without the written consent of the other Party. Assignment shall not relieve either Party of its obligations hereunder.

*[Remainder of Page Intentionally Left Blank]*

McKinsey Recovery & Transformation Services U.S., LLC

By:

Name:        Kevin Carmody

Title:        Practice Leader

ACCEPTED AND AGREED TO

NII Holdings, Inc.
(on behalf of itself and its affiliates)

By:

Name:    DANIEL FREIMAN

Title:    Treasurer, VP IR & CD

NY 73152475

# **EXHIBIT B**

**Carmody Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
NII Holdings, Inc., et al.,[1]                             :    Case No. 14-12611 (SCC)
                                                           :
                         Debtors.                          :    (Jointly Administered)
                                                           :
-----------------------------------------------------------x

**DECLARATION OF KEVIN CARMODY IN SUPPORT OF APPLICATION OF
DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTIONS 327(a), 328,
330, 331 AND 1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a)
AND 2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1, FOR AN
ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY
RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND
ADVISOR FOR THE DEBTORS _NUNC PRO TUNC_ TO OCTOBER 23, 2014**

I, Kevin Carmody, under penalty of perjury, declare as follows:

1.      I am a Practice Leader in the professional services firm of McKinsey

Recovery & Transformation Services U.S., LLC ("McKinsey RTS")[2] with an office at 55 East

52nd Street, New York, NY 10055.  I am duly authorized to make this Declaration on behalf of

McKinsey RTS in support of the application (the "Application")[3] of NII Holdings, Inc.

(the "Debtors") for entry of an order authorizing the employment and retention of McKinsey

RTS as turnaround advisor for the Debtors, nunc pro tunc to October 23, 2014 under the terms

---

[1]      The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S.
taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International
(Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII
Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l.
(N/A); and NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International
(Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The
location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street,
Suite 1000, Reston, VA 20190.

[2]      Members of McKinsey RTS as used in this Declaration, include affiliates of McKinsey RTS who provide
recovery and transformation services worldwide.

[3]      All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the
Engagement Letter, as appropriate.

and conditions set forth in the Engagement Letter, attached to the Application as <u>Exhibit A</u>.  I submit this Declaration in accordance with section 327(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014(a), 2016 and 5002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Bankruptcy Rules</u>").

2.      Except as otherwise noted, the statements set forth herein are as a result of my employment position and diligence undertaken by me or by professionals working under my direction and, if called and sworn as a witness, I would testify competently thereto.

### <u>Qualifications of McKinsey RTS</u>

3.      McKinsey RTS is highly qualified to serve as the Debtors' turnaround advisor in these chapter 11 cases.  Certain employees of McKinsey RTS, along with certain consultants borrowed from McKinsey & Company, Inc. United States, an affiliate of McKinsey RTS, are together serving the Debtors and shall be referred to as the "<u>McKinsey RTS Team</u>" for purposes of this Declaration.  McKinsey RTS is a global, full service restructuring advisory and crisis management firm that draws on unmatched industry and functional expertise to support companies through all aspects of recovery and transformation.  Its members have extensive experience in improving the operational performance of financially troubled companies.  The McKinsey RTS Team is deeply experienced in providing chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and development and implementation of operational and/or financial improvement or turnaround plans.  McKinsey RTS has been or is currently involved in numerous large and complex restructurings.

-2-

4.    In particular, McKinsey RTS and its affiliates have considerable telecommunications industry experience.  Specifically, McKinsey RTS utilizes the expertise of its affiliates' Global Telecom Practice (the "Global Telecom Practice"), which serves telecom operators, telecom equipment suppliers and other global companies in the telecommunications sector.  Over the last three years, the Global Telecom Practice has completed approximately 1,330 engagements for telecom clients worldwide.  The practice has recently served approximately 80% of the top 30 global telecom operators.  In addition, between 2010 and 2014, the Global Telecom Practice served 13 of the 15 global telecom equipment suppliers.  This experience has given McKinsey RTS and its affiliates a unique understanding of industry trends and of key strategic operational success factors for the Debtors' business.

5.    The Global Telecom Practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds.  The practice is backed by dedicated research and information experts who provide insight into industry structure and dynamics (including mobile services, integrated/wireline services and telecom equipment), and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational, organizational and strategic matters for the consulting teams.  The Global Telecom Practice has also implemented several knowledge development initiatives, including multi-year research projects addressing the most urgent client topics (e.g., evolution of communications value chain, changing consumer preferences, network operations excellence and advanced marketing analytics) and several proprietary benchmarks (e.g., Network ONE, IT360 and iConsumer) in order to ensure that it remains at the forefront of industry information and trends.  The combination of McKinsey RTS's and the Global Telecom

-3-

Practice's telecom experience offer an extensive knowledge and expert base which will benefit the Debtors in these chapter 11 cases.

6.       Given McKinsey RTS's substantial experience, prior to the filing of these chapter 11 cases, the Debtors retained McKinsey RTS to serve as their advisor pursuant to a prior engagement letter, dated January 26, 2014 (the "Prepetition Engagement Letter"), which engagement was principally for the purpose of assisting the Debtors' senior management to develop their 5-year strategic business plan (the "Business Plan"). The Prepetition Engagement Letter was amended from time to time to modify and adjust, as necessary and appropriate, the services provided by McKinsey RTS to the Debtors. Also, prior to the Petition Date, McKinsey RTS and affiliates of McKinsey RTS provided services for certain of the Operating Companies.[4]

7.       As a result of the prepetition work performed on behalf of the Debtors and certain of the Operating Companies, McKinsey RTS is familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures and related matters. Since McKinsey RTS' initial engagement, McKinsey RTS personnel have worked closely with the Debtors' management and other professionals with numerous tasks related to the development of the Business Plan. In addition, McKinsey RTS supported management in preparing supplemental analyses related to the Business Plan and a potential restructuring and helped management prepare for diligence discussions with various financial advisors to certain of the Debtors' significant creditor constituencies. Consequently, the Debtors believe that McKinsey RTS has developed significant relevant experience and expertise regarding the Debtors and the circumstances of these cases and has the skills, qualifications and

---

[4]      McKinsey RTS and certain of its affiliates are currently providing, and likely will continue to provide services for certain of the Operating Companies pursuant to separate engagements and have been and will be paid separately by the applicable Operating Companies for such services.

-4-

expertise necessary to assist the Debtors with respect to the Business Plan in an efficient and cost-effective manner.

### Terms and Scope of Engagement

8.    The parties have entered into the Engagement Letter, the terms of which will govern the Debtors' retention of McKinsey RTS during these bankruptcy cases, except as explicitly set forth in any order granting this Application.  As contemplated by Section 10 of the Engagement Letter,  McKinsey RTS requests approval of the Engagement Letter nunc pro tunc to October 23, 2014, the date of its execution by the Debtors and McKinsey RTS.  The Engagement Letter was negotiated between the Debtors and McKinsey RTS at arm's length and in good faith, and reflects the parties' mutual agreement as to the substantial efforts that will be required during the course of this engagement.

9.    McKinsey RTS will provide a range of necessary services related to the Business Plan.  Such services include the following:[5]

    a.    working closely with the Debtors and their advisors to prepare supplemental materials and strategic advice to support potential discussions with key stakeholders relating to the Business Plan, operational turnaround and the chapter 11 restructuring;

    b.    assisting the Debtors with updates to their Business Plan, as applicable;

    c.    if requested by the Debtors, working with the Debtors and their advisors to provide expert testimony relating to the Business Plan that may be required in the Debtors' chapter 11 cases, including but not limited to, expert witness testimony in support of the confirmation of a plan of reorganization;

    d.    preparing supporting diligence materials and presentations for use in various stakeholder meetings;

---

[5]    Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

NYI-524619414v1

    e.          attending diligence sessions and working meetings with various stakeholders and constituents in support of the Business Plan and overall restructuring; and

    f.           as appropriate, assisting the Debtors with all other restructuring matters as may be requested by the Debtors that fall within McKinsey RTS's expertise and that are mutually agreed upon between McKinsey RTS and the Debtors, subject to further approval by the Court.

10.      The services provided by McKinsey RTS are necessary to enable the Debtors to maximize the value of their estates.  Specifically, the Business Plan prepared with the assistance of McKinsey RTS will continue to be used to develop and analyze potential options for the Debtors' business and forms the foundation for the restructuring of the Debtors' capital structure.

11.      McKinsey RTS's services will complement, and not duplicate, the services rendered by any other professionals retained in these chapter 11 cases.  The Debtors and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey RTS is being retained to perform.  To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court for a supplement to the retention and any related modifications to the Engagement Letter and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

## Fee and Expense Structure

12.      Subject to Court approval, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

-6-

13.    <u>Hourly Rates</u>:  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS personnel at the following hourly billing rates:

| Title of Professional | Hourly Rate |
|---|---|
| Practice Leader: | $875-$1,050 |
| Executive Vice President: | $810-$875 |
| Senior Vice President: | $675-$810 |
| Vice President: | $525-$675 |
| Senior Associate: | $435-$525 |
| Associate: | $375-$435 |
| Analyst: | $250-$350 |
| Paraprofessional: | $200-$225 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS adjusts its rates generally.  Prior to any increases in rates, McKinsey RTS will file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee and any official committee, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

14.    At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS under the Engagement Letter.

15.    <u>Expenses</u>:  The Debtors will reimburse McKinsey RTS for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but not limited to, travel, consultants, lodging, postage and communications charges following McKinsey RTS's standard expense reporting.  As McKinsey RTS clients frequently request that

-7-

McKinsey RTS turnaround advisors travel to their offices and work there for extended periods of time, McKinsey RTS developed its own official reimbursement policy with respect to its turnaround advisors' documentation of expenses (the "RTS Reimbursement Policy").  More specifically, McKinsey RTS professionals serving the Debtors will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for lodging.  For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement when exact amounts are submitted in lieu of a receipt.  McKinsey RTS intends to maintain detailed documentation of its professionals' actual and necessary costs and expenses in accordance with the RTS Reimbursement Policy.

16.    Consistent with the scope of services to be provided by McKinsey RTS under the Engagement Letter, the Debtors and McKinsey RTS negotiated and agreed upon the Fee and Expense Structure described above.  In addition, McKinsey RTS believes that the foregoing Fee and Expense Structure is reasonable and market-based and consistent with McKinsey RTS's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, involving the services to be provided to the Debtors by McKinsey RTS. To the best of my knowledge, the compensation arrangement reflected herein is consistent with, and typical of, arrangements entered into by other turnaround advisory firms rendering similar services for clients such as the Debtors.

17.    Finally, pursuant to the Prepetition Engagement Letter, McKinsey RTS received $250,000 as a retainer (the "Retainer") in connection with its prepetition work. McKinsey RTS has drawn a total of $103,015.00 under the Retainer for prepetition fees and expenses.  Any remaining amounts of its prepetition Retainer after reconciliation with its

-8-

outstanding prepetition fees and expenses will be applied as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to McKinsey RTS.

18.    Members of McKinsey RTS and the McKinsey RTS Team have in the past performed, are currently performing and may in the future perform services for certain of the Debtors' non-debtor affiliates on matters which are not adverse to the interests of the Debtors in these chapter 11 cases.  McKinsey RTS intends to continue performing such services from and after the Petition Date, and will bill these non-debtor entities separately for these services.

### Record Keeping

19.    McKinsey RTS intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred and submit monthly fee statements with reasonable detail in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010, the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York*, dated January 29, 2013, the United States Trustee Fee Guidelines, the *Order Pursuant to Section 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1, Establishing Procedures for Interim Monthly Compensation for Professionals* [Docket No. 100] and any further orders of this Court.

20.    Such applications will include time records setting forth, in reasonable detail, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  McKinsey RTS will maintain and file contemporaneous time records in one-tenth hour (.1) increments.

-9-

McKinsey RTS also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services as discussed above.

### Indemnification Provisions

21.     As part of the overall compensation payable to McKinsey RTS under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions described in the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions provide that the Debtors will indemnify, hold harmless and defend McKinsey RTS (including its past, present and future affiliates) and each of their directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons (each, an "Indemnified Party," and collectively, the "Indemnified Parties") against liabilities arising out of or in connection with the Engagement Letter and/or McKinsey RTS's retention by the Debtors in these chapter 11 cases, except for any liabilities judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of any of McKinsey RTS or the other Indemnified Parties in connection with McKinsey RTS's services provided under the Engagement Letter.  In addition, if indemnification or reimbursement obligations are held to be unavailable by any court (other than circumstances where a court determines that liability is from the willful misconduct or gross negligence of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the relative benefits and faults of McKinsey RTS and the Debtors.  The Engagement Letter further sets forth that McKinsey RTS's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

### Disclosure Regarding McKinsey RTS's Disinterestedness

22.     I am not related or connected to, and, to the best of my knowledge and information, none of the members of the McKinsey RTS Team nor members of McKinsey RTS

-10-

are related or connected to any judge of the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") or the office of the United States Trustee

(the "U.S. Trustee") or to any employee in the office thereof.

23.     In anticipation of its proposed retention, McKinsey RTS emailed:

(a) members of McKinsey RTS and the McKinsey RTS Team and searched its global client

database to determine the existence of any client service provided by such employees within the

last three years to parties-in-interest (the "Interested Parties") on the interested parties list

attached hereto as Schedule 1 (the "Interested Parties List"),[6] (b) members of McKinsey RTS,

the McKinsey RTS Team and partners at affiliates that provide consulting services to determine

the existence of client services provided by employees within the last three years to any client

that focused on a direct commercial relationship or transaction with the Debtors and (c) all

employees of McKinsey RTS and its affiliates to request information on any relationships with

the Debtors, the U.S. Trustee and the Bankruptcy Court, as well as equity ownership in the

Debtors.

24.     Based on the searches described above,  to the best of my knowledge and

information, after reasonable inquiry, except as set forth herein members of McKinsey RTS and

the McKinsey RTS Team (a) do not have any connection with the Debtors or their affiliates,

their creditors, or any other Interested Parties in these cases, as identified on the Interested

Parties List other than as set forth herein; (b) are "disinterested persons," as that term is defined

in section 101(14) of the Bankruptcy Code; (c) do not hold or represent any interest adverse to

the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in the Debtors; (d) are not and have not been

---

[6]     The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors'
other professional advisors.

NYI-524619414v1

a creditor, an equity security holder or an insider of the Debtors, except that McKinsey RTS has

previously rendered services to the Debtors for which it has been compensated; (e) are not and

have not been, within two years before the Petition Date, a director, officer or employee of the

Debtors.

25.    Based upon the research described above, McKinsey RTS has ascertained

that members of McKinsey RTS and its affiliates have served and/or currently serve various

parties on the Interested Parties List, but on matters unrelated to the Debtors and their chapter 11

cases.  More specifically, to the best of my knowledge and belief:

a.    Prior to the Petition Date, members of McKinsey RTS, the McKinsey RTS
Team and affiliates of McKinsey RTS provided services to certain of the
Debtors' non-Debtor affiliates, including but not limited to certain
Recently Dissolved or Divested Entities and Non-Debtor Subsidiaries of
the Debtors listed on the Interested Parties List (collectively, the "Non-
Debtor Affiliates") and are currently providing, and may in the future
provide services for the Non-Debtor Affiliates.  Because these entities are
owned directly or indirectly by NII Holdings, services performed for the
Non-Debtor Affiliates ultimately inure to the benefit of NII Holdings and
many of the other Debtors.  McKinsey RTS anticipates that it and certain
of McKinsey RTS's affiliates will perform services for the Non-Debtor
Affiliates from and after the Petition Date.  However, none of McKinsey
RTS, the McKinsey RTS Team nor affiliates of McKinsey RTS will
provide services to the Non-Debtor Affiliates on matters in which the
interests of the Non-Debtor Affiliates are adverse to the interests of the
Debtors in these chapter 11 cases (e.g., services related to a Non-Debtor
Affiliate's claim against the Debtors).

b.    One member of the McKinsey RTS Team serving the Debtors currently
serves or in the past three years has served one of the Major Current
Business Affiliations of Debtors' Current Directors, one of the Parties to
Material Contracts, License Agreements and Permits (that are not large
unsecured creditors), and one of the Recently Dissolved or Divested
Entities, but in each case on matters unrelated to the Debtors and these
chapter 11 cases.

c.    Fifteen members of McKinsey RTS were previously employed, in the past
three years, by three of The Debtors' Professionals and Service Providers,
four affiliates of The Debtors' Professionals and Service Providers, and
two affiliates of one Known Professional for Certain Non-Debtor Parties
in Interest, but in each case on matters unrelated to the Debtors and these

-12-

chapter 11 cases. During the course of prior employment in the past three years, one member of McKinsey RTS served one affiliate of three Insurers, Insurance Brokers and Third Party Administrators and another member of McKinsey RTS served two Insurers, Insurance Brokers and Third Party Administrators, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

d.    One member of McKinsey RTS, in the past three years, through previous employment with an affiliate of one Party to Material Contracts, License Agreements and Permits (that are not large unsecured creditors) and with an affiliate of one of The Debtors' Largest Unsecured Creditors (Excluding Noteholders), was involved in his employer's procurement of products and services to the Debtors, but in each case on matters unrelated to these chapter 11 cases.

e.    Eleven members of McKinsey RTS currently serve or in the past three years have served one affiliate of one of the Major Bank Lenders of Non-Debtor Affiliates (Not Otherwise Listed), one affiliate of three Major Current Business Affiliations of Debtors' Current Directors, one of the Major Current Business Affiliations of Debtors' Current Directors, two Depository and Disbursement Banks, one affiliate of one of the Depository and Disbursement Banks, two affiliates of two Major Noteholders and Related Parties, one Known Professional for Certain Non-Debtor Parties in Interest, two affiliates of four Insurers, Insurance Brokers and Third Party Administrators, one of the Insurers, Insurance Brokers and Third Party Administrators, one affiliate of one of the Issuers of Letters of Credit, one of The Debtors' Largest Unsecured Creditors (Excluding Noteholders, one affiliate of one of The Debtors' Largest Unsecured Creditors (Excluding Noteholders), and one of the Recently Dissolved or Divested Entities, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

f.    McKinsey RTS serves or in the past three years has served one portfolio company of an affiliate of one of the Major Current Business Affiliations of Debtors' Current Directors, involving matters unrelated to the Debtors and these chapter 11 cases.

g.    An affiliate of McKinsey RTS serves or in the past three years has served one of the Insurers, Insurance Brokers and Third Party Administrators in which the affiliate of McKinsey RTS created a model for such party using data relating to thousands of such party's clients as inputs, including the Debtors. Such support was unrelated to the Debtors and these chapter 11 cases.

h.    One member of the McKinsey RTS Team knew the Non-Executive Chairman of the Debtors in a professional capacity in 2006 in connection with matters unrelated to the Debtors and these chapter 11 cases, and had

-13-

no additional contact with such director until McKinsey RTS was retained to serve the Debtors in 2014.

i.      One member of an affiliate of McKinsey RTS is acquainted with, but has no professional relationship with, one director of the Debtors who also serves as an officer of one of the Major Current Business Affiliations of Debtors' Current Directors. Such relationship is unrelated to these chapter 11 cases.

j.      An affiliate of McKinsey RTS serves or in the past three years has served, and may in the future serve, an affiliate of one of the Recently Dissolved or Divested Entities, but on matters unrelated to the Debtors and these chapter 11 cases.

k.      Affiliates of McKinsey RTS serve or in the past three years have served two affiliates of three members of the Official Committee of Unsecured Creditors appointed in these cases, but in each case on matters unrelated to the Debtors and these chapter 11 cases.

26.      In addition, McKinsey RTS and its affiliates serve clients across a broad range of industries, functions, and geographies, and, within industries, serve competitors and do so in a manner that protects the confidentiality of each client's information (including the confidentiality of the engagement itself). Thus, McKinsey RTS and certain of its affiliates may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, contract counterparties in each case of the Debtors or otherwise Interested Parties named on the Interested Parties List; however, to the best of my current knowledge, subject to the disclosures set forth herein, such services do not focus on direct commercial relationships or transactions between such companies and the Debtors.

27.      McKinsey RTS and its affiliates do however, from time to time provide overall strategic analysis and advice to companies that operate in the telecommunications field in which the Debtors operate, which analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as

-14-

other companies.  Similarly, certain members of McKinsey RTS and its affiliates may have business associations with certain of the Debtors' creditors, professionals, service providers or other Interested Parties, or interests adverse to such creditors, professionals, service providers or Interested Parties herein, which associations to the best of my knowledge and information have no connection with these proceedings.

28.    As noted, McKinsey RTS and its affiliates have a long-standing policy of serving competing companies and do so in a manner that protects the confidentiality of each client's information.  In fact, McKinsey RTS's expertise which the Debtors desire to utilize for the purposes described herein derives from McKinsey RTS's and its affiliates' broad-based service in many different aspects of the industry and business sector in which the Debtors operate.  Because of its practice of serving clients with overlapping or competing interests, these affiliates do not have in place any centralized conflicts identification process, and only have a central database of clients and engagements performed for those clients, which is kept principally for record keeping purposes, but does not contain detailed descriptions of the client support.

29.    However, McKinsey RTS completed the following steps in order to make the representations contained herein:

a.    McKinsey RTS made inquiry to all partners at its affiliates world-wide that provide consulting services, about whether they currently provide consulting services to entities that focus on a direct commercial relationship or transaction with the Debtors.

b.    McKinsey RTS made inquiry to the partners at its affiliates world-wide that provide consulting services, who are responsible for those clients appearing on the Interested Parties List, as to whether any services McKinsey RTS or its affiliates provided over the past three years or are currently providing to such Interested Parties focused or focuses on a direct commercial relationship or transaction with the Debtors.

c.    Additionally, McKinsey RTS made inquiry of all employees at all its affiliates world-wide, as to whether such employee or a member of his/her

-15-

immediate family is related to or employed by the Debtors, the U.S. Trustee and/or the Bankruptcy Court.

d.      Additionally, McKinsey RTS made inquiry of all employees at all its affiliates world-wide, as to whether such employee or a member of his/her immediate family owns equity securities of the Debtors.

e.      Finally, McKinsey RTS requested that partners of McKinsey RTS and its affiliates world-wide that provide consulting services immediately inform the office of the General Counsel, for the duration of McKinsey RTS's retention by the Debtors, if proposed support for any of their clients would focus on a direct commercial relationship with the Debtors.

30.      Based upon the responses to these inquiries, McKinsey RTS and its affiliates serve or have served in the last three years various parties included on the Interested Parties List, but other than as may be described herein, such client service has not focused on a direct commercial relationship or transaction with the Debtors.

31.      Furthermore, based upon responses received to the inquiry of over 18,000 colleagues of McKinsey RTS and its affiliates, no employees of the McKinsey RTS Team or McKinsey RTS have immediate family members that are related to or employed by the Debtors. In addition, to the best of my knowledge and belief, no employees of the McKinsey RTS Team or McKinsey RTS or their family members hold equity securities of the Debtors.[7]

32.      In addition, as part of its practice, McKinsey RTS and its affiliates provide support to clients on purchasing and supply management relating to direct and indirect materials and services, including telecommunications.  Generally, the services consist of fact-based analysis to understand the client's costs and who other potential vendors are, support in

---

[7]      In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information as to whether any employee of McKinsey RTS or its affiliates or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness or otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors' estates.

-16-

developing Requests for Proposal, and analysis of and advice relating to the responses from

vendors.  McKinsey RTS and its affiliates do not directly contact or negotiate with vendors for

their clients, except that McKinsey RTS may negotiate as agreed with its clients in certain

circumstances.  While we do not believe that such support is adverse to the interests of the

Debtors, out of an abundance of caution, McKinsey RTS will independently evaluate the request

of any member of McKinsey RTS to provide purchasing and supply management support

relating to telecommunications to any company for whom any of the Debtors are either an

incumbent provider or a potential vendor, prior to confirming such support.

   33. To the best of my knowledge and belief, no client of McKinsey RTS and

its affiliates who is identified on the Interested Parties List accounts for more than one percent of

McKinsey RTS's and its affiliates' gross annual revenue on a consolidated basis as of

September 30, 2014.

   34. McKinsey RTS has adopted procedures to identify any potential support

by McKinsey RTS that focuses on a direct commercial relationship or transaction with the

Debtors, so that McKinsey RTS may either make disclosure of such potential engagement to the

Bankruptcy Court or take other appropriate steps.  If and when retained, McKinsey RTS will

again communicate to all partners in McKinsey RTS and its affiliates to notify the office of the

General Counsel of any such proposed client engagements.

   35. Finally, as part of its diverse practice, McKinsey RTS and its affiliates are

involved in numerous matters and transactions involving many different professionals, including

attorneys, accountants and financial consultants, some of which may represent the Debtors or

claimants and Interested Parties in the Debtors' chapter 11 cases.  For instance, McKinsey RTS

and its affiliates may have in the past been represented by, may currently be represented by, and

-17-

may in the future be represented by attorneys, law firms or financial advisors who are involved

in these proceedings, including law firms and financial advisors representing the Debtors.

Further, McKinsey RTS and its affiliates may in the past have served, may currently serve, and

may in the future serve professionals in these cases on matters unrelated to the Debtors'

chapter 11 cases.  In addition, McKinsey RTS and its affiliates may in the past have worked with,

may currently work with, and likely will in the future work with professionals in these cases on

matters unrelated to these cases.  Lastly, McKinsey RTS and its affiliates may have in the past

contracted with, may currently contract with, and may in the future contract with certain service

providers listed on the Interested Parties List for necessary business services.  Based upon my

current knowledge of the professionals involved, to the best of my knowledge, none of these

business relations constitute interests materially adverse to the Debtors herein in matters upon

which McKinsey RTS is to be employed, and none are in connection with these cases.

36.     In the ninety days leading up to the Petition Date, McKinsey RTS received

payments totaling $2,757,011.29 in the aggregate for services rendered and expenses incurred on

behalf of the Debtors.  McKinsey RTS received no other payments from the Debtors during the

ninety days immediately preceding the Petition Date.  As of the Petition Date, the Debtors did

not owe McKinsey RTS for any fees or expenses incurred prior to the Petition Date.

37.     McKinsey RTS has not shared or agreed to share any of its compensation

from the Debtors with any other person, other than as permitted by section 504 of the

Bankruptcy Code.

38.     Based upon the foregoing, I believe that McKinsey RTS does not hold an

adverse interest to the Debtors' estates, and that McKinsey RTS is a "disinterested person," as

that term is defined in section 101(14) of the Bankruptcy Code.

-18-

39.    McKinsey RTS reserves the right to supplement this Declaration in the event it becomes aware of any relationship or other information that requires disclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 23, 2014
        Chicago, Illinois

                                        /s/   Kevin Carmody
                                        Kevin Carmody
                                        Practice Leader

**SCHEDULE 1**

**NII Holdings, Inc., et al.**

**Interested Parties**

**Debtors**

NII Holdings, Inc.
Nextel International (Services), Ltd.
NII Aviation, Inc.
NII Capital Corporation
NII Funding Corporation
NII Global Holdings, Inc.
NII International Holdings S.à r.l.
NII International Services S.à r.l.
NII International Telecom S.C.A.
Airfone Holdings LLC
McCaw International (Brazil) LLC
Nextel International (Uruguay) LLC
NII Mercosur LLC

**Recently Dissolved or Divested Entities**

Conect, S.A.
Cosmofrecuencias S.A. de C.V.
Fonotransportes Nacionales S.A. de C.V.
Fonotransportes S.A. de C.V.
Fundación Nextel para la Acción Comunitaria
Millicom Peru, S.A.
Multifon S.A. de C.V.
Multikom, S.A.
Nextel Chile, S.A.
Nextel del Peru, S.A.
Nextel International Mexico, Ltd.
Nextel S.A. (f/k/a Centennial Cayman Corporation Chile
   S.A.)
Nextel Serviços de Telecomunicações Ltda.
Nextel Torres e Equipamentos Ltda.
NII Digital XXI, S. de R.L. de C.V.
NII PCS S.A. de C.V.
Operadora de Comunicaciones S.A. de C.V.
Radio Movel Digital, S.A.
RMD do Brasil, S.A.
Servicios de Radiocomunicación Movil de México S. de R.L. de
   C.V.
Telcom Telecomunicacoes do Brasil Ltda.
Teletransportes Integrales S. de R.L de C.V.

**Non-Debtor Subsidiaries of the Debtors**

Centennial Cayman Corporation
Comunicaciones Nextel de México S.A. de C.V.
Delta Comunicaciones Digitales S. de R.L. de C.V.
Fundación Nextel, A.C.
Instituto Nextel
Instituto Nextel Esporte e Cultura
Inversiones Nextel de México S. de R.L. de C.V.
Nextel Communications Argentina S.R.L.
Nextel International (Argentina), Ltd.

Nextel International (Indonesia) LLC
Nextel International (Peru) LLC
Nextel Telecomunicações de Longa Distancia Ltda.
Nextel Telecomunicações Ltda.
Nextel Telecomunicações, S.A.
Nextel Telecomunicações SMP Ltda.
Nextel Uruguay, S.A.
NIHD Telecom Holdings, B.V.
NII 4G S. de R.L. de C.V.
NII Digital S. de R.L. de C.V.
NII Holdings (Cayman), Ltd.
NII International Mercosur S.à r.l.
NII International Mobile S.à r.l.
NII Mercosur Móviles, S.L.
NII Mercosur Telecom, S.L.
NII Mexico LLC
NII Telecom S. de R.L. de C.V.
Prestadora de Servicios de Radiocomunicación S. de R.L. de
   C.V.
Radiophone S. de R.L. de C.V.
Servicios NII S. de R.L. de C.V.
Sunbird Participações Ltda.
Sunbird Telecomunicações Ltda.

**Major Noteholders and Related Parties**

AdvisorShares Trust
Allianz Global Investors Luxembourg
Aurelius Capital Management
BlackRock Fund Advisors
Calvert Group Ltd.
Capital International Fund Management
Capital Research & Management
Capital Research Global Investors
Capital World Investors
CI Investments Inc.
Eaton Vance Management
Fidelity Management & Research
Franklin Advisers, Inc.
JPMorgan Investment Management
Oppenheimer Funds
Principal Management Corporation
Putnam Investment Management
Ridgeworth Capital Management, Inc.
T. Rowe Price Associates, Inc.
Third Avenue Management LLC
U.S. Bank National Association
USAA Investment Management Company
Wilmington Savings Fund Society, FSB
Wilmington Trust, National Association

**Current and Recent Former Officers
and Directors of the Debtors**

Salvador Alvarez
Kevin L. Beebe
Gary D. Begeman
Tahmin O. Clarke
Paulino Do Rego Barros, Jr.
Juan R. Figuereo
Daniel E Freiman
Teri Gendron
Donald Guthrie
Gokul V. Hemmady
Charles M. Herington
Carolyn F. Katz
Ricardo Knoepfelmacher
John M. McMahon
Donald Neff
Rosendo G. Parra
Raul Ramirez
John W. Risner
Gregory J. Santoro
Steven M. Shindler
Shana C. Smith
Dave Truzinski

**Major Current Business Affiliations
of Debtors' Current Directors**

2bpartners, LLC
Accuride Corporation
Affiniti LLC
Alltel Corporation
American Tower Corporation
Angra Partners Gestao de Recursos, S.A.
Author & Company
Bertin Energia & Participacoes, S.A.
Brinker International, Inc.
Citizen Global
Daylight Partners
Equifax, Inc.
GS Capital Partners, L.P.
Hy Cite Corporation
Junxion, Inc.
Klox Technologies
Molson Coors Brewing Company
Pacific Gas & Electric Company
Parwin Partners
RIME Communications Capital
SBA Communications Corporation
Skyworks Solutions, Inc.
Sting Communications
Stonecreek Entertainment
Syniverse Corporation
Syniverse Holdings, Inc.
Syniverse Technologies LLC
Telecom Transport Management, Inc.
TPG Capital
Trilogy Equity Partners
Vicunha Textil
Vonage Holdings Corporation
Worldfund

Ymax/Magic Jack
Zumba Fitness LLC

**The Debtors' Professionals and Service Providers**

Accenture LLP
Aguirre Abogados Y Asesores SAC
Alvarez & Marsal North America LLC
Auxis LLC
Baker & Mackenzie
Caten McGuire LLC
Clearwater Analytics LLC
Covington & Burling LLP
Davis Wright Tremaine LLP
Deloitte & Touche LLP
Deloitte Abogados, S.L.
Deloitte Consulting LLP
Deloitte Financial Advisory Services LLP
Deloitte Tax LLP
Deloitte Tax Products Company LLC
Ernst & Young LLP
Ernst & Young Product Sales LLC
Estudio Harnecker Carey LTDA.
Experis US, Inc.
Georgeson, Inc.
Greenberg Traurig
Guyer & Regules
Hogans Lovell
Hoyng Monegier LLP
Hunton & Williams LLP
Intertrust
Jones Day
Jose Miguel Porto Urrutia
Kineticom, Inc.
KPMG LLP
Lape Mansfield Nakasian & Gibson LLC
Lee Hecht Harrison LLC
Maples and Calder
McGuire Woods LLP
McKinsey Recovery & Transformation Services
McKinsey & Company, Inc.
Novalink Solutions LLC
Palacio Y Asociados Sociedad Civil
Pearl Meyer & Partners LLC
Pinheiro Neto Abogados
Posz Law Group Plc
PricewaterhouseCoopers LLP
Rodrigo, Elias & Medrano Abogados
Rothschild, Inc.
Shefsky & Froelich Ltd.
Taft Stettinius & Hollister LLP
TK Labs, Inc.
TMG Legal, Inc.
Verizon
Verizon Business
Williams Mullen
Winston & Strawn LLP

**Known Professionals for Certain**
**Non-Debtor Parties in Interest**

Akin, Gump, Strauss, Hauer & Feld LLP
Blackstone
FTI Consulting
Houlihan Lokey
Kirkland & Ellis LLP
Kramer Levin Naftalis & Frankel LLP
Metrica Investments LLC
Millco Advisors, LP
Paul, Weiss, Rifkind, Wharton & Garrison LLP

**Depository and Disbursement Banks**

Banque et Caisse d'Epargne de l'Etat
Barclays Plc
Barclays Wealth Management
Deutsche Bank
Deutsche Bank Securities
Deutsche Bank Trust Company Americas
JP Morgan Chase & Co.
Wilmington Trust, N.A.

**Major Bank Lenders of Non-Debtor Affiliates**
**(Not Otherwise Listed)**

Banco do Brazil
Caixa

**Issuers of Letters of Credit**

Bank of America, N.A.
Barclays of London

**Major Lessors and Related Entities**

Boston Properties Limited Partnership
One Freedom Square LLC

**Subtenants**

Science Applications International Corporation

**Insurers, Insurance Brokers**
**and Third Party Administrators**

ACE American Insurance
Allianz
Aspen
AXA Corporate Solutions
Berkley
Cigna Health and Life Insurance Company
Chartis
Chubb – Federal
Delta Dental
Everest National Insurance
FM Global
Great American Insurance
Hartford - Twin City Fire Insurance
Ironshore
Liberty - Ohio Casualty Insurance Company

Lloyds of London
National Union
National Union Fire Insurance Co. Pittsburgh
North American Elite Company
Swiss Re
Torus
Unum Life Insurance Company
US Specialty/PIA
Westchester Fire Insurance
Willis of New York, Inc.
XL
XL Capital

**Parties in Litigation with the Debtors**

Incentive Travel Solutions LLC
Iron Workers District Counsel of New England Pension
Fund
Rojas, Jose L.

**The Debtors' Largest Unsecured**
**Creditors (Excluding Noteholders)**

American Tower Corporation
AT&T Mobility II LLC
BOFILL MIR & ALVAREZ JANA
Boston Properties Limited Partnership
China Development Bank
Covington & Burling LLP
Ericsson, Inc
Ernst & Young LLP
Interstate Relocation
Motorola Solutions, Inc.
Solo W-2, Inc.
Taft Stettinius & Hollister LLP
TCS America
UBS Securities LLC
XO Communications, LLC

**Parties to Material Contracts, License Agreements**
**and Permits (that are not large unsecured creditors)**

Apple, Inc.
BlackBerry Limited
Critical Path, Inc.
FUCATA S.A.
Google, Inc.
Grupo DEM Argentina S.A.
Grupo Veintitres
Hauwei Technologies Co., Ltd.
Igloo, Inc.
Motorola, Inc.
Optimum Advisors
Oracle America, Inc.
Pragmatic Solutions
Sprint Corporation
Thexal S.A.
Workday

**Attorneys for the United States Trustee's**
**Office for the Southern District of New York**

Michael Driscoll
Richard W. Fox
Susan Golden
William K. Harrington
Nazar Khodorovsky
Brian S. Masumoto
Richard C. Morrissey
Serene Nakano
Linda Riffkin
Andrea B. Schwartz
Paul K. Schwartzberg
Andy Velez-Rivera
Greg M. Zipes

**Bankruptcy Judges for the**
**Southern District of New York**

Chief Judge Cecelia G. Morris
Judge Stuart M. Bernstein
Judge Shelley C. Chapman
Judge Robert D. Drain
Judge Robert E. Gerber
Judge Martin Glenn
Judge Allan L. Gropper
Judge Robert E. Grossman
Judge Sean H. Lane
Judge Burton R. Lifland
Judge James M. Peck

**<u>EXHIBIT C</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
NII Holdings, Inc., et al.,[1]                               :    Case No. 14-12611 (SCC)
                                                             :
                    Debtors.                                 :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**ORDER APPROVING THE**
**APPLICATION OF DEBTORS AND DEBTORS**
**IN POSSESSION, PURSUANT TO SECTIONS**
**327(a), 328, 330, 331 AND 1107(b) OF THE BANKRUPTCY CODE,**
**BANKRUPTCY RULES 2014(a) AND 2016(b) AND LOCAL**
**BANKRUPTCY RULES 2014-1 AND 2016-1, FOR AN ORDER**
**AUTHORIZING THEM TO RETAIN AND EMPLOY MCKINSEY**
**RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS TURNAROUND**
**ADVISOR FOR THE DEBTORS _NUNC PRO TUNC_ TO OCTOBER 23, 2014**

This matter coming before the Court on the Application of Debtors and Debtors in

Possession, Pursuant to Sections 327(a), 328, 330, 331 and 1107(b) of the Bankruptcy Code,

Bankruptcy Rules 2014(a) and 2016(b) and Local Bankruptcy Rules 2014-1 and 2016-1, for an

Order Authorizing Them to Retain and Employ McKinsey Recovery & Transformation Services

U.S., LLC ("McKinsey RTS") as Turnaround Advisor for the Debtors Nunc Pro Tunc to

October 23, 2014 (the "Application"),[2] filed by the debtors and debtors in possession in the

above captioned cases (collectively, the "Debtors"); the Court having reviewed the Application

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); and NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA 20190.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

and the terms set forth in the Engagement Letter attached to the Application as <u>Exhibit A</u>; and

having reviewed the Carmody Declaration; and having considered the statements of counsel with

respect to the Application at a hearing before the Court (the "<u>Hearing</u>"); and the Court having

found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

(b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Application and the

Hearing was sufficient under the circumstances, (d) McKinsey RTS is a "disinterested person" as

such term is defined under section 101(14) of the Bankruptcy Code and (e) the retention of

McKinsey RTS by the Debtors is in the best interests of the Debtors, their estates, their creditors

and other parties in interest; and the Court having determined that the legal and factual bases set

forth in the Application, the Carmody Declaration and at the Hearing establish just cause for the

relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Application is approved as set forth herein.

2.    Pursuant to sections 327(a), 328, 330, 331 and 1107(b) of the Bankruptcy

Code, Bankruptcy Rules 2014(a) and 2016(b) and Local Bankruptcy Rules 2014-1 and 2016-1,

the Debtors are authorized to employ and retain McKinsey RTS as turnaround advisor to the

Debtors, <u>nunc</u> <u>pro</u> <u>tunc</u> to October 23, 2014 on the terms set forth in the Engagement Letter,

subject to the terms of this Order.

3.    The Engagement Letter is approved <u>nunc</u> <u>pro</u> <u>tunc</u> to October 23, 2014,

the date of its execution by the Debtors and McKinsey RTS.

4.    The terms of the Engagement Letter, including without limitation, the

compensation provisions and the indemnification provisions, are reasonable terms and conditions

of employment and are hereby approved.

5.      McKinsey RTS shall be compensated in accordance with, and will file, interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010, the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York*, dated January 29, 2013, the United States Trustee Fee Guidelines, the *Order Pursuant to Section 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1, Establishing Procedures for Interim Monthly Compensation for Professionals* [Docket No. 100] and any further orders of this Court.

6.      The U.S. Trustee retains all rights to object to McKinsey RTS's interim and final fee applications on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review the interim and final applications pursuant to section 330 of the Bankruptcy Code.

7.      McKinsey RTS will not charge the estates for time spent preparing, reviewing, editing or revising the invoices or time records submitted in support of any monthly fee statements or fee applications.

8.      All of McKinsey RTS's personnel who provide services to or on behalf of the Debtors, with the exception of clerical staff, shall keep reasonably detailed time records of the services they have performed in one-tenth hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered and the amount of compensation requested.

9.      McKinsey RTS shall be reimbursed only for reasonable and necessary expenses, including but not limited to travel, consultants, lodging, postage and communications charges in accordance with the terms of the Engagement Letter.  McKinsey RTS shall maintain detailed documentation of its professionals' actual and necessary costs and expenses in accordance with the RTS Reimbursement Policy as described in the Application.

10.      McKinsey RTS shall provide ten business days' notice to the Debtors, the United States Trustee for the Southern District of New York and any statutory committee appointed in these chapter 11 cases in connection with any increase of the hourly rates listed in the Application or the Engagement Letter.

11.      The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

12.      McKinsey RTS shall apply any remaining amounts of its prepetition Retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first Order of the Court awarding fees and expenses to McKinsey RTS.

13.      The indemnification, contribution and reimbursement provisions in the Engagement Letter are approved in their entirety; provided however:

- All requests by Indemnified Parties for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall any Indemnified Party be indemnified in

the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

- In no event shall Indemnified Parties be indemnified if the Debtors or a representative of the estate, assert a claim for, and a court determines by final order that such claim arose out of, McKinsey RTS's own bad faith, self-dealing, breach of fiduciary duty (if any) as a result of gross negligence or willful misconduct.

- In the event an Indemnified Party seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in McKinsey RTS's own applications, both interim and final, and such invoices and time records shall be subject to the Local Bankruptcy Rules, any fee and expense guidelines of this Court, and such other procedures as may be fixed by order of the Court, and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

16.     To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

17.     This Order shall be immediately effective and enforceable upon its entry.

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2014
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE