**Hearing Date and Time:  January 28, 2015 at 10:00 a.m. (Eastern Time)**
**Response Deadline:  January 20, 2015 at 4:00 p.m. (Eastern Time)**

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Scott J. Greenberg
Lisa Laukitis

  - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8100
Kenneth H. Eckstein
Adam C. Rogoff
Stephen D. Zide

Attorneys for the Official Committee of Unsecured
Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
NII Holdings, Inc., <u>et al.</u>,[1]                          :    Case No. 14-12611 (SCC)
                                                               :
                        Debtors.                               :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

### MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) APPROVING THE FORM AND MANNER OF SERVICE OF DISCLOSURE STATEMENT NOTICE, (III) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA  20190.

**REJECT PLAN OF REORGANIZATION, (IV) APPROVING RELATED
NOTICE AND RIGHTS OFFERING PROCEDURES AND (V) SCHEDULING
HEARING ON CONFIRMATION OF PLAN OF REORGANIZATION**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

NII Holdings, Inc. ("NII Holdings") and twelve of its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), along with the

Official Committee of Unsecured Creditors (the "Creditors' Committee") and, together with the

Debtors, the "Plan Proponents") hereby move the Court for the entry of an order, pursuant to

sections 1125, 1126 and 1128 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 3017-1, 3018-1 and 3020-1 of the Local Rules of Practice and

Procedure of the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules"), approving:

1.    the Disclosure Statement for Joint Plan of Reorganization Proposed by
Debtors and Debtors in Possession and Official Committee of Unsecured
Creditors, dated December 22, 2014 (as it may be amended or modified, the
"Disclosure Statement");

2.    the notice of the hearing on approval of the Disclosure Statement
(the "Disclosure Statement Notice");

3.    certain procedures (the "Solicitation Procedures") for the solicitation and
tabulation of votes to accept or reject the Joint Plan of Reorganization of
Debtors and Debtors in Possession and Official Committee of Unsecured
Creditors, dated December 22, 2014 (as it may be amended or modified,
the "Plan"),[2] including establishing:

(a)    the forms of ballots for submitting votes on the Plan,

---

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

(b)     the deadline for submission of such ballots (the "<u>Voting Deadline</u>"),

(c)     the contents of the proposed solicitation packages (collectively, the "<u>Solicitation Packages</u>") to be distributed to creditors in connection with the solicitation of votes on the Plan, and

(d)     the proposed record date for Plan voting;

4.      procedures for participating in the Debtors' Rights Offering (as defined below) attached as <u>Exhibit H</u> (the "<u>Rights Offering Procedures</u>"), and the contents of all documentation relating to the Rights Offering (the "<u>Rights Offering Documents</u>"); and

5.      the form and manner of notice of the hearing on confirmation of the Plan and certain related relief (collectively, the "<u>Confirmation Procedures</u>").

In support of this motion, the Plan Proponents respectfully represent as follows:

## <u>Preliminary Statement</u>

By this motion, the Plan Proponents seek the Court's approval of various substantive and procedural matters central to the Plan confirmation process—and, thus, essential to the Debtors' reorganization efforts.  As a threshold matter, the Plan Proponents seek approval of the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.  The Plan Proponents submit that the wealth of information in the Disclosure Statement satisfies the standard for approval set forth in the Bankruptcy Code.

Subject to approval of the Disclosure Statement, the Plan Proponents further seek approval of the following three sets of procedures:  (i) the Solicitation Procedures, which establish the form and manner of, as well as certain rules and timelines governing, the solicitation and tabulation of votes on the Plan, including the form of ballots and other solicitation documents; (ii) the Rights Offering Procedures, which set forth the procedures for participating in the Debtors' Rights Offering and (iii) the Confirmation Procedures, which schedule the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>"), provide

for adequate notice thereof and create a framework for the filing and service of objections to confirmation (and any responses thereto).

Together, the Solicitation Procedures, Rights Offering Procedures and Confirmation Procedures will streamline the Plan solicitation and confirmation processes and establish important dates and deadlines for such processes.  For the convenience of the Court and parties in interest, the following is a summary timeline identifying the relevant dates and proposed deadlines:

- December 22, 2014:    Date of service of Disclosure Statement Notice;

- January 20, 2015:    Deadline for objections to Disclosure Statement;

- January 27, 2015:    Deadline for replies to objections to Disclosure Statement;

- January 28, 2015:    Record date for voting purposes;

- January 28, 2015:    Disclosure Statement hearing;

- February 4, 2015:    Commencement of Plan solicitation period and date of service of Solicitation Packages;

- February 9, 2015:    Date of publication of the notice of Confirmation Hearing;

- March 4, 2015:    Deadline for motions pursuant to Bankruptcy Rule 3018;

- March 11, 2015:    Voting Deadline;

- March 11, 2015:    Deadline for objections to confirmation of the Plan;

- March 18, 2015:    Deadline for filing of the Tabulation Declaration (as defined below);

- March 23, 2015:    Deadline for Plan Proponents' reply to any objections to confirmation of the Plan;

- March 25, 2015:    Confirmation Hearing.

As detailed herein, the Solicitation Procedures, Rights Offering Procedures and Confirmation Procedures comply fully with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and, therefore, should be approved.

### Background

1.      On September 15, 2014 (the "Petition Date"), certain of the Debtors (the "Original Debtors") commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 8, 2014, four of the Original Debtors' affiliates also filed chapter 11 bankruptcy petitions in this District. All of the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

2.      On September 29, 2014, and November 5, 2014, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), pursuant to sections 1102(a) and (b) of the Bankruptcy Code appointed the Creditors' Committee.[3]

3.      The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      NII Holdings is the ultimate parent and holding company for its debtor and non-debtor affiliates.  Certain of the Debtors' non-debtor affiliates provide wireless communication services under the Nextel™ brand name for businesses and consumers in Latin America.

---

[3]      The Creditors' Committee consists of the following seven members: (a) Wilmington Trust, National Association; (b) Capital Research and Management Company; (c) Aurelius Investment, LLC; (d) Wilmington Savings Fund Society, FSB; (e) American Tower do Brasil - Cessao de Infraestruturas Ltda.; (f) Motorola Mobility LLC; and (g) U.S. Bank, National Association.

**Jurisdiction**

5.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.      Pursuant to sections 1125, 1126 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020 and Local Bankruptcy Rules 3017-1, 3018-1 and 3020-1, the Plan Proponents hereby seek the entry of an order:  (a) approving the Disclosure Statement, the form and manner of service of the Disclosure Statement Notice, the Solicitation Procedures, the Rights Offering Procedures and the Confirmation Procedures; and (b) granting related relief.

**The Plan and Disclosure Statement**

7.      Contemporaneously with the filing of this motion, the Plan Proponents have filed the Disclosure Statement and Plan, which are the product of extensive, good-faith negotiations with the Debtors' various creditor constituencies.

8.      For administrative convenience, the Plan organizes the Debtors into five groups and assigns a letter to each such group (each, a "Debtor Group") and a number to each of the Classes of Claims against or Interests in the Debtors in such Debtor Group.  To the extent a Holder has a Claim that may be asserted against more than one Debtor in a Debtor Group, the vote of such Holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor in such Debtor Group against which such Holder has a Claim.  For consistency, similarly designated Classes of Claims and Interests are assigned the same number across each of the Debtor Groups.  Any non-sequential enumeration of the Classes is intentional

to maintain consistency.  Claims against and Interests in each Debtor Group are classified in up to 13 separate Classes as follows:

| Letter | Debtor Group |
|---|---|
| A | **Holdings Debtor Group** <br> NII Holdings, Inc. |
| B | **Capco Debtor Group** <br> NII Capital Corp. |
| C | **Capco Guarantors Debtor Group** <br> Nextel International (Services), Ltd. <br> NII Aviation, Inc. <br> NII Funding Corp. <br> NII Global Holdings, Inc. |
| D | **Luxembourg Debtor Group** <br> Nextel International Holdings S.à r.l. <br> Nextel International Services S.à r.l. <br> NII International Telecom S.C.A. |
| E | **Transferred Guarantor Debtor Group** <br> NII Mercosur, LLC <br> Airfone Holdings, LLC <br> Nextel International (Uruguay), LLC <br> McCaw International (Brazil), LLC |

| Number | Designation |
|---|---|
| 1 | Priority Claims |
| 2 | Secured Claims |
| 3 | Sale-Leaseback Guaranty Claims |
| 4 | Luxco Note Claims |
| 5 | Capco 8.875% / 10% Note Claims |
| 6 | Capco 7.625% Note Claims |
| 7 | CDB Documents Claims |
| 8 | General Unsecured Claims |
| 9 | Convenience Claims |
| 10 | Section 510 Claims |
| 11 | Non-Debtor Affiliate Claims |
| 12 | NII Interests |
| 13 | Subsidiary Debtor Equity Interests |

9.    The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or (c) deemed to accept or reject the Plan.

| Class(es) | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1A – 1E | Priority Claims | Unimpaired | Deemed to Accept |
| 2A – 2E | Secured Claims | Unimpaired | Deemed to Accept |
| 3A, 3D | Sale-Leaseback Guaranty Claims | Impaired | Entitled to Vote |
| 4A, 4D | Luxco Note Claims | Impaired | Entitled to Vote |
| 5A – 5C, 5E | Capco 8.875% / 10% Note Claims | Impaired | Entitled to Vote |
| 6A – 6C | Capco 7.625% Note Claims | Impaired | Entitled to Vote |
| 7A | CDB Documents Claims | Impaired | Entitled to Vote |
| 8A – 8E | General Unsecured Claims | Impaired | Entitled to Vote |
| 9A – 9E | Convenience Claims | Unimpaired | Deemed to Accept |
| 10A – 10E | Section 510 Claims | Impaired | Deemed to Reject |
| 11A – 11E | Non-Debtor Affiliate Claims | Unimpaired | Deemed to Accept |
| 12A | NII Interests | Impaired | Deemed to Reject |
| 13B – 13E | Subsidiary Debtor Equity Interests | Unimpaired | Deemed to Accept |

10.    As discussed below, the Plan Proponents propose 10:00 a.m. on January 28, 2015 for the hearing to consider approval of the relief requested in this motion, including approval of the Disclosure Statement, with the deadline to object to approval of the Disclosure Statement established as 4:00 p.m. (Eastern time) on January 20, 2015.  If the Disclosure Statement and the other relief sought in this motion are approved by the Court, the Plan Proponents propose the following timeline with respect to the solicitation and confirmation of the Plan:  (a) the Plan Proponents will mail Solicitation Packages on or before February 4, 2015, (b) the voting and objection deadline with respect to the Plan will be March 11, 2015 and (c) the Confirmation Hearing will be held on March 25, 2015.

11.    The Plan Proponents also propose to file a memorandum of law in support of confirmation of the Plan containing a consolidated reply to any objections to the Plan no later than March 23, 2015 and the declaration of the Voting Agent (as such term is defined below) certifying the amount and number of allowed claims of each class accepting or rejecting the Plan (the "Tabulation Declaration") no later than March 18, 2015, i.e., seven days prior to the commencement of the Confirmation Hearing.[4]  The Plan Proponents submit that the issues raised in any objections to the Plan, and any proposed resolutions to those issues, can more efficiently and effectively be considered by the Court and parties in interest if the Plan Proponents are permitted to file a consolidated reply to the objections that will set forth responses to the issues raised and, if appropriate, proposed modifications to the Plan to address those issues.  The Plan Proponents also will include with any consolidated reply a chart summarizing any objections to

---

[4]    Local Bankruptcy Rule 3018-1(a), entitled "Certification of Vote," provides that "[a]t least seven days prior to the hearing on confirmation of a . . . chapter 11 plan, the proponent of a plan or the party authorized to receive the acceptances and rejections of the plan shall certify to the Court in writing the amount and number of allowed claims or allowed interests of each class accepting or rejecting the plan."

the Plan and any proposed resolutions thereto for the Court's convenience.  In light of the current

posture of these chapter 11 cases, the Plan Proponents submit that the proposed timeline is

reasonable and appropriate under the circumstances.

### Request for Approval of the Disclosure Statement

12.     The Plan Proponents request that the Disclosure Statement be approved as

providing "adequate information" in accordance with section 1125 of the Bankruptcy Code.[5]

For the reasons described below, the Plan Proponents submit that such approval is warranted and

appropriate.

13.     Under section 1125 of the Bankruptcy Code, a debtor must provide its

creditors and interest holders with "adequate information" regarding the debtor's proposed plan

of reorganization:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor
> to the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a
> hypothetical investor of the relevant class to make an informed
> judgment about the plan . . . .  [I]n determining whether a
> disclosure statement provides adequate information, the court shall
> consider the complexity of the case, the benefit of additional
> information to creditors and other parties in interest, and the cost of
> providing additional information . . . .

11 U.S.C. § 1125(a)(1).  Thus, a debtor's disclosure statement must, as a whole, provide

information that is "reasonably practicable" to permit an "informed judgment" by creditors and

interest holders entitled to vote on the debtor's plan of reorganization.  See Abel v. Shugrue (In re

---

[5]     The Debtors reserve the right, to amend, modify or supplement the Disclosure Statement before the
Disclosure Statement Hearing (as defined below).

Ionosphere Clubs, Inc.), 179 B.R. 24, 29 (S.D.N.Y. 1995); In re Amfesco Indus., Inc.,

No. CV-88-2952 (JBW), 1988 WL 141524, at *5 (E.D.N.Y. Dec. 21, 1988) (stating that "[u]nder

section 1125 of the Bankruptcy Code, a reasonable and typical creditor or equity security holder

must be provided 'adequate information' to make an informed judgment regarding a proposed

plan."); BSL Operating Corp. v. 125 E. Taverns, Inc. (In re BSL Operating Corp.),

57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986) (stating that "[s]ection 1125 might be described as a

non-rigid 'how-to-inform' section . . . .  A disclosure statement . . . is evaluated only in terms of

whether it provides sufficient information to permit enlightened voting by holders of claims or

interests."); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979

(Bankr. N.D.N.Y. 1988) (the adequacy of a disclosure statement is to be "determined on a

case-specific basis under a flexible standard that can promote the policy of chapter 11 towards

fair settlement through a negotiation process between informed interested parties.").

       14.     The Court has broad discretion in determining whether a disclosure

statement contains adequate information.  See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec.

Power Coop.), 150 F.3d 503, 518 (5th Cir. 1998), cert. denied, 119 S. Ct. 2019 (1999);

In re WorldCom, Inc., No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. Jun. 30, 2003)

(stating that "[t]he determination of what is adequate information is subjective and made on a

case by case basis.  This determination is largely within the discretion of the bankruptcy court.")

(quoting Ionosphere Clubs, 179 B.R. at 29); Kirk v. Texaco, Inc., 82 B.R. 678, 682 (S.D.N.Y.

1988) (stating that "[t]he legislative history could hardly be more clear in granting broad

discretion to bankruptcy judges under § 1125(a):  'Precisely what constitutes adequate

information in any particular instance will develop on a case-by-case basis.  Courts will take a

practical approach as to what is necessary under the circumstances of each case . . . .'"

(quoting H.R. Rep. No. 595, at 408-09 (1977)).  This grant of discretion was intended to permit courts to tailor the disclosures made in connection with a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances.  See H.R. Rep. No. 595, at 408-09 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6364-65 ("In reorganization cases, there is frequently great uncertainty.  Therefore, the need for flexibility is greatest.").

15.    Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  In that regard, courts generally examine whether a disclosure statement contains, as applicable, the following types of information:

a.    the circumstances that gave rise to the filing of the bankruptcy petition;

b.    a complete description of the available assets and their value;

c.    the anticipated future of the debtor;

d.    the source of the information provided in the disclosure statement;

e.    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f.    the financial condition and performance of the debtor while in chapter 11;

g.    information regarding claims against the debtor's estate;

h.    a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

i.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

j.    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

k.    a summary of the plan of reorganization;

l.      an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m.      the collectibility of any accounts receivable;

n.      any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

o.      information relevant to the risks being taken by the creditors and interest holders;

p.      the actual or projected value that could be obtained from avoidable transfers;

q.      the existence, likelihood and possible success of nonbankruptcy litigation;

r.      the tax consequences of the plan of reorganization; and

s.      the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988);

see also In re Copy Crafters Quickprint, Inc., 92 B.R. at 980 (adequacy of disclosure statement

evaluated in light of the factors set forth in Scioto Valley Mortgage).  This list of factors is not

meant to be exclusive, nor must a disclosure statement provide all the information on the list—

rather, the court must decide what information is appropriate in each case.  See In re Ferretti,

128 B.R. 16, 18-19 (Bankr. D. N.H. 1991) (adopting similar list); see also In re Phoenix

Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of similar list of factors

but cautioning that "no one list of categories will apply in every case").

        16.     The Disclosure Statement contains more than sufficient information to

make an informed judgment about the Plan, including information with respect to:  (a) the terms

of the Plan and its implementation; (b) information relating to the Debtors' business and capital

structure; (c) certain events preceding the Debtors' chapter 11 cases; (d) the operation of the

Debtors' business during the course of their chapter 11 cases; (e) the feasibility of the Plan and

ability of the Reorganized Debtors to operate the business without further financial

reorganization or liquidation; (f) potential recovery actions held by the Debtors' estates and other

nonbankruptcy litigation; (g) descriptions of the securities to be issued under the Plan;

(h) information regarding claims against the Debtors' estates (i) estimates of the claims asserted,

or to be asserted, against the Debtors' estates and the value of distributions to be received by

holders of allowed claims and allowed interests; (j) the risk factors affecting the Plan; (k) the

method and timing of distributions under the Plan; (l) a liquidation analysis identifying the

estimated return that creditors would receive if the Debtors' bankruptcy cases were cases under

chapter 7 of the Bankruptcy Code; (m) the federal tax consequences of the Plan; and

(n) appropriate disclaimers regarding the Court's approval of information only as contained in the

Disclosure Statement, including the disclaimer required by Local Bankruptcy Rule 3017-1.[6]

17.     Accordingly, the Disclosure Statement contains adequate information

within the meaning of section 1125 of the Bankruptcy Code and should be approved as such.

### Request for Approval of the Notice of Disclosure Statement Hearing

18.     Bankruptcy Rule 3017(a) provides as follows:

[A]fter a disclosure statement is filed in accordance with
[Bankruptcy] Rule 3016(b), the court shall hold a hearing on at
least 28 days' notice to the debtor, creditors, equity security holders
and other parties in interest as provided in [Bankruptcy] Rule 2002
to consider the disclosure statement and any objections or
modifications thereto.  The plan and the disclosure statement shall
be mailed with the notice of the hearing only to the debtor, any
trustee or committee appointed under the [Bankruptcy] Code, the

---

[6]    Local Bankruptcy Rule 3017-1(b) provides that "before a proposed disclosure statement has been approved
by the Court, the proposed disclosure statement shall have on its cover, in boldface type, the following
language or words of similar import:  **This is not a solicitation of acceptance or rejection of the plan.
Acceptances or rejections may not be solicited until a disclosure statement has been approved by the
Bankruptcy Court. This disclosure statement is being submitted for approval but has not been
approved by the Court.**" (emphasis in original)

> Securities and Exchange Commission and any party in interest
> who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).[7]  In addition, Bankruptcy Rule 2002(b) requires twenty-eight days' notice by mail to all creditors and indenture trustees of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.  See Fed. R. Bankr. P. 2002(b). Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.  See id. 2002(d).

19.    The hearing to consider approval of the Disclosure Statement currently is scheduled for 10:00 a.m. (Eastern time) on January 28, 2015 (the "Disclosure Statement Hearing"), with the deadline to object to approval of the Disclosure Statement established as 4:00 p.m. (Eastern time) on January 20, 2015 (the "Disclosure Statement Objection Deadline").

20.    Contemporaneously with the filing of this motion, the Debtors have served the Disclosure Statement Notice, in the form attached hereto as Exhibit A, by electronic mail and/or first class mail on the following parties:  (a) the U.S. Trustee; (b) counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively; (c) counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes; (d) counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes; (e) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group

---

[7]    In addition, Local Bankruptcy Rule 3017-1 provides that, "[u]nless the Court orders otherwise, the proponent of a plan shall transmit all notices and documents required to be transmitted by Bankruptcy Rule 3017(a)."

of holders of the Luxco Notes; (f) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company; (h) counsel for the Creditors' Committee; (i) all persons or entities that have filed proofs of claim in the Debtors' cases that have not been previously disallowed by order of this Court and have been processed by the Debtors' claims agent prior to the mailing of the Disclosure Statement Notice; (j) all persons or entities listed in the Debtors' respective schedules of assets and liabilities, and any amendments thereto (collectively, the "Schedules"); (k) all holders of the Debtors' public securities; (l) the Securities and Exchange Commission (the "SEC"); (m) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; and (n) any other known holders of claims or potential claims against the Debtors (collectively, the "Notice Parties").   Among other things, the Disclosure Statement Notice identifies:  (1) the date, time and place of the Disclosure Statement Hearing; (2) the Disclosure Statement Objection Deadline; and (3) the procedures for asserting objections to the approval of the Disclosure Statement.[8]

---

[8] In particular, the Disclosure Statement Notice provides that objections and proposed modifications to the Disclosure Statement, if any, must:  (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection or proposed modification and provide the specific language of any proposed modification, where possible; and (d) be filed with the Court and served on the parties identified in the Disclosure Statement Notice so that the objection or proposed modification is served and actually received by the applicable parties by no later than the Disclosure Statement Objection Deadline.

21.     The Debtors will not re-distribute any Disclosure Statement Hearing Notice that is returned as undeliverable with no forwarding address.

22.     The Debtors will publish the Disclosure Statement Notice on their restructuring website at cases.primeclerk.com/nii.  The Plan Proponents believe that such publication of the Disclosure Statement Notice will provide sufficient notice to persons who do not otherwise receive notice by mail.  The Plan Proponents thus will have provided the Notice Parties with notice of the time set for filing objections to the proposed Disclosure Statement, as well as notice of the Disclosure Statement Hearing in accordance with the Bankruptcy Rules.

23.     In accordance with Bankruptcy Rule 3017(a), no later than December 31, 2014, the Debtors will also provide, by electronic and/or first class mail a complete copy of the proposed Disclosure Statement and the Plan to:  (a) U.S. Trustee; (b) counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively; (c) counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes; (d) counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the Luxco 11.375% Notes; (e) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York  10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes; (f) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management

Company; (h) the SEC; (i) counsel to the Creditor's Committee; and (j) all other parties in

interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors'

chapter 11 cases (collectively, the "Rule 3017 Parties").    Any exhibits to the Disclosure

Statement that have not already been filed (other than certain Plan exhibits to be filed in

accordance with the Plan) will be filed with the Court seven calendar days before the Disclosure

Statement Objection Deadline and served on the Rule 3017 Parties.    The Plan Proponents will

also provide copies of the proposed Disclosure Statement and the Plan to any party in interest

who specifically requests such documents in the manner specified in the Disclosure Statement

Notice and Bankruptcy Rule 3017(a).    Copies of the proposed Disclosure Statement and the Plan

also are available free of charge on the Debtors' restructuring website at

cases.primeclerk.com/nii.

       24.    The Plan Proponents submit that the foregoing procedures provide

adequate notice of the Disclosure Statement Hearing, and request that the Court approve the

form and manner of service of the Disclosure Statement Notice as appropriate and in compliance

with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

<div align="center">

**The Solicitation Procedures**

</div>

***Approval of Form of Ballots***

       25.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot that

substantially conforms to Official Form No. 14 only to "creditors and equity security holders

entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  As only Holders of Claims in Classes

3A, 3D, 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C, 7A, 8A, 8B, 8C, 8D and 8E are entitled to vote,

the Plan Proponents propose to distribute to creditors holding Sale-Leaseback Guaranty Claims,

Luxco Note Claims, Capco 8.875% / 10% Note Claims, Capco 7.625% Note Claims, CDB

Documents Claims and General Unsecured Claims one or more ballots substantially in the forms

<div align="center">-17-</div>

attached hereto collectively as <u>Exhibit B</u> and incorporated herein by reference (collectively,

the "<u>Ballots</u>").  The Ballots are based on Official Form No. 14, but have been modified to

address the particular terms of the Plan.  The Plan Proponents propose that the appropriate form

of Ballot will be distributed to holders of Claims in the Classes entitled to vote to accept or reject

the Plan, as follows:

| | |
|---|---|
| <u>Sale-Leaseback Guaranty Ballot</u> | Ballot for Sale-Leaseback Guaranty Claims in Classes 3A and 3D. |
| <u>Beneficial Owner Ballot</u> | Ballot to be returned directly to the Voting Agent[9] or Master Ballot Agent (as such terms are defined below) by beneficial owners of (a) Luxco Note Claims in Classes 4A and 4D under the Plan, (b) Capco 8.875% / 10% Note Claims in Classes 5A, 5B, 5C and 5E under the Plan and (c) Capco 7.625% Note Claims in Classes 6A, 6B and 6C under the Plan (collectively, the "<u>Beneficial Owner Ballots</u>").[10] |
| <u>Master Ballot</u> | Ballot to be returned directly by the Master Ballot Agents (as such terms are defined herein) to the Voting Agent on account of claims against the Debtors under or evidenced by (a) Luxco Note Claims in Classes 4A and 4D under the Plan, (b) Capco 8.875% / 10% Note Claims in Classes 5A, 5B, 5C and 5E under the Plan and (c) Capco 7.625% Note Claims in Classes 6A, 6B and 6C under the Plan (collectively, the "<u>Master Ballots</u>"). |
| <u>CDB Document Ballot</u> | Ballot for CDB Documents Claims in Class 7A. |
| <u>Unsecured Claim Ballots</u> | Ballot for General Unsecured Claims against the Debtors in Classes 8A, 8B, 8C, 8D and 8E. |

---

[9]    On October 14, 2014, the Court entered an order (Docket No. 101) appointing Prime Clerk LLC (the "<u>Voting Agent</u>") as the claims, noticing, solicitation and voting agent in these chapter 11 cases. Among other things, the Voting Agent will provide balloting and solicitation services, including producing personalized ballots and tabulating creditor ballots on a daily basis.

[10]    There currently are outstanding five series of Notes, each with distinct principal amounts, interest rates and/or maturities and classified into its own Class under the Plan.  Thus, the Debtors propose to distribute Beneficial Ballots and Master Ballots for each series of Notes, with such Ballots substantially in the form of the corresponding form of Ballot for which the Debtors seek approval hereunder.

26.    Classes 1A – 1E (Priority Claims), Classes 2A – 2E (Secured Claims),

Classes 9A – 9E (Convenience Claims), Classes 11A – 11E (Non-Debtor Affiliate Claims) and

Classes 13B – 13E (Subsidiary Debtor Equity Interests) under the Plan are unimpaired and,

therefore, are conclusively presumed to accept the Plan in accordance with section 1126(f) of the

Bankruptcy Code.[11]    Classes 10A – 10E (Section 510 Claims) and Class 12A (NII Interests)

under the Plan are impaired, but will not receive any Distribution pursuant to the Plan, and

therefore, consistent with section 1126(g) of the Bankruptcy Code, will be deemed to have

rejected the Plan.[12]    For the foregoing reasons, solicitation of Classes 1A – 1E, 2A – 2E, 9A –

9E, 10A – 10E, 11A – 11E, 12A and 13B – 13E (collectively, the "Non-Voting Classes") under

the Plan is not required, and no Ballots have been proposed for creditors and equity security

holders in these classes.

27.    All beneficial owners of the Notes hold the Notes through brokers, banks,

dealers or other agents or nominees (each, a "Master Ballot Agent").  As described more fully in

the proposed Noteholders Solicitation Procedures (as such term is defined below), each Master

Ballot Agent will receive both (a) a Master Ballot to be completed by the Master Ballot Agent

and (b) sufficient copies of the Beneficial Owner Ballots to be distributed to and completed by

the beneficial owners of the Notes for whom the Master Ballot Agent provides services

(collectively, the "Beneficial Owners").  Each Master Ballot Agent will make arrangements to

---

[11]    Section 1126(f) of the Bankruptcy Code provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."  11 U.S.C. § 1126(f).

[12]    Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."  11 U.S.C. § 1126(g).

distribute Beneficial Owner Ballots to the applicable Beneficial Owners, who will complete and

return the Beneficial Owner Ballots to the applicable Master Ballot Agent.  The Master Ballot

Agent then will (a) tally on the Master Ballot the votes of the Beneficial Owners that return

Beneficial Owner Ballots and (b) return the completed Master Ballot to the Voting Agent at the

address identified on the applicable Ballot.

28.    If applicable, noteholders of record as of the Record Date (as defined

below) that directly hold Notes in their own name (rather than through a Master Ballot Agent)

(collectively, the "Directly Registered Record Holders") will each receive a Solicitation Package

containing a Beneficial Owner Ballot, which must be returned to the Voting Agent so that it is

received prior to the Voting Deadline (as defined below).

## *The Record Date*

29.    Bankruptcy Rule 3017(d) provides that the "date [an] order approving the

disclosure statement is entered or another date fixed by the court," is the record date for

determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to

receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan

of reorganization.  See Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar

provision regarding determination of the record date for voting purposes.[13]  In accordance with

the rules cited above, the record date is typically the date that an order approving the disclosure

statement is entered.  The record holders of a debtor's public securities, however, generally

require advance notice to enable those responsible for assembling ownership lists of that debtor's

---

[13]    Bankruptcy Rule 3018(a) provides that "an equity security holder or creditor whose claim is based on a
security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor
is the holder of record of the security on the date the order approving the disclosure statement is entered or
on another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3018(a).

public securities to compile a list of holders as of a date certain; accurate lists often cannot be prepared retroactively.

30.    Accordingly, to permit solicitation of the Plan to begin promptly after approval of this motion, the Plan Proponents propose that the Court establish the first day of the Disclosure Statement Hearing (January 28, 2015) as the record date pursuant to Bankruptcy Rule 3017(d) for purposes of determining which creditors and equity security holders are entitled to receive Solicitation Packages and, where applicable, vote on the Plan (the "Record Date").

31.    With respect to a transferred Claim, the Plan Proponents further propose that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred Claim only if (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed prior to the Record Date or (b) the transferee files by the Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

### *Solicitation Packages*

32.    Bankruptcy Rule 3017(d) specifies the materials that must be provided to holders of claims and equity interests for the purpose of solicitation of their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan:

> Upon approval of a disclosure statement, – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor-in-possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1) the plan or a court approved summary of the plan;
>
> (2) the disclosure statement as approved by the court;

(3) notice of the time within which acceptances and rejections of
the plan may be filed; and

(4) any other information as the court may direct, including any
court opinion approving the disclosure statement or a court-
approved summary of the opinion.

33.     After approval of the Disclosure Statement as containing adequate

information as required by section 1125, the Plan Proponents propose to mail or cause to be

mailed the Solicitation Packages consisting of the materials and in the manner set forth on

Exhibit E attached hereto or as otherwise ordered by the Court.

34.     The distribution of the Solicitation Packages by February 4, 2015 or as

soon as reasonably practicable thereafter will provide all holders of Claims entitled to vote on the

Plan with the requisite materials and sufficient time to make an informed decision with respect to

the Plan.  See Fed. R. Bankr. P. 3017(d) (providing that, after approval of a disclosure statement,

a debtor must transmit the plan, the approved disclosure statement, a notice of the time within

which acceptances and rejections of such plan may be filed, and any other information that the

Court may direct to certain holders of claims); Fed. R. Bankr. P. 2002(b) (requiring not less than

28 days' notice by mail of the time for filing objections and the hearing to consider the

confirmation of a chapter 11 plan).

35.     The Plan Proponents submit that the proposed notice and service

procedures are adequate and sufficient for the purposes of section 1125 of the Bankruptcy Code

and should be approved and that the Solicitation Packages contain all of the materials required to

be transmitted pursuant to Bankruptcy Rule 3017(d).

### *Special Solicitation Procedures for Noteholders*

36.     The Debtors currently lack the information necessary to solicit directly the

votes of Beneficial Owners of the Debtors' five series of Notes (such beneficial owners,

collectively, the "Noteholders").  In particular, the Debtors do not have information regarding the

identities of all of the Noteholders or their respective holdings.  Because the records of

Wilmington Trust, National Association, Wilmington Savings Fund Society, FSB and U.S. Bank

National Association (the "Indenture Trustees") identify only registered holders of the applicable

Notes, the Indenture Trustees do not have direct access to information regarding the Beneficial

Owners that hold the Notes through brokers, banks or other agents.

      37.    As a result of these circumstances, the Plan Proponents request that the

Court approve the special procedures attached hereto as Exhibit F (collectively, the "Noteholder

Solicitation Procedures") for the distribution of Solicitation Packages and tabulation of votes

with respect to the Notes.

      38.    The Plan Proponents submit that the foregoing procedures for providing

notice of the Confirmation Hearing, the Confirmation Objection Deadline and related matters

fully comply with Bankruptcy Rules 2002, 3017, 3018 and 3020 and the Local Bankruptcy

Rules.  Accordingly, the Plan Proponents request that the Court approve such procedures as

appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy

Rules and the Local Bankruptcy Rules.

      39.    Procedures similar to the above-described Confirmation Procedures have

been approved in other large chapter 11 cases, both in this District and elsewhere.  See, e.g.,

In re Excel Mar. Carriers Ltd., No. 13-23060 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2013);

In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 23, 2012);

In re LightSquared, Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. Oct. 10, 2013); In re AMR

Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y June 7, 2013); In re Old Carco LLC (f/k/a/

Chrysler LLC), Case No. 09-50002 (AJG) (Bankr. S.D.N.Y.  Jan. 21, 2010).

### *Voting Deadline for Receipt of Ballots*

40.    Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ."  Fed. R. Bankr. P. 3017(c).  The Plan Proponents anticipate commencing the Plan solicitation period by mailing Ballots and other approved solicitation materials no later than the date that is five (5) business days following entry of the order approving the Disclosure Statement (expected to be January 28, 2015).  Based on this schedule, the Plan Proponents propose that, to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered to the Voting Agent either (a) by mail in the return envelope provided with each Ballot, (b) by overnight courier or (c) by personal delivery so that, in each case, all Ballots are received by the Voting Agent no later than 4:00 p.m., Eastern time, on March 11, 2015, or such other date established by the Plan Proponents that is at least twenty-eight days after the commencement of the solicitation period in accordance with Exhibit E (the "Voting Deadline").  In addition, to accommodate the additional tabulation activities that must be performed by Master Ballot Agents, the Plan Proponents further propose that Master Ballots, if necessary, may be submitted by electronic mail so that they are received by the Voting Agent prior to the Voting Deadline.

41.    The Plan Proponents submit that solicitation period of at least thirty-five days provides sufficient time for (a) creditors to make informed decisions to accept or reject the

Plan and submit timely Ballots and (b) Master Ballot Agents to distribute Beneficial Owner

Ballots and complete and submit timely Master Ballots.[14]

***Procedures for Vote Tabulation***

42.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Similarly, section 1126(d) of the Bankruptcy Code provides:

> A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by owners of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(d).  Further, Bankruptcy Rule 3018(a) provides that the "court after notice and

hearing may temporarily allow the claim or interest in an amount which the court deems proper

for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

43.    Solely for purposes of voting to accept or reject the Plan—and not for the

purpose of the allowance of, or distribution on account of, any claim or interest and without

prejudice to the rights of the Plan Proponents in any other context—the Plan Proponents propose

---

[14]    As described in the Tabulation Rules, a Beneficial Owner of Notes for which a Master Ballot Agent will be completing a Master Ballot must return its Beneficial Owner Ballot to the appropriate Master Ballot Agent in sufficient time to permit the Master Ballot Agent to process the Beneficial Owner Ballot, complete a Master Ballot and forward the Master Ballot to the Voting Agent for receipt prior to the Voting Deadline. Directly Registered Holders must complete the Beneficial Owner Ballot and deliver such Ballot directly to the Voting Agent for receipt prior to the Voting Deadline.

that each Claim within a class of Claims entitled to vote to accept or reject the Plan be

temporarily allowed in accordance with the proposed tabulation rules (collectively,

the "Tabulation Rules") set forth on Exhibit C attached hereto and incorporated herein by

reference.

44.    The Plan Proponents believe that the proposed Tabulation Rules will

establish a fair and equitable voting process.  Nevertheless, if any claimant seeks to challenge the

classification of its Claim or the allowance of its Claim for voting purposes in accordance with

the Tabulation Rules, the Plan Proponents propose that such claimant be required to file a

motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such Claim in a

different amount or classification for purposes of voting to accept or reject the Plan (a "Rule

3018 Motion") and serve such motion on the counsel for each of the Plan Proponents so that it is

received by the later of (x) March 4, 2015 or (y) ten days after the date of service of a notice of

objection, if any, to the applicable Claim.  In accordance with Bankruptcy Rule 3018, the Plan

Proponents further propose that any Ballot submitted by a claimant that files a Rule 3018 Motion

will be counted solely in accordance with the Plan Proponents' proposed Tabulation Rules and

the other applicable provisions contained herein unless and until the underlying Claim is

temporarily allowed by the Court for voting purposes in a different amount and/or classification,

after notice and a hearing.  The Plan Proponents also reserve the right to seek estimation of a

Claim for voting purposes after notice and a hearing.

45.    Procedures similar to the above-described Solicitation Procedures have

been approved in other large chapter 11 cases, both in this District and elsewhere.  See, e.g.,

In re Excel Mar. Carriers Ltd., No. 13-23060 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2013);

In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 23, 2012);

In re LightSquared, Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. Oct. 10, 2013); In re AMR

Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y June 07, 2013); In re Old Carco LLC

(f/k/a/ Chrysler LLC), Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Jan. 21, 2010).

***Notice of Non-Voting Status***

46.    Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

If the court orders that the disclosure statement and the plan or a
summary of the plan shall not be mailed to any unimpaired class,
notice that the class is designated in the plan as unimpaired and
notice of the name and address of the person from whom the plan
or summary of the plan and disclosure statement may be obtained
upon request and at the plan proponent's expense, shall be mailed
to members of the unimpaired class together with the notice of the
time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

47.    All claims or interests in the Non-Voting Classes are (a) with respect to

claims or interests in Classes 1A – 1E, 2A – 2E, 9A – 9E, 11A – 11E and 13B – 13E, unimpaired

under the Plan and, therefore, conclusively presumed to accept the Plan pursuant to

section 1126(f) of the Bankruptcy Code or (b) with respect to claims in Classes 10A – 10E and

12A, impaired under the Plan, but shall not receive any Distribution pursuant to the Plan and,

therefore, are deemed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.

See 11 U.S.C. §§ 1126(f) and (g).

48.    Accordingly, the Plan Proponents propose to send to holders of claims and

interests in Classes 1A – 1E, 2A – 2E, 9A – 9E, 10A – 10E, 11A – 11E, 12A and 13B – 13E a

notice of non-voting status, substantially in the form attached hereto as Exhibit G (the "Notice of

Non-Voting Status"), which:  (a) identifies the treatment of the classes designated; (b) sets forth

the manner in which a copy of the Plan and Disclosure Statement may be obtained; and

(c) provides notice of the Confirmation Hearing and the time fixed for filing objections to confirmation of the Plan.

49.     The Plan Proponents submit that, because Classes 1A – 1E, 2A – 2E, 9A – 9E, 10A – 10E, 11A – 11E, 12A and 13B – 13E are conclusively presumed to either have accepted or rejected the Plan as a matter of law, the Notice of Non-Voting Status satisfies the requirements of Bankruptcy Rule 3017(d) because it sets forth the manner in which copies of the Plan and Disclosure Statement may be obtained, thereby providing each member of a Non-Voting Class with the opportunity to receive all pertinent documents upon request. Accordingly, the Plan Proponents request that the Court determine that they are not required to distribute Solicitation Packages, including the Plan and Disclosure Statement, to the Non-Voting Classes.

## Rights Offering Procedures

50.     The Plan contemplates the investment of approximately $250 million (the "Rights Offering Amount") of new equity capital in the Reorganized Debtors in the form of a rights offering (the "Rights Offering") to all holders of Prepetition Note Claims. The Rights Offering will be offered pursuant to the Rights Offering Procedures attached as Exhibit H. The Rights Offering will be backstopped by certain Prepetition Noteholders (the "Backstop Parties") pursuant to a Backstop Commitment Agreement. The Backstop Parties have committed to purchase on the Effective Date, at $14.4375 per share, all shares of Reorganized NII common stock offered in the Rights Offering that are not subscribed for pursuant to the exercise of subscription rights (the "Subscription Rights") in the Rights Offering. The proceeds of the Rights Offering and the aggregate purchase price for unsubscribed shares of Reorganized NII common stock purchased by the Backstop Parties pursuant to their commitments under the

Backstop Commitment Agreement will be used to invest in the reorganized operating companies and for general corporate purposes.

51.    Each Eligible Holder (defined below) may subscribe for and purchase the Rights Offering Shares in accordance with the Rights Offering Procedures, which include the following material provisions:

- **Eligible Holder**:  Only Eligible Holders may participate in the Rights Offering. An "Eligible Holder" means any Holder of a Prepetition Note Claim as of the Rights Offering Record Date.

- **Right to Purchase Rights Offering Shares**:  Each Eligible Holder shall be entitled to subscribe for that number of Rights Offering Shares equal to the product (rounded down to the nearest whole share) of: (a) such Eligible Holder's Pro Rata Share and (b) the aggregate number of Rights Offering Shares offered in the Rights Offering.

  The "Pro Rata Share" of an Eligible Holder means the quotient of (x) the aggregate principal amount of such Eligible Holder's Prepetition Notes and (y) the aggregate principal amount of all Prepetition Notes.

- **Subscription Period**:  The Rights Offering will commence on the Subscription Commencement Date and will expire on the Subscription Expiration Deadline.

  The "Subscription Commencement Date" is proposed to be February 4, 2015.

  The "Subscription Expiration Deadline" is the date of the Voting Deadline, as it may be extended by the Bankruptcy Court.

  The Plan Proponents may change the Subscription Commencement Date and extend the Subscription Expiration Deadline, from time to time, with the consent of each of the Backstop Parties.   The Debtors will promptly notify the Eligible Holders in writing of such modification or extension and the date of the new Subscription Commencement Date or new Subscription Expiration Deadline. Any notice of an extension of the Subscription Expiration Deadline shall be given by press release issued through a United States news service with national coverage no later than 9:00 a.m. on the first Business Day following the then current Subscription Expiration Deadline.

- **Exemption from Securities Act Registration**:  The Subscription Rights are being distributed by the Debtors, and the Subscribed Shares will be issued by Reorganized NII, without registration under the Securities Act or any state securities laws, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code.

- <u>Transfer Restrictions</u>:

  (a)    Transferability Restrictions Prior to Exercise of Subscription Rights

  The Subscription Rights are not detachable from the corresponding Prepetition Note Claims and are not transferable or assignable except in connection with the transfer or assignment of such Prepetition Note Claims.  In connection with any transfer or assignment of Prepetition Note Claims in respect of which such Subscription Rights were issued, a transfer notice must be delivered to the Subscription Agent or other procedures acceptable to the Debtors and the Subscription Agent must be followed.

  (b)    Prohibition on Transfer Following Exercise of Subscription Rights

  Following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning the Prepetition Note Claims corresponding to such Subscription Rights until the earlier of (i) the termination of the Rights Offering and (ii) the revocation of exercise of the Subscription Rights to the extent permitted by the Rights Offering Procedures.  By its execution of the Rights Exercise Form and Certification (attached to the Rights Offering Procedures), the holder of the Subscription Rights will be deemed to have represented and warranted to the Debtors that the holder is the beneficial owner of the Prepetition Note Claims corresponding to the Subscription Rights being exercised and will be the holder of such Prepetition Note Claims as of the Effective Date.

  If and to the extent that a holder of any Subscription Rights purports to transfer or assign a corresponding Prepetition Note Claim in violation of these provisions, such transfer or assignment shall be null and void <u>ab initio</u>, and the holder shall be liable to the Debtors and the Subscription Agent for any claims, damages or losses incurred by them as a result of such purported transfer or assignment.

52.    The Solicitation Packages (defined below) distributed to the holders of

Prepetition Note Claims also will be accompanied by (a) the Rights Offering Documents,

including, but not limited to, the Rights Exercise Form and Certification, substantially in the

form attached to the Rights Offering Procedures, and (b) a copy of the Rights Offering

Procedures.  The Plan Proponents seek approval of the Rights Offering Procedures and the

Rights Offering Documents to be used in connection with the Rights Offering.

53.    The Plan Proponents believe that the Disclosure Statement, in the form

approved by the Court, will provide holders of Prepetition Notes Claims with adequate

information for all purposes related to the Rights Offering, including making an informed

judgment as to such holders' participation in the Rights Offering.  The Rights Offering

Procedures and Rights Offering Documents are designed to afford all interested holders of

Prepetition Note Claims a fair and reasonable opportunity to participate in the Rights Offering

and to inform such interested holders as to the appropriate procedures for such participation.  The

Plan Proponents submit that the Rights Offering Procedures and Rights Offering Documents are

reasonable and comparable to procedures and documents that have been approved in connection

with similar rights offerings in other chapter 11 cases.  See, e.g., MPM Silicones, LLC, Case No.

14-22503 (RDD) (Bankr. S.D.N.Y June 23, 2014); In re Genco Shipping & Trading Ltd., Case

No. 14-11108 (SHL) (Bankr. S.D.N.Y. April 25, 2014); In re Excel Mar. Carriers Ltd., No. 13-

23060 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2013); In re Gen. Mar. Corp., Case No. 11-15285 (MG)

(Bankr. S.D.N.Y. Feb. 28, 2012); In re Lyondell Chemical Co., Case No. 09-10023 (REG)

(Bankr. S.D.N.Y. Mar. 11, 2010).

54.    Accordingly, the Plan Proponents respectfully submit that the

implementation of the Rights Offering pursuant to the Rights Offering Procedures represents a

sound exercise of the Debtors' business judgment and is supported by a valid business

justification.  The Rights Offering is a critical component of the Debtors' Plan and is necessary to

facilitate the Debtors' emergence from chapter 11.  Thus, the Plan Proponents request that the

Court approve the Rights Offering Procedures and Rights Offering Documents as set forth

herein.

## The Confirmation Procedures

### *The Confirmation Objection Procedures*

55.     Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan."  11 U.S.C. § 1128.

56.     In accordance with Bankruptcy Rule 3017(c) and consistent with the Plan Proponents' proposed solicitation schedule, the Plan Proponents request that the Confirmation Hearing be scheduled for March 25, 2015.[15]  The Confirmation Hearing may be continued from time to time by the Court without further notice other than an announcement of the adjournment at the Confirmation Hearing or any continued hearing.  The Plan Proponents propose that objections, if any, to the confirmation of the Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection to the confirmation of the Plan; and (d) in accordance with Bankruptcy Rule 3020(b)(1),[16] be filed with the Court and served on the following parties so that they are received no later than 4:00 p.m., Eastern time, on March 11, 2015, or such other date established by the Plan Proponents that is at least twenty-eight days after the commencement of the solicitation period in accordance with Exhibit E (the "Confirmation Objection Deadline"):

---

[15]     Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation."

[16]     Bankruptcy Rule 3020(b)(1) provides that "[a]n objection to confirmation of the plan shall be filed and served on the debtor, the trustee, the proponent of the plan, any committee appointed under the [Bankruptcy] Code and any other entity designated by the court, within a time fixed by the court."

Furthermore, Local Bankruptcy Rule 3020-1 provides that "[u]nless the Court orders otherwise, objections to confirmation of a plan in a . . . chapter 11 case shall be filed not later than seven (7) days prior to the first date set for the hearing to consider confirmation of the plan."

(i)      the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn:  General Counsel);

(ii)     counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn:  David G. Heiman and Carl E. Black, Esq.);

(iii)    the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Susan D. Golden, Esq. and Brian Masumoto, Esq.);

(iv)     counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

(v)      counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

(vi)     counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the Luxco 7.875% Notes and the Luxco 11.375% Notes;

(vii)    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

(viii)   Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

(ix)     Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

(x)      counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

(xi)     the SEC; and

(xii)    all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

57.    The Plan Proponents request that objections to confirmation of the Plan

not timely filed and served in accordance with the provisions the Disclosure Statement Order not

be considered by the Court and be denied and overruled unless otherwise ordered by the Court.

**_Confirmation Hearing Notice_**

58.    Bankruptcy Rule 2002(b) requires at least twenty-eight days' notice by

mail to all creditors and indenture trustees of the time set for (a) filing objections to confirmation

of a chapter 11 plan and (b) the hearing to consider confirmation of a chapter 11 plan.[17]

Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in

the manner and the form directed by the Court.[18]  The Plan Proponents propose to serve, not less

than twenty-eight days prior to the Confirmation Objection Deadline:  (a) the Solicitation

Packages, including a copy of a notice substantially in the form attached hereto as Exhibit D and

incorporated herein by reference (the "Confirmation Hearing Notice"), on all holders of Claims

entitled to vote on the Plan; and (b) the Notice of Non-Voting Status (as defined below) to those

creditors and equity security holders in the Non-Voting Classes.[19]  The contents of the

Solicitation Packages, as well as the Plan Proponents' proposed procedures for serving the

---

[17]    Bankruptcy Rule 2002(b) provides that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of . . . the time fixed . . . for filing objections and the hearing to consider confirmation of a . . . chapter 11 . . . plan."

[18]    Bankruptcy Rule 2002(d) provides that "[i]n a chapter 11 reorganization case, unless otherwise ordered by the court, the clerk, or some other person as the court may direct, shall in the manner and form directed by the court give notice to all equity security holders of . . . the time fixed for filing objections to and the hearing to consider confirmation of a plan . . . ."

[19]    Requiring the Debtors to serve the Solicitation Packages on all holders of Claims and Interests in the Non-Voting Classes would impose a substantial economic and resource burden on the estates, as the Solicitation Package is voluminous and there potentially are 25,500 parties in the Non-Voting Classes.  The Debtors, however, (a) have posted the Plan and the Disclosure Statement and (b) will post the exhibits thereto as such exhibits are filed on their restructuring website at cases.primeclerk.com/nii, where such documents can be reviewed without charge.

Solicitation Packages, are set forth on Exhibit E attached hereto and incorporated herein by reference.[20]

59.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).  In addition to mailing the Confirmation Hearing Notice as part of the Solicitation Packages, the Plan Proponents propose to publish the Confirmation Hearing Notice (as may be conformed for publication) on or before February 9, 2015, or such other day that is not less than twenty-eight days before the Confirmation Objection Deadline or the Confirmation Hearing, in the global edition of *The Wall Street Journal* and the national edition of *USA Today*. Additionally, the Plan Proponents will publish the Confirmation Hearing Notice on the Debtors' restructuring website at cases.primeclerk.com/nii.  The Plan Proponents believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval of the Disclosure Statement, the Voting Deadline, the Confirmation Objection Deadline and the time, date and place of the Confirmation Hearing to persons who do not otherwise receive notice by mail as proposed herein.

### Non-Substantive Modifications

60.    Subject to the terms of the Plan Support Agreement, the Plan Proponents request authorization to make non-substantive changes to the Solicitation Packages (including the Plan, Disclosure Statement, Ballots and Master Ballots), the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Solicitation Procedures contained herein and all related

---

[20]    The Debtors will also serve the Confirmation Hearing Notice on the all parties in the creditor matrix that are not in a voting or non-voting class (e.g., unclassified unimpaired claims).

documents, without further order of the Court, including, without limitation, filling in any missing dates or other missing information, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, any other materials in the Solicitation Package, the Confirmation Hearing Notice, and the Notice of Non-Voting Status, and/or related documents prior to distribution of such materials.

**Notice**

61.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this motion has been provided to:  (a) U.S. Trustee; (b) counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively; (c) counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes; (d) counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes; (e) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York  10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes; (f) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company; (h) counsel to the Creditor's Committee; (i) all persons or entities that have filed proofs of claim in the Debtors' cases that have not been previously disallowed by order of this Court and have been processed by the Debtors' claims agent prior to the mailing of the Disclosure Statement

Notice; (j) all persons or entities listed in the Debtors' Schedules; (k) all holders of the Debtors'

public securities; (l) the SEC; (m) all other parties in interest that have filed requests for notice

pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; and (n) any other known

holders of claims or potential claims against the Debtors.

**No Prior Request**

62.    No prior request for the relief sought in this motion has been made to this

or any other Court.

WHEREFORE, the Plan Proponents respectfully request that the Court enter an

order, substantially in the form attached hereto as <u>Exhibit I</u>:  (i) approving the Disclosure

Statement; (ii) approving the form and manner of service of the Disclosure Statement Notice;

(iii) scheduling the Confirmation Hearing; (iv) approving the Solicitation Procedures, Rights

Offering Procedures and Confirmation Procedures; and (v) granting such other and further relief

as the Court may deem proper.


Dated:  December 22, 2014
New York, New York


 Respectfully Submitted,


    /s/    Lisa Laukitis                              
Scott J. Greenberg
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306


  - and -


David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212


ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

    /s/    Kenneth H. Eckstein                        
Kenneth H. Eckstein
Adam C. Rogoff
Stephen D. Zide
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8100


ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS

# **EXHIBIT A**

(Notice of Disclosure Statement Hearing)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
                                               :
In re:                                         :    Chapter 11
                                               :
NII Holdings, Inc., et al.,[1]                 :    Case No. 14-12611 (SCC)
                                               :
              Debtors.                         :    (Jointly Administered)
                                               :
------------------------------------------------------------x
```

<u>**NOTICE OF DISCLOSURE STATEMENT HEARING**</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

      1.     On or about December 22, 2014, the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Plan Proponents") filed:  (a) the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (Docket No. [___]) (as it may be amended or modified, the "Plan"); and (b) a related Disclosure Statement (Docket No. [___]) (as it may be amended or modified, the "Disclosure Statement") under section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

      2.     On December 22, 2014, the Plan Proponents filed the Motion for an Order (I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of Disclosure Statement Notice, (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Reorganization, (IV) Approving Related Notice and Rights Offering Procedures and (V) Scheduling Hearing on Confirmation of Plan of Reorganization (Docket No. [___]) (the "Motion") seeking approval of the Disclosure Statement and approval of Solicitation Procedures and Confirmation Procedures (as such terms are defined in the Motion) in connection with Plan Proponents' pursuit of confirmation of the Plan.

---

[1]     The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA  20190.

3.      A hearing to consider the approval of the Disclosure Statement and the other relief sought in the Motion (the "Disclosure Statement Hearing") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Court Judge, in Room 623 of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004 on January 28, 2015 at 10:00 a.m., Eastern time.

4.      Objections to approval of the Disclosure Statement or the other relief sought in the Motion, or proposed modifications to the Disclosure Statement, if any, must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection or proposed modification and provide the specific language of any proposed modification, where possible; and (d) be filed with the Bankruptcy Court and served on the following parties so that they are received **no later than 4:00 p.m., Eastern time, on January 20, 2015**:

    i.    the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn: General Counsel);

    ii.    counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: David G. Heiman and Carl E. Black, Esq.);

    iii.    the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan D. Golden, Esq. and Brian Masumoto, Esq.);

    iv.    counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

    v.    counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

    vi.    counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

    vii.    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

    viii.    Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

ix.     Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

x.      counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

xi.     the Securities and Exchange Commission; and

xii.    all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

5.      In accordance with Bankruptcy Rule 3017(a), requests for copies of the Disclosure Statement, the Plan or the Motion by parties in interest may be made in writing to NII Ballot Processing c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022. Copies of the Disclosure Statement and the Plan (along with exhibits to each as they are filed with the Court) and the Motion are available for review, without charge, via the internet at cases.primeclerk.com/nii.  Any exhibits to the Disclosure Statement that have not already been filed (other than certain Plan Exhibits to be filed in accordance with the Plan), will be filed with the Court before December 31, 2015.

**6.      THIS NOTICE IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN.  VOTES ON THE PLAN MAY NOT BE SOLICITED UNLESS AND UNTIL THE PROPOSED DISCLOSURE STATEMENT IS APPROVED BY AN ORDER OF THE COURT.**

7.      The Disclosure Statement Hearing may be continued from time to time without further notice other than the announcement of the adjourned date(s) at the Disclosure Statement Hearing or any continued hearing.

Dated:  December 22, 2014

   /s/    Scott J. Greenberg                    /s/    Kenneth H. Eckstein              
Scott J. Greenberg                          Kenneth H. Eckstein
Lisa Laukitis                               Adam C. Rogoff
JONES DAY                                   Stephen D. Zide
222 East 41st Street                        KRAMER LEVIN NAFTALIS & FRANKEL
New York, New York  10017                   LLP
Telephone:  (212) 326-3939                  1177 Avenue of the Americas
Facsimile:  (212) 755-7306                  New York, New York 10036
                                            Telephone: (212) 715-9100
   - and -                                  Facsimile: (212) 715-8100

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)     ATTORNEYS FOR THE OFFICIAL
JONES DAY                                   COMMITTEE OF UNSECURED
North Point                                 CREDITORS
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# **EXHIBIT B**

## **(Proposed Ballots)**

**B-1**

Sale-Leaseback Guaranty Claim Ballot

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                            :
In re:                        :          Chapter 11
                            :
NII Holdings, Inc., <u>et al.</u>,[1]      :          Case No. 14-12611 (SCC)
                            :
               Debtors.      :          (Jointly Administered)
                            :
---------------------------------------------------------------- x

<div align="center">

**BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN**
**OF REORGANIZATION PROPOSED BY DEBTORS AND**
**DEBTORS IN POSSESSION AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CLASS 3A OR 3D: SALE-LEASEBACK GUARANTY CLAIMS AGAINST THE DEBTORS**

</div>

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN**
> **IS [Time], PREVAILING EASTERN TIME, ON [Date]**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," and, together with the Debtors, the "<u>Plan Proponents</u>") are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Plan</u>"). The Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Disclosure Statement</u>") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[Date]** (the "<u>Disclosure Statement Order</u>"). The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 3A or 3D against the Debtor specified in Item 1 below, as defined in the Plan, as of the Record Date (**[Date]**). Accordingly, you have a right to vote to accept or reject the Plan. Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

Your rights are described in the Disclosure Statement, which is included in the solicitation package you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order and certain other materials). If you received solicitation package materials in CD–ROM format and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtors' Voting Agent Prime Clerk LLC, by toll-free telephone for U.S. callers at (844) 224-1140 and for international callers at (917) 962-8496, by e-mail at niiballots@primeclerk.com, or by writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022 or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at http://cases.primeclerk.com/nii. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan, electing certain treatment, and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent <u>immediately</u> at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 3A or 3D under the Plan against the Debtor specified in Item 1 below. If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

---

[1]       The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA 20190.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote**.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if the Plan (i) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class of Claims who vote on the Plan, (ii) is accepted by the holders of at least two-thirds in amount of the Interests in each impaired Class of Interests who vote on the Plan and (iii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To have your vote counted, you must complete, sign and return the originally signed Ballot to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor New York, NY 10022, so that it is received by the deadline indicated above.  Ballots should not be sent to the Debtors or the Committee.

<div align="center">

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.**

</div>

---

PLEASE COMPLETE ITEMS 1 THROUGH 2.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST WITH RESPECT TO THE APPLICABLE CLASS.  IF THIS BALLOT IS NOT SIGNED WITH AN ORIGINAL SIGNATURE ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class 3A or 3D Vote.**  The undersigned, a holder of a Sale-Leaseback Guaranty Claim in the Class and against the Debtor specified below in the aggregate amount set forth below votes to (check <u>one</u> box):

☐ **ACCEPT** (vote FOR) the Plan.                    ☐ **REJECT** (vote AGAINST) the Plan.

Class: _____

Debtor: _____

Claim Amount: $_____

**ANY BALLOT EXECUTED BY THE HOLDER OF A CLAIM THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN FOR ALL CLAIMS OF ONE CLASS WILL NOT BE COUNTED.**

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS AND INTERESTS.  IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLE IX OF THE PLAN AND AS FURTHER DESCRIBED IN SECTION IX.A.18 OF THE DISCLOSURE STATEMENT. PURSUANT TO ARTICLE IX  OF THE PLAN, IF YOU RECEIVE A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS OF THE PLAN.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)      **Defined Terms.**  As defined in the Plan:

1.A.130   **"Released Parties"** means, collectively and individually, the Plan Proponents, the members of the Creditors' Committee, the Indenture Trustees, the Consenting Parties, the Backstop Providers and the Representatives of each of the foregoing (solely in their capacities as such).

(b)      <u>**Releases by Debtors and Reorganized Debtors.**</u>  **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, to the fullest extent permitted by law, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party with respect to the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Backstop Agreement, the Plan, the Exhibits, the Disclosure Statement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.1 of the Plan shall not affect (a) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct, (b) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or previously, entered into or delivered in connection with the Plan, (c) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Entity against any Debtor and/or the Estates, including rights of setoff, refund or other adjustments, (d) the rights of the Debtors to assert any applicable defenses in litigation or other proceedings with their employees (including the rights to seek sanctions, fees and other costs) and (e) any claim of the Debtors or Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other causes of action against employees or other parties, arising out of or relating to actions for**

**personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party.**

(c)     **Releases by Holders of Claims.  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way that such Entity has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to a Debtor, the Estates, the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.2 of the Plan shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

(d)     **Exculpation.  From and after the Effective Date, the Released Parties, the Debtors and the Reorganized Debtors shall neither have nor incur any liability to any Entity, and no Holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Debtor, Reorganized Debtor, Released Party or any of their respective Representatives for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.D of the Plan shall have no effect on:  (1) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (2) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

(e)     **Injunctions.  As of the Effective Date, except with respect to the obligations of the Reorganized Debtors under the Plan or the Confirmation Order, all Entities that have held, currently hold or may hold any Claims or Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities that are waived, discharged or released under the Plan shall be permanently enjoined from taking any of the following enforcement actions against the Debtors, the Reorganized Debtors, the Released Parties or any of their respective assets or property on account of any such waived, discharged or released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities:  (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, levying, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor, Reorganized Debtor or Released Party; and (5) commencing or continuing any action, in any manner, in any place to assert any Claim waived, discharged or released under the Plan or that does not otherwise comply with or is inconsistent with the provisions of the Plan.**

**Item 2.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or

reject the Plan on behalf of the claimant.  The undersigned also acknowledges that the undersigned has cast the same vote with respect to all Claims in a single Class, and that that no other Ballots with respect to the amount of the Claims identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked.  The undersigned understands that, if this Ballot is otherwise validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

---

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN THE ORIGINAL BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR BY REGULAR MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS:**

NII Ballot Processing
c/o Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022

---

**YOUR BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time], PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

Sale-Leaseback Guaranty Claim Ballot

**VOTING INFORMATION AND INSTRUCTIONS
FOR COMPLETING THE BALLOT**

1.   The Plan Proponents are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as it may be amended from time to time).

2.   **The Bankruptcy Court may confirm the Plan and thereby bind you, if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.   In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  *If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan.  Such releases include, but are not limited to, the releases contained in Section IX.E of the Plan, which include the release of claims and causes of action against certain nondebtor entities.*  Complete the Ballot by providing all the information requested and sign, date and return the originally signed Ballot in the enclosed envelope or by regular mail, overnight courier or hand delivery to Prime Clerk LLC (the "Voting Agent") at the applicable following address:

---

**NII Ballot Processing
c/o Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022**

---

Ballots must be *received* by the Voting Agent by [Time], Prevailing Eastern Time, on [Date] (the "Voting Deadline"). If a Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Voting Agent is enclosed for your convenience.  Ballots submitted by email, facsimile or other means of electronic submission will not be accepted.  *Ballots should not be sent to the Debtors or the Committee.*

4.   You must identify whether your Claim is in Class 3A or 3D on the first line of Item 1 and identify the Debtor you are asserting your Claim against on the second line of Item 1.

5.   If you hold Claims in more than one voting Class under the Plan, you may receive a separate Ballot for each such Class of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only those Claims described on the Ballot.  Please complete and return each Ballot you receive.  The attached Ballot is designated only for voting Sale-Leaseback Guaranty Claims against the Debtor and in the Class specified in Item 1 of the Ballot.**  You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots shall not be counted.  If you hold any portion of a single Claim, you and all other holders of any portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan.  In the event a group of Ballots received from the various holders of multiple portions of a single Claim partially accepts and partially rejects the Plan, such Ballots shall not be counted.

6.   **The following Ballots will NOT be counted**:

   i.      any Ballot received after the Voting Deadline unless (a) the Plan Proponents (in their sole discretion) shall have granted an extension of the Voting Deadline with respect to such Ballot or (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

   ii.     any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

   iii.    any Ballot cast by an entity that (a) does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

   iv.     any Ballot sent to the Debtors, the Bankruptcy Court or any other party other than the Voting Agent;

   v.      any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Claim;

   vi.     any Ballot transmitted to the Voting Agent by email, facsimile or other means not specifically approved in the Disclosure Statement Order;

   vii.    any unsigned Ballot;

viii.    any Ballot that does not contain an original signature; or

ix.    any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan for all Claims of one Class.

7.    Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules"). The Tabulation Rules are set forth in the "Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Plan of Reorganization and (C) Related Matters," which is enclosed with the solicitation materials you received along with this Ballot. The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponents in any other context (*e.g.*, the right of the Plan Proponents to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Plan Proponents so that it is received by the later of (a) **[Date]** or (b) ten days after the date of service of a notice of an objection, if any, to your Claim. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

8.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtors nor the Voting Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

9.    The Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

10.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly-executed Ballot received by the Voting Agent before the Voting Deadline (as determined by the Voting Agent) will be deemed to reflect your intent to either accept or reject the Plan.

11.    Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Plan Proponents, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

**<u>PLEASE RETURN YOUR BALLOT PROMPTLY.</u>**

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT, PRIME CLERK LLC, BY TOLL-FREE TELEPHONE FOR (I) U.S. CALLERS AT (844) 224-1140  (NII TOLL FREE LINE) AND (II) FOR INTERNATIONAL CALLERS AT (917) 962-8496.**

THE VOTING AGENT WILL <u>NOT</u> ACCEPT BALLOTS BY EMAIL OR FACSIMILE TRANSMISSION. BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTORS, THE COMMITTEE OR ANY OF THEIR AGENTS OTHER THAN THE VOTING AGENT.

---

**YOUR BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time], PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

---

**B-2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                :
In re:                  :          Chapter 11
                  :
NII Holdings, Inc., <u>et al.</u>,[1]        :          Case No. 14-12611 (SCC)
                  :
          Debtors.        :          (Jointly Administered)
                  :
---------------------------------------------------------------- x

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**JOINT PLAN OF REORGANIZATION OF DEBTORS AND DEBTORS IN POSSESSION**

**CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C CLAIMS – BALLOT FOR BENEFICIAL HOLDERS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY**
> <u>BEFORE</u> **COMPLETING THIS BALLOT.**

**TO HAVE YOUR VOTE COUNTED, YOU MUST COMPLETE, SIGN AND RETURN THIS BALLOT TO YOUR BROKER, BANK, DEALER OR OTHER AGENT OR NOMINEE (EACH, A "MASTER BALLOT AGENT") WITH ENOUGH TIME TO ALLOW FOR YOUR MASTER BALLOT AGENT TO CAST YOUR VOTE ON A MASTER BALLOT SO THAT THE MASTER BALLOT IS ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "VOTING AGENT") PRIOR TO [TIME], PREVAILING EASTERN TIME ON [DATE] (THE "VOTING DEADLINE").  YOUR BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED IN ACCORDANCE WITH THE FOLLOWING:**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR**
**MASTER BALLOT AGENT**:

YOU MUST RETURN THIS BALLOT TO YOUR MASTER BALLOT AGENT IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE VOTING AGENT**:

YOU MUST RETURN THIS BALLOT DIRECTLY TO THE VOTING AGENT
IN THE ENVELOPE PROVIDED PRIOR TO THE VOTING DEADLINE.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," and, together with the Debtors, the "<u>Plan Proponents</u>") are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Plan</u>").  The Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Disclosure Statement</u>") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[Date]** (the "<u>Disclosure Statement Order</u>").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, or 6C, as defined in the Plan, as of the Record Date (**[Date]**).  **Please see <u>Exhibit A</u> to this Ballot for a list of CUSIPs and applicable Plan Class for each CUSIP.**  Accordingly, you have a right to vote to accept or reject the Plan.  Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

---

[1]      The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA  20190.

Your rights are described in the Disclosure Statement, which is included in the solicitation package you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order and certain other materials).  If you received solicitation package materials in CD-ROM format and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtors' Voting Agent Prime Clerk LLC, by toll-free telephone for U.S. callers at (844) 224-1140 and for international callers at (917) 962-8496, by e-mail at niiballots@primeclerk.com or by writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at http://cases.primeclerk.com/nii.  Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov.  Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan, electing certain treatment, and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, or 6C under the Plan.  **Please see Exhibit A to this Ballot for a list of CUSIPs and applicable Plan Class for each CUSIP.**  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if the Plan (i) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class of Claims who vote on the Plan, (ii) is accepted by the holders of at least two-thirds in amount of the Interests in each impaired Class of Interests who vote on the Plan and (iii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To have your vote counted, you must complete, sign and return this Ballot, so that it is received by the deadline indicated above.  Ballots should not be sent to the Debtors, the Committee or the Indenture Trustees.

**THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT  OR REJECT THE PLAN.  HOLDERS SHOULD NOT SURRENDER CERTIFICATES, IF ANY,  REPRESENTING THE NOTES AT THIS TIME, AND NEITHER THE  DEBTORS NOR THEIR VOTING AGENT WILL ACCEPT DELIVERY OF ANY SUCH CERTIFICATES.**

**AGAIN, PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

**Beneficial Owner Ballot**

> PLEASE COMPLETE ITEMS 1 THROUGH 5.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 2, OR IF BOTH BOXES ARE CHECKED IN ITEM 2, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Voting Classification and Amount.**  The undersigned herby certifies that as of the Record Date, the undersigned was the holder of Claims in the Class indicated on Exhibit A hereto against the applicable Debtor, in the following aggregate principal amount (insert amount below).  If your Claims are held by a Master Ballot Agent on your behalf and you do not know the amount of your Claim, please contact your Master Ballot Agent immediately.

$_____

**Item 2.  Vote.**  The holder of the Claims identified in Item 1 above votes to (please check <u>one</u>):

☐  **ACCEPT** (vote FOR) the Plan.          ☐  **REJECT** (vote AGAINST) the Plan.

**YOUR VOTE ON THIS BALLOT FOR CLAIMS IN CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C (AS APPLICABLE) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE A 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C CLAIM (AS APPLICABLE).**

*ANY BALLOT EXECUTED BY THE HOLDER OF A CLAIM THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN FOR ALL CLAIMS OF ONE CLASS WILL NOT BE COUNTED.*

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS AND INTERESTS.  IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLE IX OF THE PLAN AND AS FURTHER DESCRIBED IN SECTION IX.A.18 OF THE DISCLOSURE STATEMENT.  PURSUANT TO ARTICLE IX OF THE PLAN, IF YOU RETURN A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS OF THE PLAN.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)     **Defined Terms.**  As defined in the Plan

1.A.130     **"Released Parties"** means, collectively and individually, the Plan Proponents, the members of the Creditors' Committee, the Indenture Trustees, the Consenting Parties, the Backstop Providers and the Representatives of each of the foregoing (solely in their capacities as such).

(b)     <u>**Releases by Debtors and Reorganized Debtors.**</u>  **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, to the fullest extent permitted by law, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party with respect to the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Backstop Agreement, the Plan, the Exhibits, the Disclosure Statement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder;**

NYI-4599474v6

provided, however, that the provisions of Section IX.E.1 of the Plan shall not affect (a) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct, (b) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or previously, entered into or delivered in connection with the Plan, (c) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Entity against any Debtor and/or the Estates, including rights of setoff, refund or other adjustments, (d) the rights of the Debtors to assert any applicable defenses in litigation or other proceedings with their employees (including the rights to seek sanctions, fees and other costs) and (e) any claim of the Debtors or Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other causes of action against employees or other parties, arising out of or relating to actions for personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party.

(c)    <u>Releases by Holders of Claims.</u>  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way that such Entity has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to a Debtor, the Estates, the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.2 of the Plan shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(d)    <u>Exculpation.</u>  From and after the Effective Date, the Released Parties, the Debtors and the Reorganized Debtors shall neither have nor incur any liability to any Entity, and no Holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Debtor, Reorganized Debtor, Released Party or any of their respective Representatives for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.D of the Plan shall have no effect on:  (1) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (2) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(e)    <u>Injunctions.</u>  As of the Effective Date, except with respect to the obligations of the Reorganized Debtors under the Plan or the Confirmation Order, all Entities that have held, currently hold or may hold any Claims or Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities that are waived, discharged or released under the Plan shall be permanently enjoined from taking any of the following enforcement actions against the Debtors, the Reorganized Debtors, the

**Released Parties** or any of their respective assets or property on account of any such waived, discharged or released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities: **(1)** commencing or continuing in any manner any action or other proceeding; **(2)** enforcing, levying, attaching, collecting or recovering in any manner any judgment, award, decree or order; **(3)** creating, perfecting or enforcing any lien or encumbrance; **(4)** asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor, Reorganized Debtor or Released Party; and **(5)** commencing or continuing any action, in any manner, in any place to assert any Claim waived, discharged or released under the Plan or that does not otherwise comply with or is inconsistent with the provisions of the Plan.

**Item 3. Certifications and Acknowledgements.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i)    that either:  (a) the undersigned is the holder of the Claims being voted or (b) the undersigned is an authorized signatory for a holder of the Claims being voted;

(ii)    that the undersigned has received a copy of the Disclosure Statement and the solicitation package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;[2]

(iii)    that the undersigned has cast the same vote with respect to all Claims in a single Class; and

(iv)    that no other Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked.

**Item 4. Certifications as to Notes Held in Additional Accounts**

By completing and returning this Ballot, the undersigned beneficial owner on behalf of which this Ballot is being cast (the "Beneficial Owner") certifies that either: (a) it has not submitted any other Ballots in respect of its Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B or 6C Notes held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B or 6C Notes for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan to the extent such Claims are in the same Class (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B or 6C NOTES ON A BALLOT OTHER THAN THIS BALLOT.

| | Name of Beneficial Owner[3] | Account Number | Principal Amount of other Notes Voted | Class of Other Notes Voted | CUSIP of Other Notes |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |

To be counted, a Beneficial Owner must vote *all* of its Claims within a Class either to accept or reject the Plan.  No split votes will be permitted.

---

[2]    Submission of electronic instructions to your Nominee (if permitted by such Nominee) shall have the same effect as if you had completed and returned a physical Ballot. By making an electronic submission, you are representing that you reviewed the Ballot in its entirety and have received a copy of the Plan and Disclosure Statement for your review and consideration.

[3]    List your name if the Claim is held by you in record name.  If the Claim is held in "street name," please list the name of your Master Ballot Agent.

**Item 5.  Acknowledgments.**   The undersigned acknowledge(s) and understand(s) that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT <u>PROMPTLY</u>.**

---

**YOUR BALLOT OR THE MASTER BALLOT INCORPORATING THE VOTE CAST BY THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.  IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR MASTER BALLOT AGENT, PLEASE ALLOW SUFFICIENT TIME FOR YOUR MASTER BALLOT AGENT TO RECEIVE YOUR BALLOT, PROCESS YOUR VOTE ON A MASTER BALLOT AND RETURN SUCH MASTER BALLOT REFLECTING YOUR VOTE TO THE VOTING AGENT BY THE VOTING DEADLINE.**

---

## VOTING INFORMATION AND INSTRUCTIONS

### FOR COMPLETING THE BALLOT

1.    The Plan Proponents are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as it may be amended from time to time).

2.    **The Bankruptcy Court may confirm the Plan and thereby bind you, if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.    To ensure that your vote is counted, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your Ballot to the address set forth on the enclosed pre-addressed envelope in accordance with paragraph 4 below.  *If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan.  Such releases include, but are not limited to, the releases contained in Section IX.E of the Plan, which include the release of claims and causes of action against certain non-debtor entities.*

4.    <u>**Return of Ballots**</u>:  To ensure your vote is counted toward confirmation of the Plan, please read the following information carefully so that you understand where your Ballot must be sent in order for it to be received before the Voting Deadline:

        (a) If you have a Master Ballot Agent:  You must return your Ballot in the return envelope addressed to your Master Ballot Agent (or otherwise follow your Master Ballot Agent's instructions) so that it is directly returned to your Master Ballot Agent according to the accompanying instructions provided by your Master Ballot Agent, and in any event <u>in sufficient time to permit your Master Ballot Agent to deliver a Master Ballot including your vote to the Voting Agent prior to the Voting Deadline</u>.

        (b) If you have no Master Ballot Agent:  You must return your Ballot in the return envelope addressed directly to the Voting Agent, so as to be actually received by the Voting Agent on or before the Voting Deadline.

    **Ballots submitted by you or your Master Ballot Agent (if applicable) must be *received* by the Voting Agent by [Time] p.m., Eastern Standard Time, on [Date] (the "<u>Voting Deadline</u>").**  If a Ballot or Master Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Voting Agent or Master Ballot Agent is enclosed for your convenience.  Ballots submitted by facsimile transmission will not be accepted.  *Ballots should not be sent to the Debtors, the Committee or the Indenture Trustee.*

5.    **The following Ballots will NOT be counted**:

    i.    any Ballot received after the Voting Deadline unless (a) the Plan Proponents shall have granted an extension of the Voting Deadline with respect to such Ballot and (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

    ii.    any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

    iii.    any Ballot cast by an entity that (a) does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

    iv.    any Ballot sent to a party <u>other</u> than the Voting Agent or Master Ballot Agent, as applicable (<u>e.g.</u>, the Debtors or the Bankruptcy Court);

    v.    any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Claim;

    vi.    any Ballot transmitted to the Voting Agent by facsimile or other means not specifically approved in the Disclosure Statement Order;

    vii.    any unsigned Ballot;

    viii.    any Ballot that does not contain an original signature; or

    ix.    any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan for all Claims of one Class.

6.    The method of delivery of a Ballot to the Master Ballot Agent or Voting Agent, as applicable, is at the election and risk of each holder of a Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Voting Agent **actually receives** the Master Ballot incorporating the Ballot or the originally executed Ballot, as applicable.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that holders use an overnight or hand delivery service.  In all cases, holders should allow sufficient time to assure timely delivery.

7.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly-executed Ballot received by the Voting Agent before the Voting Deadline (as determined by the Voting Agent) will be deemed to reflect your intent to either accept or reject the Plan.  After the Voting Deadline, a record holder or beneficial owner may only change its vote reflected on the last such properly-executed Ballot with the approval of the Bankruptcy Court.

8.    **YOUR VOTE ON THIS BALLOT FOR CLAIMS IN CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B OR 6C (AS APPLICABLE) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE A CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B OR 6C CLAIM (AS APPLICABLE).**

9.    You must vote all of your Claims within a Class either to accept or reject the Plan and may not split your vote.

10.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  *Holders of Notes should not surrender certificates (if any) representing their Notes at this time, and neither the Debtors nor the Voting Agent will accept delivery of any such certificates transmitted together with a Ballot.*  Surrender of securities for exchange pursuant to the Plan may be made only pursuant to a letter of transmittal, which will be furnished, if necessary, by the Debtors (or their agent) after Confirmation of the Plan by the Bankruptcy Court.

11.    The Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

12.    Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Plan Proponents, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.    If you hold Claims and/or Interests in more than one voting Class under the Plan, you may receive a separate Ballot for each Class of Claims, coded by Class number, and a set of solicitation materials.  You may also receive more than one Ballot if you:  (a) hold more than one issue of notes issued by one or more of the Debtors; (b) are the beneficial owner of notes issued by a Debtor and held in street name through more than one "Master Ballot Agent" (*i.e.*, a broker, bank, dealer or other agent or nominee); or (c) are the beneficial owner of notes issued by a Debtor and registered in your own name as well as the beneficial owner of notes issued by a Debtor and registered in street name.  You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots shall not be counted.  If you hold any portion of a single Claim, you and all other holders of any portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan.  In the event a group of Ballots received from the various holders of multiple portions of a single Claim partially accepts and partially rejects the Plan, such Ballots shall not be counted.

14.    If you have cast additional Ballots on account of the beneficial ownership of any Notes, you must complete Item 4.  With respect to any such additional Ballots, please complete the information requested in Item 4.  One line should be used to identify each such separate account.  Do not include in Item 4 information relating to Claims being voted on the same Ballot in Item 2.  Only information relating to other Ballots voted on account of the beneficial ownership of Notes in Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C (as applicable) under the Plan should be included in Item 4.  Please note that the information provided in Items 1 and 4 must, taken together, identify *all* of your holdings of Notes giving rise to Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, or 6C Claims.

15.    Your Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claim (as applicable) has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the "Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Joint Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Plan of Reorganization and (C) Related Matters," which is enclosed with the solicitation materials you received along with this Ballot.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of

distribution under the Plan and is without prejudice to the rights of the Plan Proponents in any other context (*e.g.*, the right of the Plan Proponents to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Plan Proponents so that it is received by the later of (a) [Date] or (b) ten days after the date of service of a notice of an objection, if any, to your Claim. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT,
OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES,
PLEASE CONTACT THE VOTING AGENT, PRIME CLERK LLC, BY TOLL-FREE TELEPHONE
(I) FOR U.S. CALLERS AT (844) 224-1140 AND (II) FOR INTERNATIONAL CALLERS AT (917) 962-8496.**

THE VOTING AGENT WILL NOT ACCEPT BALLOTS BY FACSIMILE.
BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTORS, THE COMMITTEE OR TO THE APPLICABLE
INDENTURE TRUSTEES.

---

**YOUR BALLOT OR THE MASTER BALLOT INCORPORATING THE VOTE CAST
BY THIS BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING
DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME
TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

---

# EXHIBIT A

*Your Master Ballot Agent may have checked a box below to indicate the CUSIP/ISIN to which this Beneficial Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Owner Ballot.*

| | | |
|---|---|---|
| | Classes 4A and 4D (Luxco Note Claims) | |
| ☐ | CUSIP 62914QAA5 / ISIN US62914QAA58 | 11.375% senior notes due 2019 |
| ☐ | CUSIP L67466AA7 / ISIN USL67466AA71 | 11.375% senior notes due 2019 |
| ☐ | CUSIP 62914QAD9 / ISIN US62914QAD97 | 7.875% senior notes due 2019 |
| ☐ | CUSIP L67466AB5 / ISIN USL67466AB54 | 7.875% senior notes due 2019 |
| | Classes 5A, 5B, 5C and 5E (Capco 8.875% / 10% Note Claims) | |
| ☐ | CUSIP 67021BAC3 / ISIN US67021BAC37 | 8.875% senior notes due 2019 |
| ☐ | CUSIP 67021BAD1 / ISIN US67021BAD10 | 10% senior notes due 2016 |
| | Classes 6A, 6B and 6C (Capco 7.625% Note Claims) | |
| ☐ | CUSIP 67021BAE9 / ISIN US67021BAE92 | 7.625% senior notes due 2021 |

-10-

**B-3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                        :

In re:                    :               Chapter 11
                         :

NII Holdings, Inc., <u>et al.</u>,[1]     :              Case No. 14-12611 (SCC)
                         :

                         :               (Jointly Administered)
           Debtors.       :
                         :
---------------------------------------------------------------- x

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT**
**<u>JOINT PLAN OF REORGANIZATION OF DEBTORS AND DEBTORS IN POSSESSION</u>**

**CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C CLAIMS – MASTER BALLOT**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY**
**<u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO**
**AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY PRIME CLERK LLC (THE "VOTING AGENT")**
**BY [TIME] PREVAILING EASTERN TIME ON [DATE] (THE "VOTING DEADLINE")**

---

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," and, together with the Debtors, the "<u>Plan Proponents</u>") are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Plan</u>").  The Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "<u>Disclosure Statement</u>") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[Date]** (the "Disclosure Statement Order").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this master ballot ("<u>Master Ballot</u>") because the Debtors' records indicate that you are a broker, bank, dealer or other agent or nominee (a "<u>Master Ballot Agent</u>") of a beneficial owner of Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims, as defined in the Plan, as of the Record Date ([DATE]) ("<u>Beneficial Owner</u>").[2]  **Please see Exhibit A to this Ballot for a list of CUSIPs and applicable Plan Class for each CUSIP.**  Capitalized terms used in this Ballot and the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

Master Ballot Agents should use this Master Ballot to cast votes to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which is included in the solicitation package you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order and certain other materials).  If you received solicitation package materials in CD-ROM format and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtors' Voting Agent Prime Clerk LLC, by toll-free telephone for U.S. callers at (844) 224-1140 and for international callers at

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA  20190.

[2]    A "<u>Beneficial Owner</u>" means a beneficial owner of publicly-traded Notes whose Claims have not been satisfied prior to the voting Record Date pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Master Ballot Agent (or its own records if it holds such Notes on its own behalf) holding Claims through either Wilmington Savings Fund Society, FSB, U.S. Bank National Association or Wilmington Trust, National Association, in its capacity as indenture trustee for certain Notes.

(917) 962-8496, by e-mail at niiballots@primeclerk.com or by writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at http://cases.primeclerk.com/nii.  Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov.  Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should immediately distribute the Ballots and the Solicitation Packages to all Beneficial Owners of Claims and take any action required to enable each such Beneficial Owner to vote timely the Claims that it holds.  Any Ballot returned to you by a Beneficial Owner of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Voting Agent, a Master Ballot that reflects the vote of such Beneficial Owners by **[Time]** prevailing Eastern Time on **[Date]** or otherwise validate the Ballot in a manner acceptable to the Voting Agent and provide appropriate instructions to the  Beneficial Owners for completing and returning any pre-validated Ballots.

The Bankruptcy Court may confirm the Plan and thereby bind all holders of Claims.  To have the votes of your Beneficial Owners count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Voting Agent actually receives it on or before the Voting Deadline, which is **[Time]** prevailing Eastern Time on **[Date]** at the following address:

<div align="center">

NII Ballot Processing
c/o Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022

</div>

**THIS MASTER BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT  OR REJECT THE PLAN.  HOLDERS SHOULD NOT SURRENDER CERTIFICATES, IF ANY,  REPRESENTING THE NOTES AT THIS TIME, AND NEITHER THE DEBTORS, THE COMMITTEE NOR THEIR VOTING AGENT WILL ACCEPT DELIVERY OF ANY SUCH CERTIFICATES.**

**AGAIN, PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE  COMPLETE  ITEMS  1  THROUGH  4.    IF  THIS  BALLOT  IS  NOT  SIGNED  ON  THE  APPROPRIATE  LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.   Certification of Authority to Vote. The undersigned certifies that as of the Record Date, the undersigned (please check appropriate box):**

      Is a broker, bank, or other nominee for the beneficial holders of the aggregate principal amount of the Notes indicated on Exhibit A attached hereto or otherwise on this Master Ballot in the aggregate principal amount listed in Item 2 below, and is the registered holder or Master Ballot Agent of such securities, or

      Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder or Master Ballot Agent of the aggregate principal amount of Notes listed in Item 2 below, or

      Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial holder, that is the registered holder or Master Ballot Agent of the aggregate principal amount of Notes listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial holders of the Notes described in Item 2.

**Item 2.   Votes on the Plan Cast By Beneficial Owners.**  The undersigned certifies that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Owners of Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims (as indicated on Exhibit A hereto), as identified by their respective account numbers, that have delivered duly completed Beneficial Ballots to the undersigned voting to accept or reject the Plan.  Any Ballot executed by a holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

      (Please complete the information requested below.  Attach additional sheets if necessary.)

| BENEFICIAL OWNER | PRINCIPAL AMOUNT OF NOTES VOTED: | |
| --- | --- | --- |
| | To **ACCEPT** the Plan | To **REJECT** the Plan |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| **TOTALS** | | |

**THE VOTES OF YOUR BENEFICIAL OWNERS ON THIS BALLOT GIVING RISE TO CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B OR 6C CLAIMS (AS APPLICABLE) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOUR BENEFICIAL OWNERS HAVE A CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, OR 6C CLAIM.**

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS AND INTERESTS. IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLE IX OF THE PLAN AND AS FURTHER DESCRIBED IN SECTION IX.A.18 OF THE DISCLOSURE STATEMENT.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)     **Defined Terms.** As defined in the Plan:

1.A.130   **"Released Parties"** means, collectively and individually, the Plan Proponents, the members of the Creditors' Committee, the Indenture Trustees, the Consenting Parties, the Backstop Providers and the Representatives of each of the foregoing (solely in their capacities as such).

(b)     **Releases by Debtors and Reorganized Debtors.** **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, to the fullest extent permitted by law, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party with respect to the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Backstop Agreement, the Plan, the Exhibits, the Disclosure Statement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.1 of the Plan shall not affect (a) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct, (b) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or previously, entered into or delivered in connection with the Plan, (c) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Entity against any Debtor and/or the Estates, including rights of setoff, refund or other adjustments, (d) the rights of the Debtors to assert any applicable defenses in litigation or other proceedings with their employees (including the rights to seek sanctions, fees and other costs) and (e) any claim of the Debtors or Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other causes of action against employees or other parties, arising out of or relating to actions for personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party.**

(c)     **Releases by Holders of Claims.** **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way that such Entity has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to a Debtor, the Estates, the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.2 of the Plan shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b)**

the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(d) **Exculpation.** From and after the Effective Date, the Released Parties, the Debtors and the Reorganized Debtors shall neither have nor incur any liability to any Entity, and no Holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Debtor, Reorganized Debtor, Released Party or any of their respective Representatives for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.D of the Plan shall have no effect on: (1) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (2) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(e) **Injunctions.** As of the Effective Date, except with respect to the obligations of the Reorganized Debtors under the Plan or the Confirmation Order, all Entities that have held, currently hold or may hold any Claims or Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities that are waived, discharged or released under the Plan shall be permanently enjoined from taking any of the following enforcement actions against the Debtors, the Reorganized Debtors, the Released Parties or any of their respective assets or property on account of any such waived, discharged or released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities: (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, levying, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor, Reorganized Debtor or Released Party; and (5) commencing or continuing any action, in any manner, in any place to assert any Claim waived, discharged or released under the Plan or that does not otherwise comply with or is inconsistent with the provisions of the Plan.

**Item 3.  Additional Ballots Submitted by Beneficial Owners.** The undersigned certifies that the information provided below (including any information on additional sheets attached hereto) is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each Individual Ballot received from a beneficial owner of Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims (as applicable).

(Please complete the information requested below.  Attach additional sheets if necessary.)

| Your Customer Account Number For Each Beneficial Owner | INFORMATION TO BE TRANSCRIBED FROM ITEM 4 OF BENEFICIAL OWNERS' INDIVIDUAL BALLOTS REGARDING OTHER BALLOTS CAST IN RESPECT OF OTHER CLASS 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C CLAIMS | | | | | |
|---|---|---|---|---|---|---|
| | Beneficial Owner's Name | Customer Account Number for Other Account | Name of Broker, Bank, Dealer or Other Agent or Nominee for Other Account (If Applicable) | Principal Amount | Class of Other Notes Voted | CUSIP of Other Notes |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

| 4. | | | | | | |
|---|---|---|---|---|---|---|

**Item 4.  Additional Certifications.**  By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

i.  that the undersigned has received a copy of the Disclosure Statement and the solicitation package, has delivered the same to the Beneficial Owners listed on the Ballots, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

ii.  that the undersigned has received a completed and signed Ballot from each Beneficial Owner listed in Item 2 of the Master Ballot;

iii.  that the undersigned is the registered holder of the securities being voted;

iv.  that the undersigned has been authorized by each such Beneficial Owner to vote on the Plan;

v.  that the undersigned has properly disclosed: (A) the number of Beneficial Owners who completed Ballots; (B) the respective amounts of such Beneficial Owners' Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims owned, as the case may be, by each Beneficial Owner who completed a Ballot; (C) each such Beneficial Owner's respective vote concerning the Plan; (D) each such Beneficial Owner's certification as to other Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims voted, as applicable; and (E) the customer account or other identification number for each such Beneficial Owner;

vi.  that each such Beneficial Owner has certified to the undersigned that it is eligible to vote on the Plan; and it will maintain Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered;

vii.  that the undersigned acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the undersigned's Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claim(s) (as applicable) as described in the Plan; and

viii.  that the undersigned acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary; provided, that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

_____
Name of Master Ballot Agent

_____
Participant Number

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT
<u>PROMPTLY</u> IN THE ENVELOPE PROVIDED OR TO THE FOLLOWING ADDRESS:**

| **BY MAIL:** | **OR BY E-MAIL:** |
|---|---|
| NII Ballot Processing<br>c/o Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022 | niiballots@primeclerk.com |

**YOUR MASTER BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING
DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME
TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

<div align="right">**Master Ballot**</div>

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE MASTER BALLOT

1.  The Plan Proponents are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as it may be amended from time to time).

2.  **The Bankruptcy Court may confirm the Plan and thereby bind you, if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.  You should immediately distribute the Ballots and the Solicitation Package to all Beneficial Owners of Claims and take any action required to enable each such Beneficial Owner to vote timely the Claims that it holds.  Any Ballot returned to you by a Beneficial Owner of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Voting Agent, a Master Ballot that reflects the vote of such Beneficial Owners by the Voting Deadline, which is **[Time]** prevailing Eastern Time on **[Date]** or otherwise validate the Ballot in a manner acceptable to the Voting Agent.

4.  With regard to any Ballots returned to you by a Beneficial Owner, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Owner on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Owner; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Voting Agent by the Voting Deadline; and (d) retain such Ballots in your files for a period of one year after the Voting Deadline.  You may be ordered to produce the Ballots to the Debtors or the Bankruptcy Court.

5.  If a Master Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise.  The method of delivery of Master Ballots to the Voting Agent is at the election and risk of each Master Ballot Agent.  Except as otherwise provided herein, such delivery will be deemed made only when the Voting Agent actually receives the originally executed Master Ballot.  Instead of effecting delivery by mail, it is recommended, though not required, that entities use an overnight or hand delivery service.  In all cases, Master Ballot Agents should allow sufficient time to assure timely delivery.  Delivery of a Master Ballot to the Voting Agent by facsimile shall not be valid.  No Master Ballot should be sent to any of the Debtors, the Committee or their agents (other than the Voting Agent), any indenture trustee or the Debtors' financial or legal advisors and if so sent will not be counted.

6.  Multiple Master Ballots may be completed and delivered to the Voting Agent.  Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of votes cast on other Master Ballots.  If two or more Master Ballots are inconsistent, the latest-received properly executed Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot.  If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s) rather than supersede(s) the earlier Master Ballot(s), please mark the subsequent Master Ballot(s) with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote.

7.  If a Beneficial Owner casts more than one Ballot voting the same Claim prior to the mailing deadline set by each Master Ballot Agent, the last such properly-executed Ballot received (as determined by you) should be deemed to reflect such Beneficial Owner's intent to either accept or reject the Plan.

8.  **The votes of your Beneficial Owners on this Ballot for Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims (as applicable) shall be applied to each Debtor against whom your Beneficial Owners have a Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claim.**

9.  The attached Master Ballot is not a letter of transmittal and may not be used for any purpose other than to transmit votes to accept or reject the Plan.  *Holders of Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims should not surrender certificates (if any) representing their Notes at this time, and neither the Debtors nor the Voting Agent will accept delivery of any such certificates transmitted together with a Master Ballot.*  Surrender of securities for exchange pursuant to the Plan may be made only pursuant to a letter of transmittal, which will be furnished by the Debtors (or their agent), if necessary, after Confirmation of the Plan by the Bankruptcy Court.

10. This Master Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

<div align="right">**Master Ballot**</div>

11.  <u>Please be sure to sign and date your Master Ballot.</u> You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Voting Agent, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Owner.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

12.  If you are both the Master Ballot Agent and the Beneficial Owner of any of the Notes and you wish to vote the Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims arising therefrom, you may return an Individual Ballot or Master Ballot for such Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims.  If you choose to complete an Individual Ballot, please refer to the instructions accompanying the Individual Ballot.

13.  To ensure that the votes on the Master Ballot are counted, you must: (a) complete your Master Ballot in accordance with these instructions; (b) clearly indicate the decision either to accept or reject the Plan in the boxes provided in Item 2 of the Master Ballot; and (c) clearly sign and return your Master Ballot to the address set forth on the enclosed pre-addressed envelope in accordance with paragraph 15 below.

14.  If you believe that you have received this Master Ballot in error, please contact the Voting Agent immediately.

15.  **Return of Ballots**: The Master Ballot <u>must</u> be returned to the Voting Agent so as to be **actually** **received** by the Voting Agent on or before the Voting Deadline, which is **[Time]** prevailing Eastern Time on **[Date]**.  If a Master Ballot is received after the Voting Deadline, it will not be counted.  *Ballots should not be sent to the Debtors or the Indenture Trustee(s).*

| BY REGULAR MAIL, OVERNIGHT COURIER OR HAND DELIVERY: | OR BY E-MAIL: |
|---|---|
| NII Ballot Processing<br>c/o Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022 | niiballots@primeclerk.com |

16.  **The following Ballots will NOT be counted**:

  i.  any Ballot received after the Voting Deadline unless (a) the Plan Proponents shall have granted in writing an extension of the Voting Deadline prior to the Voting Deadline with respect to such Ballot and (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

  ii.  any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

  iii.  any Ballot cast by an Entity that (a) does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

  iv.  any Ballot sent to any party <u>other</u> than the Voting Agent (<u>e.g.</u>, the Debtors or the Bankruptcy Court);

  v.  any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Claim;

  vi.  any Ballot transmitted to the Voting Agent by facsimile or other means not specifically approved in the Disclosure Statement Order;

  vii.  any unsigned Ballot;

  viii.  any Ballot that does not contain an amount of Claim denominated in U.S. currency;

  ix.  any Ballot that does not contain an original signature; or

  x.  any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan for all Claims of one Class.

17.  No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtors will reimburse you for customary mailing and handling expenses incurred by you in forwarding Individual Ballots and accompanying solicitation packages to your client(s).

18.  Please note that Item 2 of the Master Ballot requests that you transcribe information or attach a schedule to the Master Ballot in the indicated format providing information for each individual Beneficial Owner of the Notes on whose behalf you are executing a Master Ballot.  To identify such Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner.  If a single customer has more than one account with the identical registration, only list that customer once in the schedule requested by Item 2.  The total principal amount of all accounts voted with respect to a single customer should be listed in a single schedule entry, so that each line will represent a different beneficial owner.

19.  Please note that Item 3 of the Master Ballot requests that you provide information or attach a schedule to the Master Ballot in the indicated format by transcribing any information provided in Item 4 of each Individual Ballot received from a beneficial owner for which you are executing a Master Ballot.  Please also include your customer account number for each entry in Item 3 of the Master Ballot.

20.  Please note that each Beneficial Owner must vote its entire Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, or 6C Claim (as applicable) either to accept or reject the Plan.  A beneficial owner may not split its vote.  Moreover, all holders of any portion of a single Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan.  Further, for purposes of computing the Master Ballot vote, each voting beneficial owner should be deemed to have voted the full amount of its holdings of Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B or 6C Claims (as applicable) according to your records.  Any executed Individual Ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and a rejection of the Plan or (c) is not timely received by you should not be counted on the Master Ballot as having been cast.

21.  Your Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claim (and any Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claims held by Beneficial Owners), each as applicable, has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the "Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Plan of Reorganization and (C) Related Matters," which is enclosed with the solicitation materials you received along with this Ballot.  The temporary allowance of your Class 4A, 4D, 5A, 5B, 5C, 5E, 6A, 6B, 6C Claim (as applicable) for voting purposes does not constitute an allowance of such Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponents in any other context (*e.g.*, the right of the Plan Proponents to contest the amount or validity of any Claim for voting purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Plan Proponents so that it is received by the later of (a) [Date] or (b) ten days after the date of service of a notice of an objection, if any, to your Claim.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

> **YOUR MASTER BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING**
> **DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME**
> **TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT, PRIME CLERK LLC, BY TOLL-FREE TELEPHONE (I) FOR U.S. CALLERS AT (844) 224-1140 AND (II) FOR INTERNATIONAL CALLERS AT (917) 962-8496.**

THE VOTING AGENT WILL NOT ACCEPT MASTER BALLOTS BY FACSIMILE.
MASTER BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTORS, THE COMMITTEE OR THE
APPLICABLE INDENTURE TRUSTEE.

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY
THE AGENT OF THE DEBTORS OR THE VOTING AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY

DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.

# EXHIBIT A

***Please check ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto):***

| | | |
|---|---|---|
| Classes 4A and 4D (Luxco Note Claims) | | |
| ☐ | CUSIP 62914QAA5 / ISIN US62914QAA58 | 11.375% senior notes due 2019 |
| ☐ | CUSIP L67466AA7 / ISIN USL67466AA71 | 11.375% senior notes due 2019 |
| ☐ | CUSIP 62914QAD9 / ISIN US62914QAD97 | 7.875% senior notes due 2019 |
| ☐ | CUSIP L67466AB5 / ISIN USL67466AB54 | 7.875% senior notes due 2019 |
| Classes 5A, 5B, 5C and 5E (Capco 8.875% / 10% Note Claims) | | |
| ☐ | CUSIP 67021BAC3 / ISIN US67021BAC37 | 8.875% senior notes due 2019 |
| ☐ | CUSIP 67021BAD1 / ISIN US67021BAD10 | 10% senior notes due 2016 |
| Classes 6A , 6B and 6C (Capco 7.625% Note Claims) | | |
| ☐ | CUSIP 67021BAE9 / ISIN US67021BAE92 | 7.625% senior notes due 2021 |

**<u>B-4</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re:                                                        :        Chapter 11
                                                              :
NII Holdings, Inc., et al.,[1]                                :        Case No. 14-12611 (SCC)
                                                              :
                                  Debtors.                    :        (Jointly Administered)
                                                              :
------------------------------------------------------------- x

<div align="center">

**BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN**
**OF REORGANIZATION PROPOSED BY DEBTORS AND**
**DEBTORS IN POSSESSION AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CLASS 7A:  CDB DOCUMENTS CLAIMS AGAINST THE DEBTORS**

</div>

<div align="center">

| |
|---|
| **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN**<br>**IS [Time], PREVAILING EASTERN TIME, ON [Date]** |

</div>

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee," and, together with the Debtors, the "Plan Proponents") are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "Plan").  The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "Disclosure Statement") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[Date]** (the "Disclosure Statement Order").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 7A against the Debtor specified in Item 1 below, as defined in the Plan, as of the Record Date (**[Date]**).  Accordingly, you have a right to vote to accept or reject the Plan.  Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

Your rights are described in the Disclosure Statement, which is included in the solicitation package you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order and certain other materials).  If you received solicitation package materials in CD–ROM format and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtors' Voting Agent Prime Clerk LLC, by toll-free telephone for U.S. callers at (844) 224-1140 and for international callers at (917) 962-8496, by e-mail at niiballots@primeclerk.com, or by writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022 or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at http://cases.primeclerk.com/nii.  Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov.  Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan, electing certain treatment, and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 7A under the Plan against the Debtor specified in Item 1 below.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

---

[1]      The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA  20190.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote**.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if the Plan (i) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class of Claims who vote on the Plan, (ii) is accepted by the holders of at least two-thirds in amount of the Interests in each impaired Class of Interests who vote on the Plan and (iii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To have your vote counted, you must complete, sign and return the originally signed Ballot to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor New York, NY 10022, so that it is received by the deadline indicated above.  Ballots should not be sent to the Debtors or the Committee.

<div align="center">

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

</div>

PLEASE COMPLETE ITEMS 1 THROUGH 2.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST WITH RESPECT TO THE APPLICABLE CLASS.  IF THIS BALLOT IS NOT SIGNED WITH AN ORIGINAL SIGNATURE ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class 7A Vote.**  The undersigned, a holder of a CDB Documents Claim in the Class and against the Debtor specified below in the aggregate amount set forth below votes to (check one box):

☐  **ACCEPT** (vote FOR) the Plan.          ☐  **REJECT** (vote AGAINST) the Plan.

Class: 7A

Debtor:  NII Holdings, Inc.

Claim Amount: $_____

**ANY BALLOT EXECUTED BY THE HOLDER OF A CLAIM THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN FOR ALL CLAIMS OF ONE CLASS WILL NOT BE COUNTED.**

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS AND INTERESTS.  IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLE IX OF THE PLAN AND AS FURTHER DESCRIBED IN SECTION IX.A.18 OF THE DISCLOSURE STATEMENT. PURSUANT TO ARTICLE IX  OF THE PLAN, IF YOU RECEIVE A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS OF THE PLAN.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)     **Defined Terms.**  As defined in the Plan:

1.A.130   **"Released Parties"** means, collectively and individually, the Plan Proponents, the members of the Creditors' Committee, the Indenture Trustees, the Consenting Parties, the Backstop Providers and the Representatives of each of the foregoing (solely in their capacities as such).

(b)     <u>**Releases by Debtors and Reorganized Debtors.**</u>  **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, to the fullest extent permitted by law, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party with respect to the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Backstop Agreement, the Plan, the Exhibits, the Disclosure Statement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.1 of the Plan shall not affect (a) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct, (b) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or previously, entered into or delivered in connection with the Plan, (c) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Entity against any Debtor and/or the Estates, including rights of setoff, refund or other adjustments, (d) the rights of the Debtors to assert any applicable defenses in litigation or other proceedings with their employees (including the rights to seek sanctions, fees and other costs) and (e) any claim of the Debtors or Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other causes of action against employees or other parties, arising out of or relating to actions for**

**personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party.**

(c)    <u>**Releases by Holders of Claims.**</u>  **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way that such Entity has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to a Debtor, the Estates, the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.2 of the Plan shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

(d)    <u>**Exculpation.**</u>  **From and after the Effective Date, the Released Parties, the Debtors and the Reorganized Debtors shall neither have nor incur any liability to any Entity, and no Holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Debtor, Reorganized Debtor, Released Party or any of their respective Representatives for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.D of the Plan shall have no effect on: (1) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (2) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

(e)    <u>**Injunctions.**</u>  **As of the Effective Date, except with respect to the obligations of the Reorganized Debtors under the Plan or the Confirmation Order, all Entities that have held, currently hold or may hold any Claims or Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities that are waived, discharged or released under the Plan shall be permanently enjoined from taking any of the following enforcement actions against the Debtors, the Reorganized Debtors, the Released Parties or any of their respective assets or property on account of any such waived, discharged or released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities: (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, levying, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor, Reorganized Debtor or Released Party; and (5) commencing or continuing any action, in any manner, in any place to assert any Claim waived, discharged or released under the Plan or that does not otherwise comply with or is inconsistent with the provisions of the Plan.**

**Item 2.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or

reject the Plan on behalf of the claimant.  The undersigned also acknowledges that the undersigned has cast the same vote with respect to all Claims in a single Class, and that that no other Ballots with respect to the amount of the Claims identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked.  The undersigned understands that, if this Ballot is otherwise validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

---

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN THE ORIGINAL BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR BY REGULAR MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS:**

NII Ballot Processing
c/o Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022

---

**YOUR BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time], PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.   The Plan Proponents are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as it may be amended from time to time).

2.   **The Bankruptcy Court may confirm the Plan and thereby bind you, if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.   In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  *If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan.  Such releases include, but are not limited to, the releases contained in Section IX.E of the Plan, which include the release of claims and causes of action against certain nondebtor entities.*  Complete the Ballot by providing all the information requested and sign, date and return the originally signed Ballot in the enclosed envelope or by regular mail, overnight courier or hand delivery to Prime Clerk LLC (the "Voting Agent") at the applicable following address:

> **NII Ballot Processing**
> **c/o Prime Clerk LLC**
> **830 3rd Avenue, 9th Floor**
> **New York, NY 10022**

**Ballots must be *received* by the Voting Agent by [Time], Prevailing Eastern Time, on [Date] (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Voting Agent is enclosed for your convenience.  Ballots submitted by email, facsimile or other means of electronic submission will not be accepted.  *Ballots should not be sent to the Debtors or the Committee.*

4.   If you hold Claims in more than one voting Class under the Plan, you may receive a separate Ballot for each such Class of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only those Claims described on the Ballot**.  **Please complete and return each Ballot you receive**.  **The attached Ballot is designated only for voting CDB Documents Claims against the Debtor and in the Class specified in Item 1 of the Ballot.**  You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots shall not be counted.  If you hold any portion of a single Claim, you and all other holders of any portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan.  In the event a group of Ballots received from the various holders of multiple portions of a single Claim partially accepts and partially rejects the Plan, such Ballots shall not be counted.

5.   **The following Ballots will NOT be counted**:

   i.      any Ballot received after the Voting Deadline unless (a) the Plan Proponents (in their sole discretion) shall have granted an extension of the Voting Deadline with respect to such Ballot or (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

   ii.     any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

   iii.    any Ballot cast by an entity that (a) does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

   iv.     any Ballot sent to the Debtors, the Bankruptcy Court or any other party other than the Voting Agent;

   v.      any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Claim;

   vi.     any Ballot transmitted to the Voting Agent by email, facsimile or other means not specifically approved in the Disclosure Statement Order;

   vii.    any unsigned Ballot;

   viii.   any Ballot that does not contain an original signature; or

ix.    any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan for all Claims of one Class.

6.    Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the "Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Plan of Reorganization and (C) Related Matters," which is enclosed with the solicitation materials you received along with this Ballot.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponents in any other context (*e.g.*, the right of the Plan Proponents to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Plan Proponents so that it is received by the later of (a) **[Date]** or (b) ten days after the date of service of a notice of an objection, if any, to your Claim.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

7.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtors nor the Voting Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

8.    The Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

9.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly-executed Ballot received by the Voting Agent before the Voting Deadline (as determined by the Voting Agent) will be deemed to reflect your intent to either accept or reject the Plan.

10.    Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Plan Proponents, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

### PLEASE RETURN YOUR BALLOT PROMPTLY.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT, PRIME CLERK LLC, BY TOLL-FREE TELEPHONE FOR (I) U.S. CALLERS AT (844) 224-1140  (NII TOLL FREE LINE) AND (II) FOR INTERNATIONAL CALLERS AT (917) 962-8496.**

THE VOTING AGENT WILL <u>NOT</u> ACCEPT BALLOTS BY EMAIL OR FACSIMILE TRANSMISSION.
BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTORS, THE COMMITTEE OR ANY OF THEIR AGENTS OTHER THAN
THE VOTING AGENT.

> **YOUR BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING
> DEADLINE, WHICH IS [Date], AT [Time], PREVAILING EASTERN TIME
> TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

**B-5**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------  x
                                                              :
In re:                                                        :          Chapter 11
                                                              :
NII Holdings, Inc., et al.,[1]                                :          Case No. 14-12611 (SCC)
                                                              :
                               Debtors.                       :          (Jointly Administered)
                                                              :
----------------------------------------------------------------  x

### BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN
### OF REORGANIZATION PROPOSED BY DEBTORS AND
### DEBTORS IN POSSESSION AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

### CLASS 8A, 8B, 8C, 8D and 8E (collectively "Class 8"):  GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN**
> **IS [Time], EASTERN STANDARD TIME, ON [Date]**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee," and, together with the Debtors, the "Plan Proponents") are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "Plan").  The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as may be amended from time to time, the "Disclosure Statement") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [Date] (the "Disclosure Statement Order").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 8 against the Debtor specified in Item 1 below, as defined in the Plan, as of the Record Date ([Date]).  Accordingly, you have a right to vote to accept or reject the Plan.  Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

Your rights are described in the Disclosure Statement, which is included in the solicitation package you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order and certain other materials).  If you received solicitation package materials in CD–ROM format and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtors' Voting Agent Prime Clerk LLC, by toll-free telephone for U.S. callers at (844) 224-1140 and for international callers at (917) 962-8496, by e-mail at niiballots@primeclerk.com, or by writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022 or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at http://cases.primeclerk.com/nii.  Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov.  Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan, electing certain treatment, and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 8 under the Plan against the Debtor specified in Item 1 below.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

---

[1]      The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 1000, Reston, VA  20190.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.** The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if the Plan (i) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class of Claims who vote on the Plan, (ii) is accepted by the holders of at least two-thirds in amount of the Interests in each impaired Class of Interests who vote on the Plan and (iii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To have your vote counted, you must complete, sign and return the originally signed Ballot to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor New York, NY 10022, so that it is received by the deadline indicated above. Ballots should not be sent to the Debtors or the Committee.

<div align="center">

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.**

</div>

PLEASE COMPLETE ITEMS 1 THROUGH 3. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST WITH RESPECT TO THE APPLICABLE CLASS. IF THIS BALLOT IS NOT SIGNED WITH AN ORIGINAL SIGNATURE ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.   Class 8 Vote.**   The undersigned, a holder of a General Unsecured Claim in the Class and against the Debtor specified below in the aggregate amount set forth below votes to (check <u>one</u> box):

☐   **ACCEPT** (vote FOR) the Plan.                    ☐   **REJECT** (vote AGAINST) the Plan.

Class: _____

Debtor: _____

Claim Amount: $_____

**ANY BALLOT EXECUTED BY THE HOLDER OF A CLAIM THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN FOR ALL CLAIMS OF ONE CLASS WILL NOT BE COUNTED.**

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS AND INTERESTS.  IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLE IX OF THE PLAN AND AS FURTHER DESCRIBED IN ARTICLE IX.A.18 OF THE DISCLOSURE STATEMENT. PURSUANT TO ARTICLE IX OF THE PLAN, IF YOU RECEIVE A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS OF THE PLAN.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)   **Defined Terms.**  As defined in the Plan:

1.A.130   **"Released Parties"** means, collectively and individually, the Plan Proponents, the members of the Creditors' Committee, the Indenture Trustees, the Consenting Parties, the Backstop Providers and the Representatives of each of the foregoing (solely in their capacities as such).

(b)   <u>**Releases by Debtors and Reorganized Debtors.**</u>  **Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, to the fullest extent permitted by law, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall forever release, waive and discharge all Liabilities that they have, had or may have against any Released Party with respect to the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Backstop Agreement, the Plan, the Exhibits, the Disclosure Statement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.1 of the Plan shall not affect (a) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct, (b) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or previously, entered into or delivered in connection with the Plan, (c) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Entity against any Debtor and/or the Estates, including rights of setoff, refund or other adjustments, (d) the rights of the Debtors to assert any applicable defenses in litigation or other proceedings with their employees (including the rights to seek sanctions, fees and other costs) and (e) any claim of the Debtors or Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other causes of action against employees or other parties, arising out of or relating to actions for**

personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party.

(c) **Releases by Holders of Claims.** Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way that such Entity has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to a Debtor, the Estates, the Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, the Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.E.2 of the Plan shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(d) **Exculpation.** From and after the Effective Date, the Released Parties, the Debtors and the Reorganized Debtors shall neither have nor incur any liability to any Entity, and no Holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Debtor, Reorganized Debtor, Released Party or any of their respective Representatives for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan Term Sheet, the Plan Support Agreement, Plan, the Exhibits, the Disclosure Statement, the Backstop Agreement, the Rights Offering, the Rights Offering Documents, any amendments to any of the Operating Company Credit Agreements, the New NII ATC Guaranty, the CDB Amended Guarantees, any of the New Securities and Documents, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed thereunder; provided, however, that the provisions of Section IX.D of the Plan shall have no effect on:  (1) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (2) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(e) **Injunctions.** As of the Effective Date, except with respect to the obligations of the Reorganized Debtors under the Plan or the Confirmation Order, all Entities that have held, currently hold or may hold any Claims or Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities that are waived, discharged or released under the Plan shall be permanently enjoined from taking any of the following enforcement actions against the Debtors, the Reorganized Debtors, the Released Parties or any of their respective assets or property on account of any such waived, discharged or released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or Liabilities:  (1) commencing or continuing in any manner any action or other proceeding; (2) enforcing, levying, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor, Reorganized Debtor or Released Party; and (5) commencing or continuing any action, in any manner, in any place to assert any Claim waived, discharged or released under the Plan or that does not otherwise comply with or is inconsistent with the provisions of the Plan.

**Item 2.    Voluntary Election of Convenience Claim Treatment.**  By checking the box below, the holder of the General Unsecured Claim identified in Item 1 elects to have its allowed Class 8A, 8B, 8C, 8D or 8E General Unsecured Claim treated as a Class 9A, 9B, 9C, 9D or 9E (collectively, "Class 9") Convenience Claim (as applicable) under the Plan and to receive the treatment specified in Section II.C.9 of the Plan.  If the box below is not checked, such holder's allowed Class 8 Claim will receive the treatment specified in Section II.C.8 of the Plan.

☐ **Convenience Claim Treatment**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned also acknowledges that the undersigned has cast the same vote with respect to all Claims in a single Class, and that that no other Ballots with respect to the amount of the Claims identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked.  The undersigned understands that, if this Ballot is otherwise validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

---

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN THE ORIGINAL BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR BY REGULAR MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS:**

NII Ballot Processing
c/o Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022

---

**YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

### VOTING INFORMATION AND INSTRUCTIONS
### FOR COMPLETING THE BALLOT

1.  The Plan Proponents are soliciting votes with respect to the Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (as it may be amended from time to time).

2.  **The Bankruptcy Court may confirm the Plan and thereby bind you, if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.  In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  *If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan.  Such releases include, but are not limited to, the releases contained in Section IX.E of the Plan, which include the release of claims and causes of action against certain nondebtor entities.*  Complete the Ballot by providing all the information requested and sign, date and return the originally signed Ballot in the enclosed envelope or by regular mail, overnight courier or hand delivery to Prime Clerk LLC (the "Voting Agent") at the applicable following address:

    > **NII Ballot Processing**
    > **c/o Prime Clerk LLC**
    > **830 3rd Avenue, 9th Floor**
    > **New York, NY 10022**

    **Ballots must be *received* by the Voting Agent by[Time], Eastern Standard Time, on [Date] (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Voting Agent is enclosed for your convenience.  Ballots submitted by email, facsimile or other means of electronic submission will not be accepted.  *Ballots should not be sent to the Debtors or the Committee.*

4.  You must identify whether your Claim is in Class 8A, 8B, 8C, 8D or 8E on the first line of Item 1 and identify the Debtor you are asserting your Claim against on the second line of Item 1.

5.  If you hold Claims in more than one voting Class under the Plan, you may receive a separate Ballot for each such Class of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only those Claims described on the Ballot.  Please complete and return each Ballot you receive.  The attached Ballot is designated only for voting General Unsecured Claims against the Debtor and in the Class specified in Item 1 of the Ballot.**  You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots shall not be counted.  If you hold any portion of a single Claim, you and all other holders of any portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan.  In the event a group of Ballots received from the various holders of multiple portions of a single Claim partially accepts and partially rejects the Plan, such Ballots shall not be counted.

6.  **Election to Opt Out of Class 8.**  By checking the box in Item 2 to opt out of Class 8, you irrevocably elect to have your Class 8 Claim treated as a Class 9 Claim.  You should consult the Plan for a better understanding of the treatment of Classes 8 and 9 under the Plan.

7.  **The following Ballots will NOT be counted**:

    i.   any Ballot received after the Voting Deadline unless (a) the Plan Proponents (in their sole discretion) shall have granted an extension of the Voting Deadline with respect to such Ballot or (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

    ii.  any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

    iii. any Ballot cast by an entity that (a) does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

    iv.  any Ballot sent to the Debtors, the Bankruptcy Court or any other party other than the Voting Agent;

    v.   any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Claim;

vi.         any Ballot transmitted to the Voting Agent by email, facsimile or other means not specifically approved in the Disclosure Statement Order;

vii.        any unsigned Ballot;

viii.       any Ballot that does not contain an original signature; or

ix.        any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan for all Claims of one Class.

8.        Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the "Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Plan of Reorganization and (C) Related Matters," which is enclosed with the solicitation materials you received along with this Ballot.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponents in any other context (*e.g.*, the right of the Plan Proponents to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Plan Proponents so that it is received by the later of (a) **[Date]** or (b) ten days after the date of service of a notice of an objection, if any, to your Claim.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

9.        The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtors nor the Voting Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.      The Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

11.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly-executed Ballot received by the Voting Agent before the Voting Deadline (as determined by the Voting Agent) will be deemed to reflect your intent to either accept or reject the Plan.

12.      Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Plan Proponents, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

### PLEASE RETURN YOUR BALLOT PROMPTLY.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT, PRIME CLERK LLC, BY TOLL-FREE TELEPHONE FOR (I) U.S. CALLERS AT (844) 224-1140  (NII TOLL FREE LINE) AND (II) FOR INTERNATIONAL CALLERS AT (917) 962-8496.**

THE VOTING AGENT WILL <u>NOT</u> ACCEPT BALLOTS BY EMAIL OR FACSIMILE TRANSMISSION.
BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTORS, THE COMMITTEE OR ANY OF THEIR AGENTS OTHER THAN THE VOTING AGENT.

---

**YOUR BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS [Date], AT [Time] PREVAILING EASTERN TIME TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN**

---

## EXHIBIT C

**(Proposed Tabulation Rules)**

## PROPOSED TABULATION RULES FOR
## <u>CLAIMS ENTITLED TO VOTE ON THE PLAN</u>

a. Unless otherwise provided in the Tabulation Rules described below, a Claim (as defined in the Plan) will be deemed temporarily allowed for voting purposes in an amount equal to the amount claimed by the holder of such Claim in any proof of Claim filed by the applicable bar date (or otherwise deemed timely filed under applicable law) to the extent that the proof of Claim specifies a fixed or liquidated amount. Any additional contingent or unliquidated amounts will be temporarily disallowed for voting purposes.

b. If a Claim is deemed allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan, if any.

c. If a Claim for which a proof of Claim has been timely filed is (i) wholly contingent, unliquidated or disputed (upon a reasonable review of the claim and the supporting documentation by the Plan Proponents or the Voting Agent) and/or (ii) does not otherwise specify a fixed or liquidated amount, such wholly contingent, unliquidated or disputed Claim will be temporarily allowed for voting purposes in the amount of $1.00.

d. If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, or by an agreement between the Plan Proponents and the creditor estimating or otherwise allowing a Claim for voting purposes (an "<u>Estimation Agreement</u>"), such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Bankruptcy Court. The following shall apply to Estimation Agreements:

- With respect to any Estimation Agreement, the Plan Proponents must file a notice of such agreement (an "<u>Estimation Notice</u>") with the Bankruptcy Court and serve such Estimation Notice on the affected creditor and the following parties (collectively, the "<u>Notice Parties</u>"):

  i. the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn: General Counsel);

  ii. counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: David G. Heiman and Carl E. Black, Esq.);

  iii. the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan D. Golden, Esq. and Brian Masumoto, Esq.);

  iv. counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

v.      counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

vi.     counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

vii.    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

viii.   Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

ix.     Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

x.      counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

xi.     the Securities and Exchange Commission; and

xii.    all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

- Each Estimation Notice: (i) may address a single Claim or multiple Claims; (ii) shall describe the pertinent terms of the Estimation Agreement between the parties (including the amount(s) in which the creditor's Claim(s) will be temporarily allowed for voting purposes); and (iii) provide that the Notice Parties may file written objections to the Estimation Agreement described therein (an "Estimation Objection") and serve such objection on the Plan Proponents and the Notice Parties no later than 7 days after service of the Estimation Notice (the "Estimation Objection Deadline").

- If no Estimation Objection is filed and served by the Estimation Objection Deadline with respect to a particular Estimation Agreement, the Claim(s) addressed in the relevant Estimation Agreement will be temporarily allowed for voting purposes as set forth in the Estimation Agreement without further action of the parties or the Bankruptcy Court.

- If an Estimation Objection is timely filed and served, and such Estimation Objection is not resolved consensually by the parties, the Claim(s)

addressed in the relevant Estimation Agreement will not be temporarily allowed for voting purposes as set forth therein unless approved by an order of the Bankruptcy Court.  The Plan Proponents may schedule any such Estimation Objection and the related Estimation Agreement for hearing at any omnibus hearing before the Bankruptcy Court on not less than seven business days' notice.  Along with any notice of hearing on a contested Estimation Agreement, the Plan Proponents may file additional briefing in support of the agreement (a "Supplemental Brief"), and parties that filed Estimation Objections will have three business days from the service of the Supplemental Brief to file with the Bankruptcy Court and serve on the Plan Proponents a response to the Supplemental Brief.

e.      If a Claim is (i) either (a) not listed in the Schedules or (b) listed in the Schedules as contingent, unliquidated or disputed and (ii) a proof of Claim was not timely filed or deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, unless the Plan Proponents have consented otherwise in writing, such Claim will be disallowed for voting purposes pursuant to Bankruptcy Rule 3003(c)(2).[1]

f.      If a Claim is submitted for resolution pursuant to the ADR Procedures at least 14 days before the Voting Deadline, the Claim will be temporarily allowed in the liquidated, noncontingent and undisputed amount, if any, identified in the Schedules on account of such Claim or, if such Claim is listed in the Schedules as contingent, unliquidated or disputed, the Claim will be temporarily allowed in the amount of $1.00.

g.      If the Plan Proponents have filed and served an objection to a Claim at least 14 days before the Voting Deadline, such Claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection.  If an objection does not identify the proposed amount of a Claim (e.g., if the Claim remains subject to estimation or liquidation), then such Claim will be temporarily allowed in the amount of $1.00.

h.      If the automatic stay has been modified by an order of the Bankruptcy Court at least 14 days before the Voting Deadline to permit a Claim to be adjudicated, in whole or in part, in another court (including an appellate court), such Claim will be temporarily allowed in the liquidated, noncontingent and undisputed amount, if any, identified in the Schedules on account of such Claim or, if such Claim is listed in the Schedules as contingent, unliquidated or disputed, the Claim will be temporarily allowed in the amount of $1.00.

i.      With respect to Notes, holders of such Notes as of the Record Date shall be solicited and cast votes on the Plan in accordance with customary procedures for soliciting and tabulating votes of public securities holders.  For the avoidance of doubt, any proofs of claim

---

[1]      Bankruptcy Rule 3003(c)(2) provides that "[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

filed by individual Noteholders on their own behalf on account of ownership of the Notes shall be disallowed for voting purposes.   In addition, any proofs of claims filed by individual equity holders on account of their equity ownership shall be disallowed for voting purposes, and such holders will be served with the Notice of Non-Voting Status in accordance with customary procedures for noticing public securities holders.

        j.      If a proof of claim has been amended by a later filed proof of claim, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Plan Proponents have objected to such amended claim.

        k.      For purposes of the numerosity and amount requirement of Section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated (based on the reasonable efforts of the Plan Proponents and the Voting Agent) as if such creditor held one Claim in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan (as applicable).

        l.      If any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to either accept or reject the Plan.

        m.      If a creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the latest dated properly executed Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots.

        n.      Creditors are required to vote all of their Claims, as the case may be, within a particular Class under the Plan either to accept or reject the Plan and may not split their votes.

        o.      In the event that (i) a Ballot, (ii) group of Ballots within a Plan class received from a single creditor or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim partially rejects and partially accepts the Plan, such Ballots will not be counted.

        p.      Any proof of claim not asserted in U.S. dollars shall be allowed to vote at $1.00 for voting purposes only.

        q.      The Plan Proponents, in their discretion, and subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice.  Except as provided below, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Plan Proponents may, in their discretion, reject such Ballot as invalid, and therefore, decline to utilize it in connection with confirmation of the Plan by the Court; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

r.      Subject to contrary order of the Court, the Plan Proponents reserve the absolute right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Plan Proponents, not be in accordance with the provisions of the Bankruptcy Code; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

s.      The following additional procedures shall apply with respect to tabulating master ballots:

(1)     All Master Ballot Agents will be required to retain the Beneficial Owner Ballots cast by their respective Beneficial Owners for inspection for a period of one year following the Voting Deadline.

(2)     Votes cast by holders of public securities through Master Ballot Agents will be applied to the applicable positions held by such Master Ballot Agents as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Master Ballot Agent shall not be counted in excess of the amount of public securities held by such Master Ballot Agent as of the Record Date.

(3)     If conflicting votes or "over-votes" are submitted by a Master Ballot Agent, the Voting Agent shall use reasonable efforts to reconcile discrepancies with such Master Ballot Agent.  The submission of a Beneficial Owner Ballot or a Master Ballot reflecting an aggregate amount of voting Claims that exceeds the record position as identified on record and depository listings, respectively, is referred to herein as an "over-vote."

(4)     If over-votes are submitted by a Master Ballot Agent which are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan shall be counted in the same proportion as the votes to accept and to reject the Plan submitted by the Master Ballot Agent, but only to the extent of the Master Ballot Agent's Record Date position in the public securities.

(5)     For the purposes of tabulating votes, each Beneficial Owner shall be deemed (regardless of whether such holder includes interest in the amount voted on its Ballot) to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Voting Agent, on a proportionate basis to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest, with respect to the securities thus voted.

(6)     A single Master Ballot Agent may complete and deliver to the Voting Agent multiple master ballots.  Votes reflected on multiple

master ballots shall be counted except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last properly completed Master Ballot received prior to the Voting Deadline shall, to the extent of such inconsistency, supersede any prior received Master Ballot.

# **EXHIBIT D**

**(Proposed Confirmation Hearing Notice)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
NII Holdings, Inc., et al.,[1]                      :    Case No. 14-12611 (SCC)
                                                    :
                           Debtors.                 :    (Jointly Administered)
                                                    :
---------------------------------------------------------------x

NOTICE OF (A) DEADLINE
FOR CASTING VOTES TO ACCEPTOR REJECT
PLAN OF REORGANIZATION, (B) HEARING TO CONSIDER
CONFIRMATION OF PLAN OF REORGANIZATION AND (C) RELATED MATTERS

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      The above-captioned debtors and debtors in possession (collectively,
the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and,
together with the Debtors, the "Plan Proponents") filed:  (a) the Joint Plan of Reorganization
Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors
(Docket No. [___]) (as the same may be amended or modified, the "Plan") on December 22, 2014;
and (b) the related Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors
and Debtors in Possession and Official Committee of Unsecured Creditors (Docket No. [___]) (as
the same may be amended or modified, the "Disclosure Statement") on December 22, 2014.[2]

---

[1]     The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S.
        taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International
        (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII
        Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l.
        (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International
        (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The
        location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street,
        Suite 800, Reston, VA  20190.

[2]     References to Exhibits and capitalized terms not otherwise defined in this Notice have the meanings given
        to them in the Motion for an Order (I) Approving Disclosure Statement, (II) Approving the Form and
        Manner of Service of Disclosure Statement Notice (III) Establishing Procedures for Solicitation and
        Tabulation of Votes to Accept or Reject Plan of Reorganization, (IV) Approving Related Notice and Rights
        Offering Procedures and (V) Scheduling Hearing on Confirmation of Joint Plan of Reorganization (the
        "Motion"), filed by the Debtors on December 22, 2014, or, if not defined therein, in the Plan.  Copies of the
        Motion are available upon request from the Debtors' counsel.

2. Pursuant to an order of the Court dated [___] (the "Solicitation Procedures Order"), the Disclosure Statement and certain related materials (collectively, the "Solicitation Materials") have been approved for solicitation of votes to accept or reject the Plan.

3. A hearing to consider the confirmation of the Plan (the "Confirmation Hearing") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Room 623 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") **on March 25, 2015, at 10:00 a.m., Eastern time.**

4. Pursuant to the Solicitation Procedures Order, the Court approved certain procedures for tabulation of votes to accept or reject the Plan. If you are the holder of a Claim against one of the Debtors as of January 28, 2015 (the record date as established by the Solicitation Procedures Order) in a class entitled to vote on the Plan, you have received with this Notice a ballot form (a "Ballot") and voting instructions appropriate for your Claim, as well as a copy of the Disclosure Statement and related solicitation materials. The following procedures apply with respect to voting your Claim:

a. Except as provided in subparagraph (b) below, for your vote to accept or reject the Plan to be counted, you must complete all required information on the Ballot, execute the Ballot and return the completed Ballot to the address indicated on the Ballot **so that it is received by 4:00 p.m., Eastern time, on March 11, 2015** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Voting Deadline may disqualify your Ballot and your vote. ***You are encouraged to read the voting instructions carefully and review the Disclosure Statement before you vote.***

b. IF YOUR CLAIM IS BASED ON OBLIGATIONS OWED UNDER A NOTE, SPECIAL VOTING PROCEDURES AND DEADLINES MAY APPLY. YOU ARE URGED TO READ CAREFULLY ALL INSTRUCTIONS RECEIVED WITH YOUR SOLICITATION MATERIALS TO ENSURE THAT YOUR BALLOT IS PROPERLY COMPLETED AND TIMELY SUBMITTED.

c. Your Claim has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following tabulation rules approved by the Court in the Solicitation Procedures Order (collectively, the "Tabulation Rules"):

i. Unless otherwise provided in the Tabulation Rules described below, a Claim will be deemed temporarily allowed for voting purposes in an amount equal to the amount claimed by the holder of such Claim in any proof of Claim filed by the applicable bar date (or otherwise deemed timely filed under applicable law) to the extent that the proof of Claim specifies a fixed or liquidated amount. Any additional contingent or unliquidated amounts will be temporarily disallowed for voting purposes.

ii.        If a Claim is deemed allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan.

iii.        If a Claim for which a proof of Claim has been timely filed is (i) wholly contingent, unliquidated or disputed (upon a reasonable review of the claim and the supporting documentation by the Plan Proponents or the Voting Agent) and/or (ii) does not otherwise specify a fixed or liquidated amount, such wholly contingent, unliquidated or disputed Claim will be temporarily allowed for voting purposes in the amount of $1.00.

iv.        If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, or by an agreement between the Plan Proponents and the creditor estimating or otherwise allowing a Claim for voting purposes (an "Estimation Agreement"), such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Bankruptcy Court. The following shall apply to Estimation Agreements:

- With respect to any Estimation Agreement, the Plan Proponents must file a notice of such agreement (an "Estimation Notice") with the Bankruptcy Court and serve such Estimation Notice on the affected creditor and the following parties (collectively, the "Notice Parties"):

  - the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn: General Counsel);

  - counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: David G. Heiman, Esq. and Carl E. Black, Esq.);

  - the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan D. Golden, Esq. and Brian Masumoto, Esq.);

  - counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

- counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

- counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

- Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

- Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

- Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

- counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.) ;

- the SEC; and

- all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

- Each Estimation Notice:  (i) may address a single Claim or multiple Claims; (ii) shall describe the pertinent terms of the Estimation Agreement between the parties (including the amount(s) in which the creditor's Claim(s) will be temporarily allowed for voting purposes); and (iii) provide that the Notice Parties may file written objections to the Estimation Agreement described therein (an "Estimation Objection") and serve such objection on the Plan Proponents and the Notice Parties no later than 7 days after

service of the Estimation Notice (the "<u>Estimation Objection Deadline</u>").

- If no Estimation Objection is filed and served by the Estimation Objection Deadline with respect to a particular Estimation Agreement, the Claim(s) addressed in the relevant Estimation Agreement will be temporarily allowed for voting purposes as set forth in the Estimation Agreement without further action of the parties or the Bankruptcy Court.

- If an Estimation Objection is timely filed and served, and such Estimation Objection is not resolved consensually by the parties, the Claim(s) addressed in the relevant Estimation Agreement will not be temporarily allowed for voting purposes as set forth therein unless approved by an order of the Bankruptcy Court.  The Plan Proponents may schedule any such Estimation Objection and the related Estimation Agreement for hearing at any omnibus hearing before the Bankruptcy Court on not less than 7 business days' notice.  Along with any notice of hearing on a contested Estimation Agreement, the Plan Proponents may file additional briefing in support of the agreement (a "<u>Supplemental Brief</u>"), and parties that filed Estimation Objections will have three business days from the service of the Supplemental Brief to file with the Bankruptcy Court and serve on the Plan Proponents a response to the Supplemental Brief.

v.    If a Claim is (i) either (A) not listed in the Schedules or (B) listed in the Schedules as contingent, unliquidated or disputed and (ii) a proof of Claim was not timely filed or deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, unless the Plan Proponents have consented otherwise in writing, such Claim will be disallowed for voting purposes pursuant to Bankruptcy Rule 3003(c)(2).

vi.    If a Claim is submitted for resolution pursuant to the ADR Procedures at least 14 days before the Voting Deadline, the Claim will be temporarily allowed in the liquidated, noncontingent and undisputed amount, if any, identified in the Schedules on account of such Claim or, if such Claim is listed in the Schedules as contingent, unliquidated or disputed, the Claim will be temporarily allowed in the amount of $1.00.

vii.    If the Plan Proponents have filed and served an objection to a Claim at least 14 days before the Voting Deadline, such Claim will

be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection. If an objection does not identify the proposed amount of a Claim (e.g., if the Claim remains subject to estimation or liquidation), then such Claim will be temporarily allowed in the amount of $1.00.

viii.   With respect to Notes, holders of such Notes as of the Record Date shall be solicited and cast votes on the Plan in accordance with customary procedures for soliciting and tabulating votes of public securities holders. For the avoidance of doubt, any proofs of claim filed by individual Noteholders on their own behalf on account of ownership of the Notes shall be disallowed for voting purposes. In addition, any proofs of claims filed by individual equity holders on account of their equity ownership shall be disallowed for voting purposes, and such holders will be served with the Notice of Non-Voting Status in accordance with customary procedures for noticing public securities holders.

ix.    If a proof of claim has been amended by a later filed proof of claim, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Plan Proponents have objected to such amended claim

x.     For purposes of the numerosity and amount requirement of Section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated (based on the reasonable efforts of the Plan Proponents and the Voting Agent) as if such creditor held one Claim against in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan (as applicable).

xi.    Any proof of claim not asserted in U.S. dollars shall be allowed to vote at $1.00 for voting purposes only.

xii.   The Plan Proponents, in their discretion, and subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice. Except as provided below, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Plan Proponents may, in their discretion, reject such Ballot as invalid, and therefore, decline to utilize it in connection with confirmation of the Plan by the Court; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

xiii.    Subject to contrary order of the Court, the Plan Proponents reserve the absolute right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Plan Proponents, not be in accordance with the provisions of the Bankruptcy Code; provided, however, that such invalid Ballots shall be documented in the voting results filed with the Court.

xiv.    The following additional procedures shall apply with respect to tabulating master ballots:

- All Master Ballot Agents will be required to retain the Beneficial Owner Ballots cast by their respective Beneficial Owners for inspection for a period of one year following the Voting Deadline.

- Votes cast by holders of public securities through Master Ballot Agents will be applied to the applicable positions held by such Master Ballot Agents as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Master Ballot Agent shall not be counted in excess of the amount of public securities held by such Master Ballot Agent as of the Record Date.

- If conflicting votes or "over-votes" are submitted by a Master Ballot Agent, the Voting Agent shall use reasonable efforts to reconcile discrepancies with such Master Ballot Agent. The submission of a Beneficial Owner Ballot or a Master Ballot reflecting an aggregate amount of voting Claims that exceeds the record position as identified on record and depository listings, respectively, is referred to herein as an "over-vote."

- If over-votes are submitted by a Master Ballot Agent which are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan shall be counted in the same proportion as the votes to accept and to reject the Plan submitted by the Master Ballot Agent, but only to the extent of the Master Ballot Agent's Record Date position in the public securities.

- For the purposes of tabulating votes, each Beneficial Owner shall be deemed (regardless of whether such holder includes interest in the amount voted on its Ballot) to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Voting Agent, on a proportionate basis to reflect the corresponding claim amount, including any accrued but

unpaid prepetition interest, with respect to the securities
thus voted.

- A single Master Ballot Agent may complete and deliver to
  the Voting Agent multiple master ballots.  Votes reflected
  on multiple master ballots shall be counted except to the
  extent that they are duplicative of other Master Ballots.  If
  two or more Master Ballots are inconsistent, the last
  properly completed Master Ballot received prior to the
  Voting Deadline shall, to the extent of such inconsistency,
  supersede any prior received Master Ballot.

       d.     The temporary allowance of your Claim for voting purposes does
not constitute an allowance of your Claim for purposes of receiving distributions under
the Plan and is without prejudice to the rights of the Plan Proponents in any other context,
including the right of the Plan Proponents to contest the amount, validity or classification
of any Claim for purposes of allowance and distribution under the Plan.  If you wish to
challenge (i) the classification of your Claim or (ii) the allowance of your Claim for
voting purposes in accordance with the Tabulation Rules, you must file a motion,
pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order
temporarily allowing your Claim in a different amount or classification for purposes of
voting to accept or reject the Plan and serve such motion on counsel for each of the Plan
Proponents identified below so that it is received by the later of (i) March 4, 2015 or
(ii) ten days after the date of service of a notice of objection, if any, to your Claim.
Unless the Court orders otherwise, your Claim will not be counted for voting purposes in
excess of the amount determined in accordance with the Tabulation Rules.

       5.     Classes 1A – 1E (Priority Claims), 2A – 2E (Secured Claims), 9A – 9E
(Convenience Claims), 11A – 11E (Non-Debtor Affiliate Claims) and 13B – 13E (Subsidiary
Debtor Equity Interests) under the Plan are unimpaired and, therefore, are conclusively presumed
to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 10A –
10E (Section 510 Claims) and 12A (NII Interests) under the Plan are impaired, but shall not
receive any Distribution pursuant to the Plan, and therefore, consistent with section 1126(g) of
the Bankruptcy Code, will be deemed to have rejected the Plan.  For the foregoing reasons,
solicitation of Classes 1A – 1E, 2A – 2E, 9A – 9E, 10A – 10E, 11A – 11E, 12A and 13B – 13E
(collectively, the "Non-Voting Classes") under the Plan is not required, and no Ballots have been
proposed for creditors and equity security holders in these classes.  Each holder of a claim or
interest in the Non-Voting Classes that is not a Debtor or an affiliate of a Debtor will receive a
Notice of Non-Voting Status.

       6.     In connection with confirmation of the Plan, the Plan Proponents are
seeking approval of certain releases, including releases of certain nondebtor entities, that will
become effective and binding on the Effective Date in accordance with the terms of the Plan and
the Confirmation Order.  These releases are described in detail in the Disclosure Statement.

       7.     Objections, if any, to the confirmation of the Plan must:  (a) be in writing;
(b) state the name and address of the objecting party and the nature of the Claim or Interest of

such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Court and served on the following parties **so that they are received no later than 4:00 p.m., Eastern time, on March 11, 2015**:

    i.    the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn:  General Counsel);

    ii.    counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn:  David G. Heiman, Esq. and Carl E. Black, Esq.);

    iii.    the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Susan D. Golden, Esq. and Brian Masumoto, Esq.);

    iv.    counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

    v.    counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

    vi.    counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

    vii.    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

    viii.    Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

    ix.    Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

    x.    counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

    xi.    the SEC; and

    xii.    all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

8.      For purposes of filing pleadings in these cases, the address of the Court is One Bowling Green, New York, New York 10004-1408.  Attorneys may also file pleadings on the Bankruptcy Court's  Document Filing System (ECF) by completing and submitting the Electronic Filing Registration Form, available at http://www.nysb.uscourts.gov.

9.      Requests for copies of the Disclosure Statement and the Plan (excluding certain voluminous exhibits thereto) by parties in interest may be made in writing to NII Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022.  In addition, any party may review the Plan, the Disclosure Statement and related exhibits without charge via the internet at cases.primeclerk.com/nii.

10.     The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing or any continued hearing.

Dated:  **[Date]**, 2014
**[BY ORDER OF THE COURT]**

___/s/_____          ___/s/_____
Scott J. Greenberg                              Kenneth H. Eckstein
Lisa Laukitis                                   Adam C. Rogoff
JONES DAY                                       Stephen D. Zide
222 East 41st Street                            KRAMER LEVIN NAFTALIS & FRANKEL
New York, New York  10017                       LLP
Telephone:  (212) 326-3939                      1177 Avenue of the Americas
Facsimile:  (212) 755-7306                      New York, New York 10036
                                                Telephone: (212) 715-9100
                                                Facsimile: (212) 715-8100
  - and -

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)         ATTORNEYS FOR THE OFFICIAL
JONES DAY                                       COMMITTEE OF UNSECURED
North Point                                     CREDITORS
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# EXHIBIT E

**(Proposed Solicitation Package and General Procedures)**

## THE SOLICITATION PACKAGE AND GENERAL PROCEDURES

a.      The Solicitation Package, comprised of the materials required to be provided to holders of Claims under Bankruptcy Rule 3017(d), will be mailed to appropriate parties in interest after the Bankruptcy Court has approved the contents of the Disclosure Statement as containing adequate information, as required by section 1125 of the Bankruptcy Code.  Specifically, the Debtors will mail Solicitation Packages or cause such Solicitation Packages to be mailed by U.S. mail, postage prepaid, to holders of Claims in classes entitled to vote on the Plan.

b.      Solicitation Packages will contain copies of the following items:

i.      a cover letter describing (1) the contents of the Solicitation Package, (2) the contents of any enclosed CD-ROM and instructions for use of the CD-ROM and (3) information about how to obtain, at no charge, hard copies of any materials provided on the CD-ROM;

ii.     the Confirmation Hearing Notice;

iii.    the order approving the Disclosure Statement (excluding the exhibits thereto);

iv.     the Disclosure Statement together with the exhibits thereto, including the Plan, that have been filed with the Court before the date of the mailing, except as set forth below,[1]

---

[1]     The Disclosure Statement and the Plan, including exhibits, are voluminous.  Accordingly, to reduce substantially the administrative costs associated with printing and mailing such a voluminous document, the Debtors may elect to serve the Disclosure Statement and the Plan (including exhibits) via CD-ROM instead of in printed format to all parties (while reserving the right to serve printed copies of the Solicitation Packages, as described below).  This procedure has been approved in other large chapter 11 cases in this District.  See, e.g., In re Excel Mar. Carriers Ltd., No. 13-23060 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2013); In re Old Carco LLC (f/k/a/ Chrysler LLC), Case No. 09-50002 (AJG) (Bankr. S.D.N.Y.  Jan. 21, 2010); In re Frontier Airlines Holdings, Inc., No. 08-11298 (RDD) (Bankr. S.D.N.Y. July 22, 2009); In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Mar. 30, 2007).

Should the Debtors elect to serve printed copies of the Solicitation Packages, the Debtors propose to exclude from the Solicitation Packages all exhibits to the Plan and the Disclosure Statement that contain publicly available documents previously filed by the Debtors with the United States Securities and Exchange Commission.  Because these publicly-filed documents aggregate hundreds of pages, including them within a paper service of the Solicitation Packages would significantly increase the cost of printing and mailing the Solicitation Packages.

v.      any letters from (i) the Debtors, recommending acceptance of the Plan and (ii) certain other constituencies setting forth their recommendations with respect to the Plan;[2] and

vi.     for holders of Claims in voting Classes, an appropriate form of Ballot, a pre-paid, pre-addressed Ballot return envelope and such other materials as the Court may direct.

c.      In addition to the service procedures outlined above (and to accommodate creditors who wish to review exhibits not included in the Solicitation Packages in the event of paper service):  (a) the Plan, the Disclosure Statement and, once they are filed, all exhibits to both documents will be made available at no charge via the internet at <u>cases.primeclerk.com/nii</u>; (b) the Debtors will provide parties in interest (at no charge) with hard copies of the Plan and/or Disclosure Statement (excluding any publicly filed exhibits) upon written request; and (c) the Debtors will separately file copies of all exhibits to the Plan and Disclosure Statement with the Court no later than seven days before the Confirmation Hearing.

d.      Solicitation Packages for holders of Claims or Interests in the Non-Voting Classes under the Plan will include only the Confirmation Hearing Notice and the Notice of Non-Voting Status.

e.      Except as described above or on <u>Exhibit F</u>, the Solicitation Packages will be mailed not less than twenty-eight days prior to the Confirmation Objection Deadline to:

i.      the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>");

ii.     all persons or entities that have timely filed proofs of Claim on or before the Record Date (or their transferees in accordance with the Motion);

iii.    all persons or entities identified in the Debtors' respective schedules of assets and liabilities (collectively with any amendments thereto, the "<u>Schedules</u>") as holding liquidated, noncontingent, undisputed Claims as of the Record Date (or their transferees in accordance with the Motion);

---

[2]      The Debtors reserve the right to include letters setting forth recommendations with respect to the Plan in the Solicitation Package.  The Debtors intend to file copies of any such letters with the Court prior to the hearing on the Motion.

iv. all other known holders of Claims or Interests against the Debtors, if any, as of the Record Date;

v. all parties in interest that have filed notices in accordance with Bankruptcy Rule 2002 in the Debtors' chapter 11 cases on or before the Record Date; and

vi. all parties to executory contracts or unexpired leases with the Debtors, as reflected on the Debtors' books and records or the Schedules, (A) that have not previously been assumed and assigned pursuant to an order of the Court and (B) that have not previously been rejected by an order of the Court, or have been rejected but with respect to which the bar date for asserting rejection damages claims has not passed as of the Record Date.

f. Solicitation Packages will be mailed to known holders of Claims against the Debtors at the following addresses:  (a) for persons or entities that have filed proofs of Claim, at the address provided on the face of the filed proof of Claim; (b) for persons or entities listed on the Debtors' Schedules, at the most current address contained in the Debtors' books and records; and (c) at the address for a Claim transferee set forth in a valid notice of transfer of Claim or the address provided in any requests for notice filed in accordance with Bankruptcy Rule 2002.  Solicitation Packages will be mailed to Noteholders as described on <u>Exhibit F</u>.

g. On **[Date]**, the Plan Proponents served notice of the hearing to approve the Disclosure Statement (the "<u>Disclosure Statement Notice</u>") on the following parties in accordance with Bankruptcy Rule 2002:  (a) the U.S. Trustee; (b) counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively; (c) counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes; (d) counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes; (e) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York  10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes; (f) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company; (h) counsel for the Creditors' Committee; (i) all persons or entities that have filed proofs of claim in the Debtors' cases that have not been previously disallowed by order of this Court and have been processed by the Debtors' claims agent prior to the mailing of the Disclosure Statement Notice; (j) all persons or entities listed in the Debtors' respective schedules of assets and liabilities, and any amendments thereto (collectively, the "<u>Schedules</u>"); (k) all holders the Debtors' public securities; (l) the

Securities and Exchange Commission (the "SEC"); (l) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; and (m) any other known holders of claims or potential claims against the Debtors (collectively, the "Notice Parties").

        h.      Given the size of the mailing, the Plan Proponents anticipate that a number of the Disclosure Statement Notices will be returned by the United States Postal Service as undeliverable as a result of incomplete or inaccurate addresses (collectively, the "Undeliverable Addresses").  The Plan Proponents believe that it would be costly and wasteful to mail Solicitation Packages to the Undeliverable Addresses.  Therefore, the Plan Proponents request that they be excused from mailing Solicitation Packages to those entities for which the Plan Proponents have only Undeliverable Addresses unless the Plan Proponents are provided with accurate addresses for such entities, in writing, on or before February 11, 2015.  If a Solicitation Package is returned as undeliverable, the Voting Agent shall resend such Solicitation Package only once, provided that the United States Post Office has included a forwarding address at least seven business days before the Voting Deadline.

**<u>EXHIBIT F</u>**

**(Noteholder Solicitation Procedures)**

## SPECIAL SOLICITATION PROCEDURES FOR NOTEHOLDERS

a.      The Plan Proponents will cause a Solicitation Package or Packages to be mailed by first class mail, postage prepaid, to (i) each Directly Registered Holder of the Notes and (ii) each Master Ballot Agent for distribution to Beneficial Owners as of the Record Date, in the manner described below.

b.      Pursuant to Bankruptcy Rules 1007(i) and 3017(e), to permit such mailing and facilitate the transmittal of Solicitation Packages to Directly Registered Holders and Beneficial Owners of Notes, the Indenture Trustees will be required to provide the following documents to the Plan Proponents within two (2) business days after the Record Date:  (i) a list in appropriate electronic or other format agreed to by the Plan Proponents containing the names, addresses and holdings of the respective Directly Registered Holders (a "Record Holder Register"); or (ii) confirmation that there are no Directly Registered Holders.

c.      Not less than twenty-eight days prior to the Confirmation Objection Deadline, the Debtors (or the Debtors' agent) will send each Directly Registered Holder (if any) a Solicitation Package containing the Beneficial Owner Ballot. The Beneficial Owner Ballot must be completed and returned to the Voting Agent so that it is received prior to the Voting Deadline.

d.      The Voting Agent will deliver to each Master Ballot Agent a Master Ballot[1] and the requisite number of Solicitation Packages with the appropriate Beneficial Owner Ballots.

e.      The Master Ballot Agents will be required to distribute the Solicitation Packages they receive as promptly as possible to the Beneficial Owners for whom they provide services.  In particular, to obtain the votes of the Beneficial Owners, the Master Ballot Agents will include as part of each Solicitation Package sent to a Beneficial Owner a Beneficial Owner Ballot and a pre-paid return envelope provided by and addressed to the Master Ballot Agent.  The Beneficial Owners then must return the Beneficial Owner Ballots to the Master Ballot Agent in the manner and by the deadline directed by the Master Ballot Agent in the instructions accompanying the Beneficial Owner Ballots.[2]  Upon receipt of the completed Beneficial Owner Ballots from the Beneficial Owners, the Master Ballot Agent will summarize the votes of its respective Beneficial Owners on a Master Ballot in accordance with the instructions attached to the

---

[1]      In accordance with customary securities solicitation procedures, the Master Ballots will be distributed to Master Ballot Agents approximately seven (7) days after the initial solicitation mailing.

[2]      Prior to distributing the Beneficial Owner Ballots, the Master Ballot Agents will be required to fill in the information on the Beneficial Owner Ballots regarding the manner and deadline for submission of such Ballots.  See the Beneficial Owner Ballots attached hereto as part of Exhibit B.

Master Ballot.  <u>See</u> the Master Ballots attached as part of <u>Exhibit B</u>.  The Master Ballot Agent must return the Master Ballot to the Voting Agent so that it is received prior to the Voting Deadline.

        f.      Upon written request, the Debtors will reimburse such entities (or their agents) in accordance with customary procedures for their reasonable, actual and necessary out-of-pocket expenses incurred in performing the tasks described above.  No other fees, commissions or other remuneration will be payable to any Master Ballot Agent (or their agents or intermediaries) in connection with the distribution of Solicitation Packages to Beneficial Owners or the completion of Master Ballots.

        g.      With respect to the tabulation of Ballots cast by Directly Registered Owners and Beneficial Owners of Notes, the following procedures will apply:

    i.    All Master Ballot Agents will be required to retain the Beneficial Owner Ballots cast by their respective Beneficial Owners for inspection for a period of one year following the Voting Deadline.

    ii.    Votes cast by holders of public securities through Master Ballot Agents will be applied to the applicable positions held by such Master Ballot Agents as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Master Ballot Agent shall not be counted in excess of the amount of public securities held by such Master Ballot Agent as of the Record Date.

    iii.    If conflicting votes or "over-votes" are submitted by a Master Ballot Agent, the Voting Agent shall use reasonable efforts to reconcile discrepancies with such Master Ballot Agent.  The submission of a Beneficial Owner Ballot or a Master Ballot reflecting an aggregate amount of voting Claims that exceeds the record position as identified on record and depository listings, respectively, is referred to herein as an "over-vote."

    iv.    If over-votes are submitted by a Master Ballot Agent which are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan shall be counted in the same proportion as the votes to accept and to reject the Plan submitted by the Master Ballot Agent, but only to the extent of the Master Ballot Agent's Record Date position in the public securities.

    v.    For the purposes of tabulating votes, each Beneficial Owner shall be deemed (regardless of whether such holder includes interest in the amount voted on its Ballot) to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Voting Agent, on a proportionate basis to reflect the corresponding claim amount, including any

accrued but unpaid prepetition interest, with respect to the
securities thus voted.

vi.     A single Master Ballot Agent may complete and deliver to the
Voting Agent multiple Master Ballots.  Votes reflected on multiple
Master Ballots shall be counted except to the extent that they are
duplicative of other Master Ballots.  If two or more Master Ballots
are inconsistent, the last properly completed Master Ballot
received prior to the Voting Deadline shall, to the extent of such
inconsistency, supersede any prior received Master Ballot.

vii.    The tabulation of votes by Directly Registered Holders and
Beneficial Owners will be subject to the additional provisions
contained in Exhibit C.

# **EXHIBIT G**

**(Notice of Non-Voting Status)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
NII Holdings, Inc., et al.,[1]                                 :    Case No. 14-12611 (SCC)
                                                               :
                              Debtors.                         :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

## NOTICE OF NON-VOTING STATUS UNDER JOINT PLAN
## OF REORGANIZATION PROPOSED BY DEBTORS AND DEBTORS
## IN POSSESSION AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS


### PLEASE TAKE NOTICE OF THE FOLLOWING:


1.      On September 15, 2014, certain of the Debtors (the "Original Debtors") commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 8, 2014, four of the Original Debtors' affiliates also filed chapter 11 bankruptcy petitions.

2.      On [Date], the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order (I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of Disclosure Statement Notice; (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Reorganization, (IV) Approving Related Notice and Rights Offering Procedures and (V) Scheduling Hearing on Confirmation of Plan of Reorganization (Docket No. [____]) (the "Solicitation Procedures Order").

3.      Among other things, the Solicitation Procedures Order:  (a) approved the Disclosure Statement for Joint Plan of Reorganization Proposed by Debtors and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22, 2014 (Docket

---

[1]     The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA  20190.

No. [_____]) (as the same may be amended or modified, the "Disclosure Statement");
(b) established certain procedures (collectively, the "Solicitation Procedures") for the solicitation
and tabulation of votes to accept or reject the Joint Plan of Reorganization Proposed by Debtors
and Debtors in Possession and Official Committee of Unsecured Creditors, dated December 22,
2014 (Docket No. [_____]) (as the same may be amended or modified, the "Plan"); (c) approved
the contents of the proposed solicitation packages to be distributed to the Debtors' stakeholders
and other parties in interest who are entitled to vote in connection with the solicitation of votes
on the Plan (collectively, the "Solicitation Packages"); and (d) scheduled a hearing on
confirmation of the Plan (the "Confirmation Hearing") and approved certain related notice
procedures.

4.      Pursuant to Rule 3017(d) of the Federal Rules of Bankruptcy Procedure
(collectively, the "Bankruptcy Rules") and/or the Solicitation Procedures Order, the Plan
Proponents:  (a) are required to provide Solicitation Packages to all creditors and equity security
holders entitled to vote on the Plan; and (b) are not required to provide Solicitation Packages to
holders of claims or interests in classes under the Plan that are conclusively presumed to either
accept or reject the Plan (collectively, the "Non-Voting Classes").

5.      **UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST
THE DEBTORS IN CLASSES 1A – 1E, 2A – 2E, 9A – 9E, 10A – 10E, 11A – 11E, 12A
AND 13B – 13E, IS/ARE  NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE
PLAN.**  Accordingly, pursuant to the Solicitation Procedures approved at paragraph **[__]** of the
Solicitation Procedures Order, you are receiving this Notice in lieu of a Solicitation Package
containing, among other things, copies of the Disclosure Statement and the Plan.  Should you
wish to obtain a copy of either the Disclosure Statement or the Plan, copies of either document
(including any exhibits thereto) are available at no charge via the internet at
cases.primeclerk.com/nii.  Copies of either the Disclosure Statement or the Plan (excluding any
publicly-filed exhibits thereto) are also available upon a written request made to the NII Ballot
Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, NY 10022.

6.      If you wish to challenge the Plan Proponents' classification of your Claim,
you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure
(a "Rule 3018 Motion"), for an order temporarily allowing your Claim in a different
classification or amount for purposes of voting to accept or reject the Plan and serve such motion
on the Plan Proponents so that it is received by the later of (a) March 4, 2015 or (b) ten days after
the date of service of a notice of an objection, if any, to your Claim or Interest.  In accordance
with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018 Motion, such creditor's Ballot
will not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes,
after notice and a hearing prior to March 11, 2015 (i.e., the last date fixed for creditors to vote to
accept or reject the Plan).  Rule 3018 Motions that are not timely filed and served in the manner
as set forth above will not be considered.

7.      The Confirmation Hearing will be held before the Honorable Shelley C.
Chapman, United States Bankruptcy Judge, in Room 623 of the Bankruptcy Court, Alexander
Hamilton Custom House, One Bowling Green, New York, New York 10004 **on March 25,
2015, at 10:00 a.m., Eastern time**.  The Confirmation Hearing may be continued from time to

time without further notice other than the announcement of the adjourned date at the Confirmation Hearing or any continued hearing.

8.      Objections, if any, to the confirmation of the Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Bankruptcy Court at the address set forth in the preceding paragraph and served on the following parties **so that they are received no later than 4:00 p.m., Eastern time, on March 25, 2015**:

(i)      the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn:  General Counsel);

(ii)     counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn:  David G. Heiman and Carl E. Black, Esq.);

(iii)    the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Susan D. Golden, Esq. and Brian Masumoto, Esq.);

(iv)     counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

(v)      counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

(vi)     counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

(vii)    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

(viii)   Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

(ix)     Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of entities managed by Capital Research and Management Company;

(x)     counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel
        LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn:
        Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

(xi)    the SEC; and

(xii)   all other parties in interest that have filed requests for notice pursuant to
        Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

Dated:  **[Date]**, 2014

**[BY ORDER OF THE COURT]**

  /s/                                          /s/
Scott J. Greenberg                     Kenneth H. Eckstein
Lisa Laukitis                          Adam C. Rogoff
JONES DAY                              Stephen D. Zide
222 East 41st Street                   KRAMER LEVIN NAFTALIS & FRANKEL
New York, New York  10017              LLP
Telephone:  (212) 326-3939             1177 Avenue of the Americas
Facsimile:  (212) 755-7306             New York, New York 10036
                                       Telephone: (212) 715-9100
                                       Facsimile: (212) 715-8100
 - and -

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)    ATTORNEYS FOR THE OFFICIAL
JONES DAY                                  COMMITTEE OF UNSECURED
North Point                                CREDITORS
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**<u>EXHIBIT H</u>**

**<u>(Rights Offering Procedures)</u>**

NYI-4597257v20

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                       :
In re:                            :   Chapter 11
                                         :
NII Holdings, Inc., et al.,[1]       :   Case No. 14-12611 (SCC)
                                       :   (Jointly Administered)
                    Debtors.        :
                                         :
-------------------------------------------------------------x

### RIGHTS OFFERING PROCEDURES

On September 15, 2014 and October 8, 2014, NII Holdings, Inc., NII Capital Corp. ("Capco"), NII Funding Corp., NII Aviation, Inc., Nextel International (Services), Ltd., NII Global Holdings, Inc., NII International Holdings S.à r.l., NII International Services S.à r.l., NII International Telecom S.C.A. ("Luxco"), NII Mercosur, LLC, McCaw International (Brazil), LLC, Airfone Holdings, LLC, and Nextel International (Uruguay), LLC (collectively, the "Company" or the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in cases (including any subsequent cases of affiliated debtors that are commenced from time to time, collectively, the "Bankruptcy Cases") before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which Bankruptcy Cases have been consolidated by order of the Bankruptcy Court for procedural purposes only and are being jointly administered under case number 14-12611 (SCC).

The Official Committee of Unsecured Creditors of the Debtors (the "Committee" and, together with the Debtors, the "Plan Proponents") and (i) entities managed by Aurelius Capital Management, LP (collectively "Aurelius"), (ii) entities managed by Capital Research and Management Company (collectively, "Capital Group" and, together with Aurelius, the "Consenting Noteholders"), and (iii) American Tower Corporation, American Tower do Brasil - Cessao de Infraestruturas Ltda. and MATC Digital S. de R.L. de C.V. (together with the Consenting Noteholders, the "Consenting Parties") have engaged in arm's length, good-faith discussions regarding the reorganization of the Company (collectively, the "Restructuring") pursuant to a chapter

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 800, Reston, VA 20190.

11 plan of reorganization (the "Plan") proposed by the Plan Proponents in the Bankruptcy Cases, which Plan contains the terms and conditions set forth in, and is consistent in all respects with, the Plan Support Agreement, dated November 24, 2014, among the Consenting Parties and the Plan Proponents.

On December [22], 2014, the Plan Proponents filed the Plan and a Disclosure Statement for the Plan (the "Disclosure Statement"). *Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan*.

On [_____], the Bankruptcy Court entered an order (the "Rights Offering Procedures Order") approving, among other things, these procedures (these "Rights Offering Procedures") for the conduct of, and participation in, a rights offering contemplated by, and to be implemented by the Debtors pursuant to, the Plan (such rights, the "Subscription Rights" and such offering, the "Rights Offering").

The Debtors and the Backstop Parties (as defined below) have entered into a backstop commitment agreement (the "Backstop Commitment Agreement"), dated as of December [23], 2014, pursuant to which the Backstop Parties have severally (but not jointly) agreed, subject to the terms and conditions therein, to purchase any shares of Reorganized NII Common Stock offered in the Rights Offering (the "Rights Offering Shares") that are not properly subscribed for pursuant to these Rights Offering Procedures (other than any Rights Offering Shares of any Backstop Party).

The Debtors have designated Prime Clerk, LLC as the subscription agent for the Rights Offering (the "Subscription Agent"). All questions relating to these Rights Offering Procedures, other documents associated with the Rights Offering or the requirements for participating in the Rights Offering should be directed to the Subscription Agent at:

[_____]

**These Rights Offering Procedures have been approved by the Bankruptcy Court pursuant to the Rights Offering Procedures Order.**

**The Rights Offering, the distribution of each Subscription Right and the issuance of each Rights Offering Share are being conducted under the Plan.**

**None of the Rights Offering Shares have been or will be registered under the Securities Act of 1933, as amended (the "Securities Act"), or any state or local law requiring registration for the offer or sale of a security in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code.**

**The Subscription Rights are not detachable from the corresponding Prepetition Note Claims and are not transferable or assignable except in connection with the transfer or assignment (a "Transfer") of such Prepetition Note Claims. In connection with any Transfer of Prepetition Note Claims in respect of which such**

**Subscription Rights were issued, a Transfer Notice must be delivered to the Subscription Agent or other procedures acceptable to the Debtors and the Subscription Agent must be followed.**

**Following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning the Prepetition Note Claim corresponding to such Subscription Rights until the earlier of (i) the termination of the Rights Offering and (ii) the revocation of exercise of the Subscription Rights to the extent permitted by these Rights Offering Procedures. By its execution of the Rights Exercise Form, the holder of the Subscription Rights will be deemed to have represented and warranted to the Debtors that the holder is the beneficial owner of the Prepetition Note Claims corresponding to the Subscription Rights being exercised and will be the holder of such Prepetition Note Claims as of the Effective Date.**

**The Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.**

1.      **Overview of the Rights Offering**

Subject to the terms and conditions set forth in the Plan, each Eligible Holder (as defined herein) will receive Subscription Rights to subscribe to purchase its Pro Rata Share of the Rights Offering Amount of Reorganized NII Common Stock.

In order to exercise the Subscription Rights, an Eligible Holder must duly complete and timely deliver the enclosed rights exercise form and certification (the "Rights Exercise Form"), along with the applicable Purchase Price, in advance of the Subscription Expiration Deadline in accordance with these Rights Offering Procedures, or, if available, comply with the practices and procedures for exercising the Subscription Rights through the Depository Trust Company ("DTC") by giving appropriate instruction to its broker, commercial bank, trust company or other nominee (each, a "Nominee").

The aggregate Purchase Price for the Rights Offering Shares offered in the Rights Offering (the "Rights Offering Amount") will be $249,999,172.50. A total of 17,315,960 Rights Offering Shares will be offered in the Rights Offering (the "Aggregate Share Amount"), which is equal to the amount obtained by dividing (x) the Rights Offering Amount by (y) the per share price of $14.4375 (the "Per Share Price").

The number of the Rights Offering Shares actually subscribed for and purchased by an Eligible Holder shall be referred to as such Eligible Holder's "Subscribed Shares." The "Purchase Price" to be paid by an Eligible Holder is equal to the product of (x) such Eligible Holder's Subscribed Shares and (y) the Per Share Price.

No Eligible Holder shall be entitled to participate in the Rights Offering unless the Purchase Price for its Subscribed Shares is received by the Subscription Agent in advance of the Subscription Expiration Deadline. No interest is payable on any advanced funding of the Purchase Price. Any Eligible Holder submitting payment via its Nominee must coordinate such payment with its Nominee in sufficient time to allow the Nominee to forward such payment to the Subscription Agent in advance of the Subscription Expiration Deadline.

Each Eligible Holder has the right, but not the obligation, to exercise all or a portion of its Subscription Rights.

SUBJECT TO THE TERMS AND CONDITIONS OF THE RIGHTS EXERCISE FORM, ALL SUBSCRIPTIONS SET FORTH IN THE RIGHTS EXERCISE FORM ARE IRREVOCABLE.

## 1.1    Eligibility

Only Eligible Holders may participate in the Rights Offering.

An "Eligible Holder" means any Holder of a Prepetition Note Claim as of the Rights Offering Record Date.

## 1.2    Pro Rata Share

Each Eligible Holder shall be entitled to subscribe for up to that number of Rights Offering Shares equal to the product (rounded down to the nearest whole share) of: (a) such Eligible Holder's Pro Rata Share and (b) the Aggregate Share Amount.

The "Pro Rata Share" of an Eligible Holder means the quotient of (x) the aggregate principal amount of such Eligible Holder's Prepetition Notes and (y) the aggregate principal amount of all Prepetition Notes.

## 2.    The Backstop Commitment

The Rights Offering will be backstopped by Capital Group and Aurelius (the "Backstop Parties"). Each of the Backstop Parties has, severally and not jointly, agreed pursuant to the Backstop Commitment Agreement to subscribe for, and purchase, all Rights Offering Shares that are not purchased by other Eligible Holders (other than any Rights Offering Shares not purchased by another Backstop Party) pursuant to the Rights Offering (the "Unsubscribed Shares"). In return for this commitment, the Debtors will pay an aggregate fee of 6.0% of the Rights Offering Amount, payable in cash, to the Backstop Parties ratably based on the proportion of the Rights Offering Amount backstopped by each of them.

4

3.      **Subscription Period**

The Rights Offering will commence on the Subscription Commencement Date and will expire on the Subscription Expiration Deadline.

The "Subscription Commencement Date" is [_____].

The "Subscription Expiration Deadline" is the date of the Voting Deadline, as it may be extended by the Bankruptcy Court.

The Plan Proponents may change the Subscription Commencement Date and extend the Subscription Expiration Deadline, from time to time, with the consent of each of the Backstop Parties.  The Debtors shall promptly notify the Eligible Holders in writing of such modification or extension and of the date of the new Subscription Commencement Date or new Subscription Expiration Deadline. Any notice of an extension of the Subscription Expiration Deadline shall be given by press release issued through a United States news service with national coverage (a "Press Release") no later than 9:00 a.m. on the first Business Day following the then current Subscription Expiration Deadline.

4.      **Exercise of Subscription Rights**

Each Eligible Holder may exercise all or any portion of such Eligible Holder's Subscription Rights.  Subject to the terms and conditions of the Rights Exercise Form, the exercise of any Subscription Rights will be irrevocable.  In order to facilitate the exercise of the Subscription Rights, beginning on the Subscription Commencement Date, the Subscription Agent will send a Rights Exercise Form to each Eligible Holder or its Nominee, as applicable, together with appropriate instructions for the proper completion, due execution and timely delivery of the Rights Exercise Form and the payment of the applicable Purchase Price for its Subscribed Shares.

In order to validly exercise its Subscription Rights, each Eligible Holder must:

(a)    (1)     return a duly executed Rights Exercise Form to the Subscription Agent so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration Deadline; and

(2)     at the same time it returns its Rights Exercise Form to the Subscription Agent, but in no event later than the Subscription Expiration Deadline, pay the applicable Purchase Price to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions included in Rights Exercise Form (such amount shall be held in escrow or in a segregated account at DTC and shall not become property of the Debtors' estates until the Effective Date); or

5

(b)    alternatively, exercise such Subscription Rights through the practices and procedures of DTC, if available.  See Section 7 below.

Any Eligible Holder exercising Subscription Rights and/or submitting payment via its Nominee must coordinate such exercise and payment with its Nominee in sufficient time to allow the Nominee to effect such exercise and forward such payment to the Subscription Agent in advance of the Subscription Expiration Deadline.

In the event that funds received by the Subscription Agent in payment for such Eligible Holder's Subscribed Shares are more or less than the applicable Purchase Price, the number of Subscribed Shares deemed to be purchased by the Eligible Holder will be the lesser of (i) the number of Subscribed Shares properly elected to be purchased by such Eligible Holder as set forth in the Rights Exercise Form and (ii) a number determined by dividing the amount of such funds received by the Per Share Price, rounded down to the nearest whole number of shares.

The Subscribed Shares are expected to be delivered to Eligible Holders that have properly exercised their Subscription Rights through, and in accordance with the practices and procedures of, DTC on or as soon as practicable following the Effective Date.  See Section 7 below.

***The method of delivery by an Eligible Holder of its Rights Exercise Form and any other required documents is at such Eligible Holder's option and sole risk, and delivery will be considered made only when such Rights Exercise Form and other documentation are actually received by the Subscription Agent. If delivery is by mail, the use of registered mail with return receipt requested, properly insured, is encouraged and strongly recommended. In all cases, Eligible Holders exercising their Subscription Rights should allow sufficient time to ensure timely delivery prior to the Subscription Expiration Deadline.***

***The risk of non-delivery of any documents sent or payments remitted to the Subscription Agent in connection with the exercise of Subscription Rights lies solely with the exercising Eligible Holders of the Subscription Rights, and none of the Plan Proponents, Consenting Parties, or any of their respective officers, directors, employees, agents or advisors, including the Subscription Agent, assume the risk of such non-delivery under any circumstance whatsoever.***

**4.2    Failure to Exercise Subscription Rights**

**Unexercised Subscription Rights will be cancelled on the Subscription Expiration Deadline.**  An Eligible Holder shall be deemed to have relinquished and waived all rights to participate in the Rights Offering to the extent the Subscription Agent for any reason does not receive from an Eligible Holder or its Nominee, on or before the Subscription Expiration Deadline, (i) a duly completed Rights Exercise Form or equivalent instructions from DTC (if applicable) and (ii) immediately available funds by

wire transfer for the Purchase Price with respect to such Eligible Holder's Subscription Rights.

Any attempt to exercise any Subscription Rights after the Subscription Expiration Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Subscription Expiration Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

## 4.3    Funds

The payments of cash made in accordance with the Rights Offering will be deposited and held by the Subscription Agent in a segregated escrow account or in a segregated account at DTC until administered in connection with the settlement of the Rights Offering on the Effective Date. Neither the Subscription Agent nor DTC may use such funds for any other purpose prior to such Effective Date and may not encumber or permit such funds to be encumbered with any lien or similar encumbrance. Such funds will not be deemed part of the Debtors' estates until the occurrence of the Effective Date.

## 4.4    Deemed Representations and Acknowledgements

Any Person exercising any Subscription Rights is deemed to have represented, acknowledged and agreed that such Person:

(a)    is an Eligible Holder;

(b)    recognizes and understands that the Subscription Rights are not detachable from the corresponding Prepetition Note Claims, and may only be exercised by an Eligible Holder;

(c)    will not accept a distribution of Reorganized NII Common Stock issued upon exercise of Subscription Rights pursuant to the Rights Offering if, at the time of such distribution, it does not own the Prepetition Note Claim corresponding to such Subscription Rights;

(d)    by its acceptance of a distribution of Reorganized NII Common Stock with respect to a Prepetition Note Claim, will be deemed to be the owner of such Prepetition Note Claim and subject to the terms of the Plan with respect to such Prepetition Note Claim;

(e)    agrees that if it Transfers any portion of its Prepetition Note Claim after the Rights Offering Record Date, unless a Transfer Notice is delivered to the Subscription Agent or other procedures acceptable to the Debtors and the Subscription Agent are followed, the Subscription Rights corresponding to such Prepetition Note Claim will be cancelled, and neither such Eligible Holder nor the transferee of such Prepetition Note Claim will receive the Rights Offering Shares otherwise issuable in respect of such Subscription Rights;

7

(f)    agrees that if it purports to Transfer any portion of its Prepetition Note Claim after its exercise of the Subscription Rights corresponding thereto, such Transfer shall be null and void *ab initio*, and the holder shall be liable to the Debtors and the Subscription Agent for any claims, damages or losses incurred by them as a result of such purported Transfer;

(g)    will not accept a distribution of Reorganized NII Common Stock offered on account of any Prepetition Note Claim pursuant to the Rights Offering with a value in excess of the value such Person otherwise receives on account of such Prepetition Note Claim pursuant to the Plan (without giving effect to the distribution of the Subscription Rights); and

(h)    is not an "underwriter," as such term is defined in 11 U.S.C. § 1145(b)(1)(A)-(C).

## 5.    Transfer Restriction; Revocation

### (a)    *Transferability Restrictions prior to Exercise of Subscription Rights*

The Subscription Rights are not detachable from the corresponding Prepetition Note Claims and are not transferable or assignable except in connection with the Transfer of such Prepetition Note Claims. In connection with any Transfer of Prepetition Note Claims in respect of which such Subscription Rights were issued, a Transfer Notice must be delivered to the Subscription Agent or other procedures acceptable to the Debtors and the Subscription Agent must be followed.

A "Transfer Notice" is a notice delivered to the Subscription Agent notifying the Subscription Agent of the Transfer of a Prepetition Note Claim by the holder of the corresponding Subscription Rights through the Subscription Expiration Deadline, which indicates the name of the transferor, the name of the transferee, the type of Prepetition Note Claim being transferred and the principal amount of the Prepetition Notes underlying such Prepetition Note Claims.

### (b)    *Prohibition on Transfer following Exercise of Subscription Rights*

Following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning the Prepetition Note Claims corresponding to such Subscription Rights until the earlier of (i) the termination of the Rights Offering and (ii) the revocation of exercise of the Subscription Rights to the extent permitted by these Rights Offering Procedures. By its execution of the Rights Exercise Form, the holder of the Subscription Rights will be deemed to have represented and warranted to the Debtors that the holder is the beneficial owner of the Prepetition Note Claims corresponding to the Subscription Rights being exercised and will be the holder of such Prepetition Note Claims as of the Effective Date.

If and to the extent that a holder of any Subscription Rights purports to Transfer a corresponding Prepetition Note Claim in violation of these provisions, such Transfer shall be null and void *ab initio*, and the holder shall be liable to the Debtors and the Subscription Agent for any claims, damages or losses incurred by them as a result of such purported Transfer.

(c)    Revocation

Once an Eligible Holder has properly exercised its Subscription Rights, such exercise will not be permitted to be revoked until the date that is 150 days following the Subscription Expiration Deadline, if the Effective Date has not occurred on or before such date. Thereafter an Eligible Holder shall be permitted to revoke such exercise so long as the Effective Date has not occurred. An Eligible Holder electing to revoke the exercise of its Subscription Rights must deliver written notice to the Subscription Agent (i) stating that the Eligible Holder revokes its Subscription Rights, (ii) stating the type and number of Subscription Rights being revoked, and (iii) certifying that the Subscription Rights being revoked are the only Subscription Rights exercised by such Eligible Holder (the "<u>Revocation Notice</u>"). Upon receipt of a properly completed and timely returned Revocation Notice by an Eligible Holder, the Subscription Agent will use its reasonable efforts to return as promptly as practicable the payment for the Purchase Price, if any, paid by such Eligible Holder, without interest.

**6.    Return of Payment**

Any excess Purchase Price actually paid by any Eligible Holder over the amount duly payable by such Eligible Holder to purchase its Subscribed Shares shall be refunded to such Eligible Holder, without interest, as soon as reasonably practicable after refund amounts are determined by the Subscription Agent.

If the Rights Offering is not consummated, any cash paid to the Subscription Agent will be returned, without interest, to the applicable Eligible Holder as soon as reasonably practicable.

**7.    Exercises by Eligible Holders Holding Prepetition Notes in "Street Name"; Settlement of the Rights Offering and Distribution of the Subscribed Shares**

The Prepetition Notes are held in book-entry form through the facilities of DTC. If the practices and procedures of DTC are available for these purposes, the Plan Proponents intend that the Rights Offering will be conducted through DTC, and the Rights Offering Procedures will be modified as necessary to comply with such practices and procedures. In that case, in order to participate in the Rights Offering, Eligible Holders will be required to instruct their Nominees to exercise the Subscription Rights on their behalf, and will be required to remit payment of the Purchase Price through DTC, before the Subscription Expiration Deadline. Exercise of Subscription Rights in accordance with the practices and procedures of DTC will constitute execution and delivery of a Rights Exercise Form. In all other respects, the Rights Offering Procedures will be the same.

The Debtors intend that the Subscribed Shares will be issued in book-entry form and that DTC, or its nominee, will be the holder of record of such Subscribed Shares. The ownership interest of each holder of such Subscribed Shares, and transfers of ownership interests therein, will be recorded on the records of the direct and indirect participants in DTC. Eligible Holders who exercise the Subscription Rights may be required to furnish the Debtors or their agents information regarding their Nominee in order that the Subscribed Shares for which they have subscribed can be properly credited to their securities account. To the extent required, the Debtors intend to solicit such information on a timely basis, so that the Subscribed Shares may be delivered to the Eligible Holders exercising their Subscription Rights on or as promptly as practicable after the Effective Date.

## 8.    Fractional Subscribed Shares

No fractional shares will be issued in the Rights Offering. All share allocations (including each Eligible Holder's Subscribed Shares) will be calculated and rounded down to the nearest whole share.

## 9.    Validity of Exercise of Subscription Rights

All questions concerning the timeliness, viability, form and eligibility of any exercise of the Subscription Rights (including each Eligible Holder's Subscribed Shares) will be determined in good faith by the Plan Proponents and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Plan Proponents may (a) waive any defect or irregularity, or permit a defect or irregularity to be corrected within such time as they may determine in good faith, or (b) reject the purported exercise of any Subscription Rights. The Rights Exercise Form will be deemed not to have been received or accepted until all defects or irregularities have been waived or cured within such time as the Debtors determine in good faith, in consultation with the Backstop Parties and Plan Proponents. The Debtors reserve the right, but are under no obligation, to give notice to any Eligible Holder regarding any defect or irregularity in connection with any purported exercise of the Subscription Rights by such Eligible Holder. In addition, the Debtors may, but are under no obligation to, permit any such defect or irregularity to be cured within such time as they may determine in good faith, in consultation with the Plan Proponents and Backstop Parties, to be appropriate; *provided*, *however*, that none of the Debtors (including any of their respective officers, directors, employees, agents or advisors) or the Subscription Agent shall incur any liability for any failure to give such notification.

Any and all disputes concerning the timeliness, viability, form and eligibility of any exercise of Subscription Rights shall be addressed in good faith by the Plan Proponents. Any determination made by the Plan Proponents with respect to such disputes shall be final and binding.

***Before exercising any Subscription Rights, Eligible Holders should read the Disclosure Statement and the Plan for information relating to the Debtors and risk factors to be considered.***

**10.    Rights Offering Conditioned Upon Plan Confirmation; Reservation of Rights**

All exercises of the Subscription Rights are subject to and conditioned upon the confirmation of the Plan and the occurrence of the Effective Date.

The Plan Proponents reserve the right to modify or adopt additional procedures consistent with the provisions of these Rights Offering Procedures to effectuate the Rights Offering and to issue the Subscribed Shares with the consent of the Requisite Consenting Noteholders; *provided*, *however*, that the Plan Proponents shall provide prompt written notice to the Eligible Holders of any material modification to these Rights Offering Procedures made after the commencement of the Rights Offering, which notice may be given by Press Release.  In so doing, the Plan Proponents may execute and enter into agreements and take further action that the Plan Proponents determine in good faith are necessary and appropriate to effect and implement the Rights Offering and the issuance of the Subscribed Shares.  Nothing in this paragraph shall be construed so as to permit the Plan Proponents to modify the terms of the Rights Exercise Form without the consent of the Eligible Holder party thereto.

**11.    Miscellaneous**

*(a)    Eligible Holder Release*

Upon the Effective Date of the Plan, each Eligible Holder that elects to exercise Subscription Rights shall be deemed, by virtue of such election to have waived and released to the fullest extent permitted under applicable law, all rights, claims or causes of action against the Plan Proponents, the Reorganized Debtors, the Consenting Parties, and each of their respective affiliates, officers, directors, counsel and advisors, arising out of or related to the Rights Offering and the receipt, delivery, disbursements, calculations, transmission, or segregation of cash, Subscription Rights and Rights Offering Shares, except to the extent such rights, claims or causes of action arise from any act of gross negligence or willful or intentional misconduct or fraud.

*(b)    Exemption From Securities Act Registration; Absence of Listing*

The Subscription Rights are being distributed by the Debtors, and the Subscribed Shares will be issued by Reorganized NII, without registration under the Securities Act or any state securities laws, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code.  ***Please refer to Section XIII, "Applicability of Certain Federal and State Securities Laws," of the Disclosure Statement for a more detailed discussion regarding the applicability of federal and state securities laws to the Rights Offering and the issuance of Rights Offering Shares.***

*(c)    Inquiries and Transmittal of Documents; Subscription Agent*

The Rights Offering Instructions included with the Rights Exercise Form should be carefully read and strictly followed.

11

Questions relating to the Rights Offering should be directed to the Subscription Agent at:

[_____]

All documents relating to the Rights Offering are available from the Subscription Agent as set forth herein.

---

**Before electing to participate in the Rights Offering, all Eligible Holders should review the Disclosure Statement (including the risk factors described in the section entitled "Plan-Related Risk Factors" and the section entitled "Subsequent Transfers") and the Plan in addition to these Rights Offering Procedures and the instructions contained in the Rights Exercise Form.**

**Eligible Holders may wish to seek legal advice concerning the Rights Offering.**

---

**These Rights Offering Procedures and the accompanying Rights Exercise Form should be read carefully and the instructions therein must be strictly followed.  The risk of non-delivery of any documents sent or payments remitted to the Subscription Agent and any Nominee in connection with the exercise of the Subscription Rights lies solely with Eligible Holders, and shall not fall on the Plan Proponents or any of their respective officers, directors, employees, agents or advisors, including the Subscription Agent, under any circumstance whatsoever.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
NII Holdings, Inc., <u>et al.</u>,[1]               :    Case No. 14-12611 (SCC)
                                                    :    (Jointly Administered)
                            Debtors.                :
                                                    :
----------------------------------------------------------------x

## RIGHTS OFFERING INSTRUCTIONS

To Holders of Prepetition Note Claims:

On September 15, 2014 and October 8, 2014, NII Holdings, Inc., NII Capital Corp. ("<u>Capco</u>"), NII Funding Corp., NII Aviation, Inc., Nextel International (Services), Ltd., NII Global Holdings, Inc., NII International Holdings S.à r.l., NII International Services S.à r.l., NII International Telecom S.C.A. ("<u>Luxco</u>"), NII Mercosur, LLC, McCaw International (Brazil), LLC, Airfone Holdings, LLC, and Nextel International (Uruguay), LLC (collectively, the "<u>Company</u>" or the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in cases (including any subsequent cases of affiliated debtors that are commenced from time to time, collectively, the "<u>Bankruptcy Cases</u>") before the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), which Bankruptcy Cases have been consolidated by order of the Bankruptcy Court for procedural purposes only and are being jointly administered under case number 14-12611 (SCC).

The Official Committee of Unsecured Creditors of the Debtors (the "<u>Committee</u>" and, together with the Debtors, the "<u>Plan Proponents</u>") and (i) entities managed by Aurelius Capital Management, LP (collectively "<u>Aurelius</u>"), (ii) entities managed by Capital Research and Management Company (collectively, "<u>Capital Group</u>" and, together with Aurelius, the "<u>Consenting Noteholders</u>"), and (iii) American Tower Corporation, American Tower do Brasil - Cessao de Infraestruturas Ltda. and MATC Digital S. de R.L. de C.V. (together with the Consenting Noteholders, the "<u>Consenting</u>

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA  20190.

Parties") have engaged in arm's length, good-faith discussions regarding the reorganization of the Company (collectively, the "Restructuring") pursuant to a chapter 11 plan of reorganization (the "Plan") proposed by the Debtors in the Bankruptcy Cases, which Plan contains the terms and conditions set forth in, and is consistent in all respects with, the Plan Support Agreement, dated November 24, 2014, among the Consenting Parties and the Plan Proponents.  Capitalized terms used but not otherwise defined herein shall  have the meanings ascribed to such terms in the Plan and the Rights Offering Procedures.

The Plan provides for a rights offering (the "Rights Offering") to acquire shares of Reorganized NII Common Stock, which is being conduct pursuant to procedures (the "Rights Offering Procedures") approved by the Bankruptcy Court. Pursuant to the Plan and Rights Offering described therein, each holder of Prepetition Note Claims  (each, an "Eligible Holder") as of [_____], 2015 (the "Rights Offering Record Date") is receiving their Pro Rata share of Subscription Rights to acquire shares of Reorganized NII Common Stock at a price per share equal to $14.4375 (the "Purchase Price") on terms and subject to the conditions set forth in the Rights Offering Procedures. For a complete description of the Rights Offering see the accompanying Rights Offering Procedures.

Except as indicated below with respect to the exercise of Subscription Rights through the practices and procedures of the Depository Trust Company ("DTC"), in order to elect to participate in the Rights Offering, you must complete and return the attached Rights Exercise Form and Certification (the "Rights Exercise Form") to Prime Clerk, LLC as the subscription agent for the Rights Offering (the "Subscription Agent"), by [_____], 2015 (the "Subscription Expiration Deadline").  Please utilize the attached Rights Exercise Form to execute your election.

**TO ELECT TO PARTICIPATE IN THE RIGHTS OFFERING YOU MUST FOLLOW THE INSTRUCTIONS BELOW:**

The payments made by you in the form of a wire transfer of immediately available U.S. dollars to the Subscription Agent in connection with your exercise of Subscription Rights will be held and maintained by the Subscription Agent. The Subscription Agent will not use such funds for any other purpose prior to the Effective Date and shall not encumber or permit such funds to be encumbered with any lien or similar encumbrance. Interest will not be paid on any such funds.

A Rights Exercise Form shall be deemed not to have been received or accepted until all defects and irregularities have been waived or cured within such time as the Debtors determine in good faith, in consultation with the Backstop Parties and Plan Proponents. The Debtors reserve the right, but are under no obligation, to give notice to any Eligible Holder regarding any defect or irregularity in connection with any purported exercise of Subscription Rights by such Eligible Holder. The Debtors may, but are under no obligation to, permit any such defect or irregularity in any Rights Exercise Form to be cured within such time as they determine in good faith, in consultation with the Backstop Parties and Plan Proponents, to be appropriate; *provided*, *however*, that none of the

2

Debtors (including any of their respective officers, directors, employees, agents or advisors) nor the Subscription Agent shall incur any liability for any failure to give such notification.

**The Subscription Agent must receive your Rights Exercise Form together with your payment for the Purchase Price by the Subscription Expiration Deadline.** If your Rights Exercise Form together with your payment for the Purchase Price is not received by the Subscription Expiration Deadline, the exercise shall be void and your Subscription Rights will be forfeited and cancelled.

The Prepetition Notes are held in book-entry form through the facilities of DTC.  If the practices and procedures of DTC are available for these purposes, the Plan Proponents intend that the Rights Offering will be conducted through DTC, and the Rights Offering Procedures will be modified as necessary to comply with such practices and procedures. In that case, in order to participate in the Rights Offering, Eligible Holders will be required to instruct their Nominees to exercise the Subscription Rights on their behalf, and will be required to remit payment of the Purchase Price through DTC, before the Subscription Expiration Deadline.  Exercise of Subscription Rights in accordance with the practices and procedures of DTC will constitute execution and delivery of a Rights Exercise Form.  In all other respects, the Rights Offering Procedures will be the same.

## INSTRUCTIONS FOR COMPLETING THE RIGHTS EXERCISE FORM

To purchase Rights Offering Shares pursuant to the Rights Offering:

1.  **Complete** Item 1 by filling in the principal amount of Prepetition Notes you hold in the blank space provided.

2.  **Complete** the calculation in Item 2a.

3.  **Complete** Item 2b indicating the number of Rights Offering Shares that you wish to purchase based on the principal amount of your Prepetition Notes.

4.  **Complete** Item 3b providing wire instructions for the return or refund of any of the Purchase Price to which you may be entitled.

5.  **Complete** Item 5 providing the securities account information for the delivery of the Reorganized NII Common Stock that you are entitled to receive pursuant to the Rights Offering or otherwise under the Plan.

6.  **Sign and Date** the Rights Exercise Form.

7.  **Read and Complete** a certification on Form W-9 (a copy of which is included with the Rights Exercise Form and is also available at http://www.irs.gov/) or, in the case of a non-U.S. person, an appropriate Form W-8 regarding your tax status.

8.  **Return the Rights Exercise Form** either (i) in the pre-addressed envelope, (ii) if by overnight courier or hand delivery to: [_____], or (iii) if by first class mail, to: [_____] on or before the Subscription Expiration Deadline.

9.  **Deliver the Purchase Price** indicated in Item 2b to the Subscription Agent so that it is received and processed on or before the Subscription Expiration Deadline. The wire instruction must include the Eligible Holder's name and the last four digits of the Eligible Holder's Tax Identification Number to permit the Subscription Agent to reconcile the Rights Exercise Form with the wire. Payment must be made to the Subscription Agent by wire transfer as follows:

    Wire Delivery Instructions from the Eligible Holder to the Subscription Agent:

    Account Name: [_____]
    [_____]
    Account No.: [_____]
    ABA/Routing No.: [_____]
    Bank Name: [_____]
    Bank Address: [_____]
    Ref: [_____]

10. **Have your broker include a medallion signature guarantee.**

        **Questions**. Questions relating to the Rights Offering Procedures, the proper completion of the Rights Exercise Form or any of the requirements for exercising the Subscription Rights or otherwise participating in the Rights Offering should be directed to the Subscription Agent. Call toll-free [_____] or e-mail to [_____].

***The Disclosure Statement sets forth important information that should be carefully read and considered by each Eligible Holder prior to making a decision to participate in the Rights Offering, including the sections entitled "Plan-Related Risk Factors" and "Valuation and Financial Projections" contained therein. A copy of the Disclosure Statement has been distributed to each holder and is also available at <u>cases.primeclerk.com/nii</u>.***

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re:                              :   Chapter 11
                                    :
NII Holdings, Inc., et al.,¹        :   Case No. 14-12611 (SCC)
                                    :   (Jointly Administered)
                 Debtors.           :
                                    :
-------------------------------------------------------------x
```

## RIGHTS EXERCISE FORM AND CERTIFICATION

<div style="border:1px solid">

SUBSCRIPTION EXPIRATION DEADLINE
FOR THE EXERCISE OF
SUBSCRIPTION RIGHTS IS 5:00 P.M. (NEW YORK CITY TIME) ON
[_____], 2015, SUBJECT TO EXTENSION

</div>

<div style="border:1px solid">

**Please consult the Rights Offering Procedures for additional
information with respect to this Rights Exercise Form. Capitalized
terms used but not otherwise defined herein shall have the meaning ascribed
to such terms in the Plan and the Rights Offering Procedures.**

</div>

**Item 1. Principal Amount of Prepetition Notes.**  The holder of the Prepetition Notes
identified below (the "Eligible Holder") beneficially owns Prepetition Notes in the
following principal amount:

$_____
(In the space provided above, please indicate
the principal amount of Prepetition Notes
held by the Eligible Holder)

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective
U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel
International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII
Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A.
(7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081);
Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw
International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The location of the Debtors'
corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800,
Reston, VA  20190.

**Item 2. Subscription Rights.** Pursuant to the Plan and the accompanying Rights Offering Procedures, the Eligible Holder is entitled to participate in the Rights Offering by purchasing, on a Pro Rata basis, its allocated Rights Offering Shares at the Purchase Price. To subscribe, review and complete Items 2a and 2b below.

**2a    Calculation of the Maximum Number of Rights Offering Shares.** The maximum number of Rights Offering Shares based on the principal amount of Prepetition Notes for which the Eligible Holder indicated in Item 1 above may subscribe is calculated as follows:

$_____ X    [_____]    =    _____

(Insert Principal Amount of Prepetition Notes from Item 1 above)                (Compute maximum number of Rights Offering Shares, rounded down to the nearest whole number, with respect to the Prepetition Notes)

**2b    Purchase Price.** By filling in the following blanks, the Eligible Holder is electing to purchase the number of Rights Offering Shares specified below (specify a number of Rights Offering Shares not greater than the maximum number of Rights Offering Shares for Prepetition Notes in Item 2a above), on the terms of and subject to the conditions set forth in the Rights Offering Procedures.

_____ X    $14.4375    =    $_____

(Indicate number of Rights Offering Shares the Eligible Holder elects to purchase with respect to its Prepetition Notes. The number cannot be greater than the maximum number of Rights Offering Shares set forth in Item 2a.)                (Compute Purchase Price)

**Item 3. Wire Instructions.**

**3a    Wire Delivery Instructions for Purchase Price.** Deliver the Purchase Price, indicated in Item 2b, to the Subscription Agent so that it is received and processed on or before the Subscription Expiration Deadline. The wire instruction must include the Eligible Holder's name and the last four digits of the Eligible Holder's Tax Identification Number to permit the Subscription Agent to reconcile this Rights Exercise Form with the wire. Payment must be made by wire transfer as follows:

Account Name: [_____]
[_____]
Account No.: [_____]
ABA/Routing No.: [_____]
Bank Name: [_____]
Bank Address: [_____]
Ref: [_____]

**3b**    **Wire Delivery Instructions for Refunds**. Any refund or return of the Purchase Price to which the Eligible Holder is entitled should be made by wire transfer as follows:

Account Name: [_____]
[_____]
Account No.: [_____]
ABA/Routing No.: [_____]
Bank Name: [_____]
Bank Address: [_____]
Ref: [_____]

**Item 4. Certifications.**  I certify that: (i) I am an authorized signatory of the Eligible Holder indicated below and that such Eligible Holder holds the principal amount of Prepetition Notes listed under Item 1 above; (ii) I have, and such Eligible Holder has, received a copy of the Plan and the Disclosure Statement and (iii) I understand, and such Eligible Holder understands, that the exercise of Subscription Rights is subject to all the terms and conditions set forth in the Disclosure Statement, Plan and Rights Offering Procedures.

**Item 5. Account Information for Delivery of Shares of Reorganized NII Common Stock.** Please provide the following information with respect to the securities account with your broker, dealer, commercial bank, trust company or other securities nominee (each, a "Nominee") into which the shares of Reorganized NII Common Stock that you are entitled to receive pursuant to the Rights Offering are to be delivered. This securities account information will be used for delivery of all shares of Reorganized NII Common Stock to which the Eligible Holder is entitled under the Plan.

Name of Nominee:
Address:
Telephone Number:
Contact:
Fax Number:
Email Address:
Account Name:
Account Number:
DTC Participant Number of the Nominee:

3

## SIGNATURE

By its execution of this Rights Exercise Form, the Eligible Holder affirms the representations, acknowledgments and agreements contained in Section 4.4 of the Rights Offering Procedures, and understands that Reorganized NII will be relying thereon in issuing the Rights Offering Shares to the Eligible Holder without registration under applicable securities laws pursuant to the exception provided under Section 1145 of the Bankruptcy Code.

Date: _____, 20[___]

Name of Eligible Participant: _____
(Print or Type)

Federal Tax I.D. No.: _____
(Optional)

Signature: _____
Name of Person Signing: _____
Title: _____
Street Address: _____
City, State, Zip Code: _____
Telephone Number: _____
Fax: _____
E-Mail: _____

**Your broker or other nominee must provide a medallion signature guarantee and the following information in order for your Rights Exercise Form to be accepted.**

For Use by Nominee Only

Nominee Name: _____

Date: _____

Nominee's DTC Participant Number: _____

Contact Person at Nominee: _____

Contact Telephone Number: _____

Contact E-mail Address: _____

Account Number for the Eligible Holder Submitting this Rights Exercise Form:
_____

Principal Amount of Prepetition Notes (bearing CUSIP Number _____) held in the account number of the Eligible Holder: _____

Medallion Guarantee:

Date:

PLEASE RETURN THIS RIGHTS EXERCISE FORM, ALONG WITH A
COMPLETED FORM W-9 OR W-8 AS APPROPRIATE TO, AND WIRE THE
PURCHASE PRICE TO ACCOUNT OF, THE SUBSCRIPTION AGENT SO THAT IT
MAY  BE PROCESSED AND RECEIVED BY THE SUBSCRIPTION AGENT BY
THE SUBSCRIPTION EXPIRATION DEADLINE:

If by hand delivery or overnight courier:

[_____]

If by first class mail:

[_____]

[_____] (Toll Free)
[_____]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
NII Holdings, Inc., et al.,[1]                      :    Case No. 14-12611 (SCC)
                                                    :    (Jointly Administered)
                        Debtors.                    :
                                                    :
--------------------------------------------------------------x

## TRANSFER OF SUBSCRIPTION RIGHTS

To Holders of Prepetition Note Claims:

       On December [22], 2014, NII Holdings, Inc., NII Capital Corp. ("Capco"), NII Funding Corp., NII Aviation, Inc., Nextel International (Services), Ltd., NII Global Holdings, Inc., NII International Holdings S.à r.l., NII International Services S.à r.l., NII International Telecom S.C.A. ("Luxco") NII Mercosur, LLC, McCaw International (Brazil), LLC, Airfone Holdings, LLC, and Nextel International (Uruguay), LLC (collectively, the "Company" or the "Debtors"), filed the Joint Plan of Reorganization Proposed by Debtors an Debtors in Possession and Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") and the Debtors' accompanying disclosure statement pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Pursuant to the Plan and the Rights Offering described therein, each holder of Prepetition Note Claims (an "Eligible Holder") as of [_____], 2015 (the "Rights Offering Record Date"), is receiving Subscription Rights to acquire shares of Reorganized NII Common Stock, on a Pro Rata basis, as set forth in the Rights Offering Procedures filed with the Plan. For a complete description of the Rights Offering see the Rights Offering Procedures provided to you. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or the Rights Offering Procedures, as applicable.

       As described in the Rights Offering Procedures provided to you, an Eligible Holder's Subscription Rights shall not be detachable from the corresponding

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International (Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 800, Reston, VA 20190.

Prepetition Note Claims and shall not be transferable or assignable except in connection with the transfer or assignment of such Prepetition Note Claims.  Transferees will have no Subscription Rights with respect to Prepetition Note Claims transferred to it unless such transferee is an Eligible Holder and such transfer and all preceding transfers, if any, beginning with the transfer by the Eligible Holder holding such Prepetition Note Claims as of the Rights Offering Record Date, is evidenced by Transfer Notices delivered to Prime Clerk, LLC as the subscription agent for the Rights Offering (the "Subscription Agent").

The Prepetition Notes are held in book-entry form in accordance with the practices and procedures of DTC. To the extent that the Rights Offering with respect to the Subscription Rights is conducted through DTC, the Debtors intend to utilize the practices and procedures of DTC to assure that the Subscription Rights are only transferred or assigned in connection with the transfer by an Eligible Holder of the corresponding Prepetition Note Claims, in lieu of requiring holders of Prepetition Note Claims to complete this Transfer Notice.

In order to validly transfer the Subscription Rights with the corresponding Prepetition Note Claims, an Eligible Holder must complete and return the attached Transfer Notice to the Subscription Agent at the address, facsimile number or email address below. Upon receipt of the Transfer Notice, the Subscription Agent will send the transferee at the address, facsimile number or email address indicated on such Transfer Notice, the applicable Subscription Form and any other required documents, which the transferee must complete and return to the Subscription Agent by the Subscription Expiration Deadline set forth in the Rights Offering Procedures in order for the transferee to elect to participate in the Rights Offering. **The transfer form must be medallion guaranteed by both the transferor's broker AND transferee's broker as of a date certain.**

**Following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning the Prepetition Note Claim corresponding to such Subscription Rights until the earlier of (i) the Effective Date, (ii) the termination of the Rights Offering and (iii) the revocation of exercise of the Subscription Rights to the extent permitted by the Rights Offering Procedures.**

[NII CONTACT INFORMATION]

**TRANSFER NOTICE**

If by hand delivery or overnight courier:

[_____]

If by first class mail:

[_____]

      Please take notice that, pursuant to Section 5 of the Rights Offering Procedures (the "Rights Offering Procedures") filed with the Plan of Reorganization filed pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") of NII Holdings, Inc., NII Capital Corp. ("Capco"), NII Funding Corp., NII Aviation, Inc., Nextel International (Services), Ltd., NII Global Holdings, Inc., NII International Holdings S.à r.l., NII International Services S.à r.l., NII International Telecom S.C.A. ("Luxco"), NII Mercosur, LLC, McCaw International (Brazil), LLC, Airfone Holdings, LLC, and Nextel International (Uruguay), LLC (collectively, the "Company" or the "Debtors"), the undersigned holder of Prepetition Note Claims as defined in the Plan; such holder, a "Eligible Holder" (the "Transferor"), has agreed to transfer to the transferee named below (the "Transferee"), its Subscription Rights to purchase shares of Reorganized NII Common Stock, which are attached to the Transferor's Prepetition Note Claims identified herein and that the Transferor has agreed to transfer to the Transferee. The Transferor acknowledges that the Subscription Rights are not detachable from the corresponding Prepetition Note Claims and are not transferable or assignable except in connection with the transfer or assignment of such Prepetition Note Claims. The Transferor hereby provides notice that the Transferor has transferred to the Transferee the amount of Prepetition Note Claims indicated below and accordingly has agreed to transfer the Subscription Rights associated with such claims. Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Plan.

| Transferor | Transferee |
|---|---|
| Name: | Name: |
| Federal Tax I.D. No.: | Federal Tax I.D. No.: |
| Street Address | Street Address |
| City, State, Zip Code: | City, State, Zip Code: |
| Telephone Number: | Telephone Number: |
| Contact: | Contact: |
| Fax Number: | Fax Number: |
| E-Mail Address: | E-Mail Address: |

**Principal Amount** of Prepetition Note Claims transferred to the Transferee:
$_____

Was the Transferor the beneficial holder of the transferred Prepetition Note Claims on
[_____], 2015, the Rights Offering Record Date: ☐ Yes ☐ No

If "Yes", indicate the principal amount of Prepetition Notes beneficially owned by the
Transferor as of such date: $_____

If "No", please attach all Transfer Notice(s) necessary to permit the Subscription Agent
to track the transfer of the Prepetition Note Claims back to the holder of the Prepetition
Note Claims as of the Rights Offering Record Date.

**Transferors must provide a copy of this Transfer Notice and all prior Transfer
Notices that they have received, if any, to their Transferee.**

The undersigned certifies that: (i) I am an authorized signatory of the Transferor, (ii) the
Transferee is an Accredited Investor and (iii) I understand that the transfer of
Subscription Rights is subject to the conditions listed above and all the terms and
conditions set forth in the Disclosure Statement, the Plan and the Rights Offering
Procedures.

Date: _____         Name of Transferor: _____

                            By: _____
                                Name:
                                Title:

**Your broker or other nominee must provide a medallion signature guarantee in order for your Transfer Notice to be accepted.**

<div style="border:1px solid black;">

For Use by Nominee Only

Nominee Name:_____

Date:_____

Nominee's DTC Participant Number:_____

Contact Person at Nominee:_____

Contact Telephone Number:_____

Contact E-mail Address:_____

Medallion Guarantee:




Date:

</div>

## EXHIBIT I

### (Proposed Order Granting Motion)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
NII Holdings, Inc., et al.,[1]                                 :    Case No. 14-12611 (SCC)
                                                               :
                        Debtors.                               :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

<div align="center">

**ORDER (I) APPROVING DISCLOSURE STATEMENT,**
**(II) APPROVING THE FORM AND MANNER OF SERVICE OF**
**DISCLOSURE STATEMENT NOTICE, (III) ESTABLISHING**
**PROCEDURES FOR SOLICITATION AND TABULATION OF**
**VOTES TO ACCEPT OR REJECT PLAN OF REORGANIZATION,**
**(IV) APPROVING RELATED NOTICE AND RIGHTS**
**OFFERING PROCEDURES AND (V) SCHEDULING**
**HEARING ON CONFIRMATION OF PLAN OF REORGANIZATION**

</div>

This matter coming before the Court on the Motion for Entry of an Order

(I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of

Disclosure Statement Notice; (III) Establishing Procedures for Solicitation and Tabulation of

Votes to Accept or Reject Plan of Reorganization, (IV) Approving Related Notice and Rights

Offering Procedures and (V) Scheduling Hearing on Confirmation of Plan of Reorganization

(the "Motion"), filed by the above-captioned debtors and debtors in possession (collectively,

---

[1]    The Debtors are comprised of the following thirteen entities (the last four digits of their respective U.S.
taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International
(Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII
Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l.
(N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); Nextel International
(Uruguay), LLC (5939); McCaw International (Brazil), LLC (1850); and NII Mercosur, LLC (4079).  The
location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street,
Suite 800, Reston, VA  20190.

the "Debtors");[2] the Court having reviewed the Motion and having heard the statements of

counsel regarding the relief requested in the Motion at a hearing before the Court (the

"Hearing"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein;

IT IS HEREBY FOUND AND CONCLUDED, as follows:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.

B.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    Notice of the Motion and the Hearing and the relief granted herein was

adequate under the circumstances and in full compliance with the requirements of the

Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

D.    The Disclosure Statement, as filed with the Court on December 22, 2014,

contains adequate information within the meaning of section 1125 of the Bankruptcy Code

E.    The Solicitation Procedures and the Confirmation Procedures provide a

fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code

and the applicable Bankruptcy Rules and Local Bankruptcy Rules, including, without limitation,

Bankruptcy Rules 2002, 3017, 3018 and 3020 and Local Bankruptcy Rules 3017-1, 3018-1, and

3020-1.

---

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the
applicable exhibits to the Motion, or, if not defined therein, the Disclosure Statement and the Plan.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.  Any objections or
responses to the Disclosure Statement or the Motion that have not been withdrawn, waived or
settled prior to the entry of this order are hereby OVERRULED.

2.      The form of the Disclosure Statement Notice and the manner in which it
was served and published is approved in its entirety.

3.      The Disclosure Statement is approved, pursuant to section 1125 of the
Bankruptcy Code; provided that, the Plan Proponents (a) are authorized to make non-material
revisions, updates and corrections to the Disclosure Statement and the Plan and (b) shall file a
copy of the final Disclosure Statement and any amended Plan with the Court.

4.      The Solicitation Procedures (and the form and manner of notice thereof),
including the form of Ballots, the Voting Deadline, the Solicitation Packages, the Record Date of
January 28, 2015 for Plan voting, the Tabulation Rules, the form and manner of service of the
Notice of Non-Voting Status, the Noteholders Solicitation Procedures, Rights Offering
Procedures and the other procedures described in the Motion, are approved.  The Plan
Proponents are authorized to make non-substantive modifications to the Solicitation Procedures.
The requirements of Local Bankruptcy Rule 3018-1(b) are waived to the extent they are
inconsistent with the relief granted in this paragraph.

5.      The Confirmation Procedures, including the Confirmation Hearing Notice,
and the form and manner of service and publication of the Confirmation Hearing Notice as
described in the Motion, are approved.  Without limiting the foregoing, the Debtors are
authorized to publish a notice of the Confirmation Hearing, the Confirmation Objection Deadline
and the Voting Deadline (which may be substantially in the form of the Confirmation Hearing

Notice) by February 9, 2015, or such other day that is not less than twenty-eight days before the commencement of the Confirmation Hearing, one time in the global edition of *The Wall Street Journal* and the national edition of *USA Today*.  Additionally, the Plan Proponents shall publish the Confirmation Hearing Notice on the Debtors' restructuring website at cases.primeclerk.com/nii.

6.    The Debtors shall file all exhibits to the Plan with the Court and make them available for review on their restructuring website at cases.primeclerk.com/nii no later than seven days before the Confirmation Hearing.

7.    With respect to a transferred Claim, the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) had been completed prior to the Record Date or (b) the transferee filed by the Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

8.    The temporary allowance of Claims for voting purposes does not constitute an allowance of such Claims for purposes of receiving distributions under the Plan and is without prejudice to the rights of the Plan Proponents in any other context, including the right of the Plan Proponents to contest the amount, validity or classification of any Claim for purposes of allowance and distribution under the Plan.  If the holder of a Claim wishes to challenge either (a) the classification of such Claim or (b) the allowance of such Claim for voting purposes in accordance with the Tabulation Rules, the claimholder must file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the

counsel for each of the Plan Proponents so that it is received by the later of (a) March 4, 2015 or

(b) ten days after the date of service of a notice of objection, if any, to such Claim.  Unless the

Court orders otherwise, a Claim will not be counted for voting purposes in excess of the amount

determined in accordance with the Tabulation Rules.

9.      Notwithstanding anything in the Solicitation Procedures to the contrary,

any creditor that submits a timely and properly completed Ballot to the Voting Agent or a Master

Ballot Agent, as applicable, may change the vote reflected on such Ballot after the Voting

Deadline only with the approval of the Court.  If the Voting Agent or a Master Ballot Agent

receives from a creditor more than one timely and properly completed Ballot with respect to the

same Claim, and no order of the Court allowing such creditor to change its vote has been entered

after the Voting Deadline (or, with respect to creditors that are beneficial owners of Notes held in

street name by a Master Ballot Agent, after the applicable mailing deadline established by such

Master Ballot Agent), the last such timely and properly executed Ballot received by the Voting

Agent or Master Ballot Agent by the Voting Deadline shall be deemed to reflect the voter's

intent.  In such circumstance, the Voting Agent or a Master Ballot Agent, as applicable, shall

have the authority to determine which Ballot was the last to be received.

10.      The Confirmation Hearing is scheduled to be held before the Honorable

Shelley C. Chapman, United States Bankruptcy Judge, in Room 623 of the United States

Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004 on March 25, 2015, at 10:00 a.m., Eastern time.  The Confirmation Hearing may be

continued from time to time by the Court without further notice other than the announcement of

the adjourned date at the Confirmation Hearing or any continued hearing.

11.     Objections to confirmation of the Plan, if any, must:  (a) be in writing;

(b) state the name and address of the objecting party and the nature of the Claim or Interest of

such party; (c) state with particularity the basis and nature of any objection to the confirmation of

the Plan; and (d) be filed with the Court and served on the following parties so that they are

received no later than 4:00 p.m., Eastern time, on March 11, 2015, or such other date established

by the Plan Proponents that is at least twenty-eight days after service of the Solicitation

Packages:

(i)     the Debtors, c/o NII Holdings, Inc., 1875 Explorer Street, Suite 800, Reston, Virginia 20190 (Attn:  General Counsel);

(ii)    counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Scott J. Greenberg, Esq. and Lisa Laukitis, Esq.); Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn:  David G. Heiman and Carl E. Black, Esq.);

(iii)   the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Susan D. Golden, Esq. and Brian Masumoto, Esq.);

(iv)    counsel to Wilmington Savings Fund Society, FSB, solely in its capacities as the trustee under the indentures governing the 10% Capco Notes and the 7.625% Capco Notes, respectively;

(v)     counsel to U.S. Bank National Association, solely in its capacity as the trustee under the indenture governing the 8.875% Capco Notes;

(vi)    counsel to Wilmington Trust, National Association, solely in its capacities as the trustee under each indenture governing the 7.875% Luxco Notes and the 11.375% Luxco Notes;

(vii)   Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of the ad hoc group of holders of the Luxco Notes;

(viii)  Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and David H. Botter, Esq.) on behalf of Aurelius Capital Management, LP;

(ix)    Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York  10019 (Attn:  Andrew Rosenberg, Esq.

and Elizabeth McColm, Esq.) on behalf of entities managed by Capital
Research and Management Company;

(x)     counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel
LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn:
Kenneth H. Eckstein, Esq. and Stephen D. Zide, Esq.);

(xi)    the SEC; and

(xii)   all other parties in interest that have filed requests for notice pursuant to
Bankruptcy Rule 2002 in the Debtors' chapter 11 cases.

For purposes of filing pleadings in these cases, the address of the Court is One Bowling Green,

New York, New York 10004-1408.  Attorneys may also file pleadings on the Court's Document

Filing System (ECF) by completing and submitting the Electronic Filing Registration Form,

available on the Court's website at http://www.nysb.uscourts.gov.

12.     Unless otherwise permitted or directed by the Court, (a) the Debtors shall

file the Tabulation Declaration no later than March 18, 2015 and (b) the Plan Proponents may

file a consolidated reply to any objections to the Plan no later than March 23, 2015.  The

requirements of Local Bankruptcy Rule 3018-1(a) are waived to the extent they are inconsistent

with the relief granted in this paragraph.

13.     The Plan Proponents are authorized to take (or refrain from taking) any

action and expend such funds as necessary or appropriate to implement the terms of, and the

relief granted in, this Order without seeking further Order of the Court.

14.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to this Order.

Dated: New York, New York
_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE