**Hearing Date and Time: To be Determined**
**Response Deadline: To be Determined**

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Scott J. Greenberg
Lisa Laukitis

- and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
NII Holdings, Inc., <u>et al.</u>,[1]                         :    Case No. 14-12611 (SCC)
                              Debtors.                        :
--------------------------------------------------------------x    (Jointly Administered)

## EMERGENCY MOTION OF THE DEBTORS AND
## DEBTORS IN POSSESSION TO STRIKE OR, IN THE ALTERNATIVE,
## ADJOURN THE LIMITED OBJECTIONS OF THE AD HOC GROUP OF NII CAPITAL
## <u>2021 NOTEHOLDERS SEEKING TO DISALLOW AND EXPUNGE CERTAIN CLAIMS</u>

---

[1]    The Debtors in the jointly administered bankruptcy cases are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); McCaw International (Brazil), LLC (1850); NII Mercosur, LLC (4079); and NIU Holdings LLC (5902).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA 20190.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 5

JURISDICTION .................................................................................................. 7

RELIEF REQUESTED.......................................................................................... 7

ARGUMENT ...................................................................................................... 7

    I.    The Capco 2021 Noteholder Group's Claims Objections should be struck
        as procedurally improper ........................................................................... 8

        a.    The Capco 2021 Noteholder Group should not be permitted to
             circumvent Bankruptcy Rule 9019 ...................................................... 8

        b.    Section 502 of the Bankruptcy Code does not require the Court to
             hear and determine the Claims Objections ............................................ 10

        c.    The Court is authorized under section 105(a) of the Bankruptcy
             Code to strike the Claims Objections..................................................... 11

    II.    Alternatively, the Claims Objections and related response deadlines
        should be adjourned until after the Confirmation Hearing .................................. 13

RESERVATION OF RIGHTS ................................................................................ 16

NOTICE............................................................................................................ 16

NO PRIOR REQUEST ......................................................................................... 17

## TABLE OF AUTHORITIES

Page

C ASES

ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns
   Corp.),
   361 B.R. 337 (S.D.N.Y. 2007).................................................................................11, 12, 13

Ad Hoc Adelphia Trade Claims Comm. v. Adelphia Commc'ns Corp.,
   337 B.R. 475 (S.D.N.Y. 2006).................................................................................8

Celotex Corp. v. Edwards,
   514 U.S. 300 (1995)...............................................................................................15

Cosoff v. Rodman (In re W.T. Grant Co.),
   699 F.2d 599 (2d Cir. 1983)..................................................................................8

In re Adelphia Commc'ns Corp.,
   327 B.R. 143 (Bankr. S.D.N.Y. 2005)...................................................................8

In re Adelphia Commc'ns. Corp.,
   368 B.R. 140, 232 (Bankr. S.D.N.Y. 2007)..........................................................9

In re Chemtura Corp.,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010)...................................................................9

In re Chi. Invs.,
   LLC, 470 B.R. 32 (Bankr. D. Mass. 2012) ...........................................................11

In re Clamp-All Corp.,
   233 B.R. 198 (Bankr. D. Mass. 1999) ..................................................................12

In re Dewey & LeBoeuf LLP,
   478 B.R. 627 (Bankr. S.D.N.Y. 2012)...................................................................9

In re Heritage Org., L.L.C.,
   375 B.R. 230 (Bankr. N.D. Tex. 2007).................................................................10

In re Residential Capital, LLC,
   Case No. 12-12020 (MG) (Bankr. S.D.N.Y. July 30, 2013) ...............................8, 13

In re SageCrest II, LLC,
    No. 08-50754 (LEAD), 2010 WL 1981041 (Bankr. D. Conn. May 18, 2010) .......................8

In re Texaco, Inc.,
    81 B.R. 806 (Bankr. S.D.N.Y. 1988) .......................................................................................7

In re Tri-State Ethanol Co.,
    370 B.R. 222 (Bankr. D.S.D. 2007) .......................................................................................11

Landis v. N. Am. Co.,
    299 U.S. 248 (1936) ...............................................................................................................14

Law Debenture Trust Co. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum
    Corp.),
    339 B.R. 91 (D. Del. 2006) ..............................................................................................10, 11

United States v. Seltzer,
    227 F.3d 36 (2d Cir. 2000) .....................................................................................................14

**STATUTES**

11 U.S.C. § 105(a) ...............................................................................................7, 11, 13, 14, 15

11 U.S.C. § 105(d) .................................................................................................................7, 14

11 U.S.C. § 105(d)(2)(B)(i)-(vi) ..................................................................................................14

11 U.S.C. § 502 ....................................................................................................................10, 11

11 U.S.C. § 1123(b) ................................................................................................................9, 10

11 U.S.C. § 1125(b) ......................................................................................................................12

11 U.S.C. § 1129 .............................................................................................................................7

28 U.S.C. § 157(b) .........................................................................................................................7

28 U.S.C. § 1334 .............................................................................................................................7

28 U.S.C. § 1408 .............................................................................................................................7

28 U.S.C. § 1409 .............................................................................................................................7

NYI-524657914v1

**RULES**

Bankruptcy Rule 2002 ........................................................................................................17

Bankruptcy Rule 9019 ................................................................................1, 4, 5, 7, 8, 9, 10, 11

**OTHER AUTHORITIES**

2 COLLIER ON BANKRUPTCY ¶ 105.02 (Alan N. Resnick & Henry J. Sommer eds.,
    16th ed. rev. 2012) ........................................................................................................14

H.R. Rep. No. 595, 95th Cong., 2d Sess. 221-222 (1978)...............................................7

NYI-524657914v1

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

NII Holdings, Inc. ("NII Holdings") and twelve of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), hereby move to strike (i) the *Limited Objection of the Ad Hoc Group of NII Capital 2021 Noteholders'* [*sic*] *Seeking to Disallow and Expunge Certain Claims Filed by the Indenture Trustee of the 8.875% Capco Notes* [Docket No. 685] and (ii) the *Limited Objection of the Ad Hoc Group of NII Capital 2021 Noteholders'* [*sic*] *Seeking to Disallow and Expunge Certain Claims Filed by the Indenture Trustee of the 10% Capco Notes* [Docket No. 686] (together, the "Claims Objections"), or, in the alternative, adjourn the hearing on the Claims Objections until after the Confirmation Hearing[2] and the Court's ruling on the settlement embodied in the *First Amended Joint Plan of Reorganization Proposed by the Plan Debtors and Debtors in Possession and the Official Committee of Unsecured Creditors* (as amended or modified from time to time, the "Plan") if they are not otherwise moot (the "Motion"). The Debtors have contemporaneously filed a motion seeking to shorten notice of the Motion to enable the Court to hear the Motion on an expedited basis.

## PRELIMINARY STATEMENT

1.      The Claims Objections should be seen for what they are:  an 11th hour maneuver by the Capco 2021 Noteholder Group to undermine confirmation of the Plan and circumvent the standard under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the approval of the integrated settlement of the Avoidance Claims, Recharacterization Claims, Transferred Guarantor Claims, the disputes over total enterprise

---

[2]       Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

value, relative value of NII Mexico and NII Brazil, the allocation of cash distributions to

creditors and entitlements to postpetition interest, among other things (collectively, the "Settled

Claims and Disputes"), all of which are embodied in the Plan (the "Settlement").[3]  Instead, the

Capco 2021 Noteholder Group, under the guise of the Claims Objections, would have this Court

conduct a full blown trial on the merits of just one of the many Settled Claims and Disputes that

the Debtors, the Creditors' Committee and holders of over 70% of the Prepetition Notes have

already proposed for resolution via the Settlement (together with the other Settled Claims and

Disputes) after over a year of investigation, analysis and intensive negotiations.  At this juncture,

the Debtors' right to be heard on the integrated Settlement is inviolate.  To entertain the Capco

2021 Noteholder Group's procedurally inappropriate tactic at this stage in the Debtors' cases —

with the Plan out for creditor vote and a hearing on approval of the Settlement and confirmation

of the Plan less than 30 days away — is improper, counter to bankruptcy policy favoring

settlements and has the potential to irreversibly destroy all that has been achieved in the Debtors'

chapter 11 cases.  Though the Capco 2021 Noteholder Group contends that granting the Claims

---

[3]    The Avoidance Claims consist of claims related to or arising from, among other transactions or transfers,
(a) the guarantees by NII Holdings of the Luxco Notes; (b) the subordination of the right of Capco to
payment under the terms of the Capco Intercompany Note to the payment of the Luxco Notes, (c) the
release and/or transfer of approximately $614 million of receivables that were owed to NII Holdings by
Nextel Telecomunicações Ltda. and transferred to Luxco on or about February 28, 2013, (d) the release
and/or transfer of approximately $48 million owed to NII Holdings, NIS and NII Funding Corp. from
McCaw International (Brazil), LLC and (e) the release by NIS and NII Holdings of approximately $93
million in intercompany receivables owed to them by Nextel del Peru S.A.  The Recharacterization Claims
consist of claims to recharacterize as equity the intercompany obligations existing between a Debtor and
another Debtor or between a non-Debtor subsidiary of NII Holdings and a Debtor outstanding as of the
Petition Date including, but not limited to:  (a) the 2013 Intercompany Claims; (b) the Capco Intercompany
note; (c) the Nextel Peru Claims; (d) $19.6 million owing from NII Brazil to NII Holdings and NIS; $151.8
million owing from NII Mexico to NII Holdings, NIS and NII Funding Corp.; and $16.4 million owing
from NII Argentina to NII Holdings, NIS and NIS Funding Corp.; (e) $3.06 billion owing from NII
Holdings to Capco; (f) $788 million owing from NIS to NII Holdings; (g) $214 million owing from NII
Funding to NII Holdings; and (h) certain other intercompany claims owed to Luxco, including
intercompany notes owing from NII Brazil to Luxco in the aggregate principal amount of $1.38 billion.
The Transferred Guarantor Claims, which are just part of the claims addressed by the Settlement, but the
only claims that are subject to the objections made by the Capco 2021 Noteholder Group, consist of claims
related to alleged defaults under the Capco 8.875% Note Indenture or the Capco 10% Note Indenture
related to the transfer of certain direct or indirect equity interests in the Transferred Guarantors from NII
Global Holdings, Inc. to Nextel International Holdings S.à r.l.

- 2 -

Objections "would eliminate the need for a contested confirmation hearing" — nothing could be further from the truth.

2.      To be clear, the Claims Objections are not a free option.  Win or lose, if the Court adjudicates the Claims Objections prior to consideration of the integrated Settlement, the fragile consensus achieved between the Debtors and their major creditor constituencies will dissolve as would any chance of confirmation of a chapter 11 plan in early June (or the foreseeable future). Instead, these cases likely will devolve into complex, expensive and time-consuming litigation of all of the Settled Claims and Disputes that were otherwise poised for resolution by the Settlement, which includes, among other things, a settlement of the Transferred Guarantor Claims that are the subject of the Claims Objections.

3.      In such a scenario, at a minimum, the Debtors would need to withdraw the Plan and the Disclosure Statement, which was recently approved by this Court, after incurring substantial time and expense to negotiate, formulate and solicit each of them.  Such a dramatic setback will likely cause the termination of the PSA and bring the Debtors back to the starting line with the burden of, at best, renegotiating a deal that took over a year to achieve or, worse, having to kickstart an entirely new process based on different terms with possibly different parties in an effort to obtain support for a different plan.  The Debtors believe this process would likely require litigating all claims and disputes to a final resolution (not just the Transferred Guarantor Claims) by September 15, 2015 — a schedule that simply would be impossible to meet.  As of September 15, 2015, the Debtors risk defaults under Operating Company Credit Agreements that require the Debtors to consummate a chapter 11 plan by that date, which will place the Debtors' Brazil business (the predominate source of value in these cases) at high risk of

NYI-524657914v1

liquidation.[4]  These fresh challenges will severely tax the estates, causing precious liquidity to
dwindle as the costs of these cases increase exponentially.

4.    This is not a far-fetched doomsday scenario; this is the world the Debtors will be
living in if their already-exercised right to settle the Settled Claims and Disputes under the Plan
is revoked.  Simply put, if the Claims Objections are adjudicated, there will not be a
confirmation hearing on June 3, 2015 or one anytime in the near future.  It is more likely these
cases will spiral downward into a free-fall litigation — one of the many reasons the Debtors
exercised their business judgment to join the Settlement in the first place.

5.    The Debtors ask that they and their stakeholders be given the opportunity to
continue prosecuting the Plan that is now before creditors and seek the Court's approval of the
Settlement pursuant to Bankruptcy Rule 9019 without further interference in the interest of
permitting the Debtors to promptly emerge in the most value-maximizing fashion for all
creditors.  The Capco 2021 Noteholder Group retains the right to object to the Plan and the
integrated Settlement contained therein at Confirmation, which the Court will review under
applicable Bankruptcy Rule 9019 standards.[5]  Thus, there is no prejudice to the Capco 2021
Noteholder Group by granting the relief requested herein.  The Capco 2021 Noteholder Group

---

[4]    The lenders with which the Debtors and NII Brazil have reached agreements are Banco do Brasil S.A.
("BdB") and Caixa Econômica Federal ("Caixa"), NII Brazil's two major local lenders, and China
Development Bank Corp. ("CDB").  The amendments to the agreements with BdB and Caixa, which
provide covenant and other relief that are necessary for the Debtors' successful reorganization, may not
become effective if the Debtors fail to meet certain requirements, including their emergence from chapter
11 by September 15, 2015.  Similarly, the amendment reached with CDB is dependent upon the Debtors'
ability to provide CDB with an amended guarantee (among other things), upon emerging from chapter 11,
by September 30, 2015.  Accordingly, the failure of the Debtors to emerge from bankruptcy by September
15, 2015 could cause NII Brazil to be in default of or lose certain concessions with respect to such lending
and credit agreements, which would allow the local lenders to pursue remedies that could make it difficult
if not impossible for the Debtors to successfully reorganize.

[5]    The Debtors and the Capco 2021 Noteholder Group have been involved in ongoing discovery for several
weeks.  To date, the Debtors have produced approximately 300,000 pages of documents and have received
approximately 400 pages of documents in return from the Capco 2021 Noteholder Group.  In addition, the
parties began taking depositions on May 4, 2015 and expect to conduct 13 depositions by the week of May
18, 2015.

- 4 -

should not be permitted to use the Claims Objections as an end-run around the Bankruptcy Rule 9019 settlement standards to the detriment of the Debtors and all other stakeholders in another attempt to derail the Debtors' march towards Confirmation.

## BACKGROUND

6.      After six months of prepetition negotiations with major creditor constituencies, the Debtors commenced the majority of these cases on September 15, 2014 with the stated intention of reaching agreement on the terms of a consensual chapter 11 plan with their major creditor constituencies.

7.      Following further intensive negotiations, and with the assistance of the Creditors' Committee, on November 24, 2014, the Debtors filed the first plan support agreement (the "Prior PSA") [Docket No. 249].  On December 22, 2014, the Debtors filed a plan of reorganization [Docket No. 322] (the "Prior Plan") and related disclosure statement [Docket No. 323] (the "Prior Disclosure Statement") that were consistent with the Prior PSA.

8.      On December 19 and December 22, 2014, the indenture trustee for the Capco 2019 Notes and the indenture trustee for the Capco 2016 Notes, respectively, filed proofs of claim against the Debtors, which claims asserted, among other things, the Transferred Guarantor Claims.

9.      On January 26, 2015, the Debtors announced that they had reached an agreement for the sale of their operations in Mexico, operated by non-debtor Comunicaciones Nextel de México, S.A. de C.V., to an affiliate of AT&T for $1.875 billion, which was ultimately approved by the Court on March 23, 2015 [Docket No. 590].  As a result of the proposed Sale, which was completed on April 30, 2015, the Debtors began the process of negotiating amendments to the Prior Plan and the Prior Disclosure Statement with their major creditor constituencies.

10.     On March 5, 2015, the Debtors, Aurelius, Capital Group, Luxco Group and the Creditors' Committee executed the plan support agreement (the "PSA"), the approval of which is pending before the Court and will be heard on June 3, 2015.  On March 13, 2015, the Debtors filed (a) the Plan [Docket No. 527, Ex. A-1] and (b) the *First Amended Disclosure Statement for First Amended Joint Plan of Reorganization Proposed by the Plan Debtors and Debtors in Possession and the Official Committee of Unsecured Creditors* (as amended or modified from time to time, the "Disclosure Statement") [Docket No. 527, Ex. B-1].  That same day, the Capco 2021 Noteholder Group filed the *Motion of the Ad Hoc Group of NII Capital 2021 Noteholders for an Order Pursuant to Sections 105(a) and 105(d) of the Bankruptcy Code, Local Bankruptcy Rule 9019-1 and General Order M-452 Directing the Debtors to Participate in Mediation* [Docket No. 522] (the "Mediation Motion").  After a contested hearing on the Mediation Motion, on April 2, 2015, the Court entered an order denying the Mediation Motion [Docket No. 611].

11.     On April 20, 2015, the Court entered the *Order (I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of Disclosure Statement Notice, (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Reorganization, and (IV) Scheduling Hearing on Confirmation of Plan of Reorganization* [Docket No. 655] and the Debtors commenced the solicitation process with respect to the Plan.

12.     On May 4, 2015, in the middle of nearly daily discussions regarding discovery to aid the Capco 2021 Noteholder Group in their efforts to object to Confirmation, the Capco 2021 Noteholder Group, without prior warning, filed the Claims Objections that prompted this Motion.

## JURISDICTION

13.     This Court has subject matter jurisdiction to consider this matter pursuant to 28

U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

14.     The Debtors respectfully request pursuant to sections 105(a), 105(d) and 1129 of

the Bankruptcy Code and Bankruptcy Rule 9019 that the Court, in its discretion, either strike the

Claims Objections or, in the alternative, adjourn the hearing on the Claims Objections and the

related response deadlines to dates after the Confirmation Hearing and the Court's ruling on the

Settlement embodied in the Plan if the Claims Objections are not otherwise mooted by that

ruling.

## ARGUMENT

15.     Congress, in connection with the passage of the Bankruptcy Reform Act of 1978,

said that "a debtor should be given the unqualified opportunity to negotiate a settlement and

propose a plan of reorganization without interference from creditors and other interests."  H.R.

Rep. No. 595, 95th Cong., 2d Sess. 221-222 (1978); see In re Texaco, Inc., 81 B.R. 806, 809

(Bankr. S.D.N.Y. 1988).  That is exactly the opportunity the Debtors have sought in these cases,

and they require the relief requested herein to ensure they are able to continue to see that

opportunity to fruition without the interference proposed by the Claims Objections.  As further

set forth below, the Claims Objections should be stricken or deferred because, among other

things, they are an attempted end-run around the standards for approval of a settlement under

Bankruptcy Rule 9019, usurp from the Debtors their right to settle the Settled Claims and

Disputes (of which the claims subject to the Claims Objections are just one part) as already

- 7 -

proposed under a plan under solicitation and otherwise will disrupt the Debtors' right to seek

confirmation of the Plan.

I.    **The Capco 2021 Noteholder Group's Claims Objections should be struck as procedurally improper.**

      a.    ***The Capco 2021 Noteholder Group should not be permitted to circumvent Bankruptcy Rule 9019.***

      16.    It is black letter law that a Court's evaluation of a proposed settlement should not

involve a "mini-trial on the merits." See In re Adelphia Commc'ns Corp., 327 B.R. 143, 159

(Bankr. S.D.N.Y. 2005) ("It is not necessary for the court to conduct a 'mini-trial' of the facts or

the merits underlying the dispute.  Rather, the court only need be apprised of those facts that are

necessary to enable it to evaluate the settlement and to make a considered and independent

judgment about the settlement.  In doing so, the court is permitted to rely upon 'opinions of the

trustee, the parties, and their attorneys.'") (internal citations and quotations omitted), adhered to

on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005), aff'd sub nom. Ad Hoc Adelphia

Trade Claims Comm. v. Adelphia Commc'ns Corp., 337 B.R. 475 (S.D.N.Y. 2006).  Rather,

when considering a settlement, courts in this jurisdiction generally "canvass the issues and see

whether the settlement falls below the lowest point in the range of reasonableness." See id.

(citation omitted); In re SageCrest II, LLC, No. 08-50754 (LEAD), 2010 WL 1981041, at *4

(Bankr. D. Conn. May 18, 2010) ("[T]he Circuit Court has repeatedly instructed that a

bankruptcy court is not to decide the numerous questions of law and fact raised by [objectors]

but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in

the range to reasonableness.") (quotation marks omitted) (citing Cosoff v. Rodman (In re W.T.

Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)), aff'd sub nom. Topwater Exclusive Fund III v.

SageCrest II, LLC (In re SageCrest LLC), No. 3:10CV978 (SRU), 2011 WL 134893 (D. Conn.

Jan. 14, 2011).  Finally, a paramount feature of bankruptcy policy is to encourage and facilitate

NYI-524657914v1

settlements.  See, e.g., In re Dewey & LeBoeuf LLP, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012)

("As a general matter, [s]ettlements and compromises are favored in bankruptcy as they

minimize costly litigation and further parties' interests in expediting the administration of the

bankruptcy estate.") (quotation marks and citations omitted); cf. In re Chemtura Corp., 439 B.R.

561, 591 (Bankr. S.D.N.Y. 2010) (noting that it is "typical" and "to be expected" that settlements

in large chapter 11 cases will not be entirely consensual).

17.    With a hearing on the approval of the Plan as well as the Settlement pursuant to

Bankruptcy Rule 9019 rapidly approaching and discovery underway to facilitate objections to the

Settlement and confirmation of the Plan, entertaining the Claims Objections — which would

involve a full trial on the merits of the Transferred Guarantor Claims, which is just one of the

numerous and integrated Settled Claims and Disputes under the Plan — eviscerates Bankruptcy

Rule 9019.

18.    Further, it is without dispute that the rights of debtors and debtors in possession

"include the right to propose settlements in a reorganization plan, under Code section 1123(b)(3),

or under Fed. R. Bankr. P. 9019." In re Adelphia Commc'ns Corp., 368 B.R. 140, 232 (Bankr.

S.D.N.Y. 2007), aff'd, 544 F.3d 420 (2d Cir. 2008).  Other courts that have confronted similar

situations to that posed by the interposition of the Claims Objections have struck the claims

objections in favor of first considering the settlement proposed by a debtor in possession.

19.    In a case analogous to this situation, the United States Bankruptcy Court for the

District of Massachusetts held that the debtors' proposed settlement of the claims should be given

a chance, without considering or addressing the merits of an objection to the same claims

brought by another creditor.  The court stated:

> Because the Debtors now seek to settle their dispute with [the non-
> objecting creditor] through the Fourth Amended Plan, the [other

creditors' objection to the non-objecting creditor's claims] <u>is
procedurally improper as it seeks to undermine the value of the
settlement</u> . . . . If the proposed settlement nonetheless fails to
satisfy the requirements of Fed. R. Bankr. P. 9019, the Debtors'
[*sic*] will be free to pursue the objection themselves.  Thus no
rights are lost and no parties are prejudiced.

<u>In re Chi. Invs.</u>, LLC, 470 B.R. 32, 92 (Bankr. D. Mass. 2012) (emphasis added) (citations

omitted).  Accordingly, the court granted the debtors' motion to strike the claim objection.  The

Court should do the same here.[6]

> **b.      Section 502 of the Bankruptcy Code does not require the Court to hear and
> determine the Claims Objections.**

20.      Assuming the Capco 2021 Noteholder Group had standing to assert such

objections in the first place (which the Debtors believe is not the case and with respect to which

they reserve all of their rights), section 502(b) does not require a determination from the Court

on the Claims Objections prior to the Court's ruling on the Plan and the integrated Settlement

contained therein pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy

Rule 9019.  <u>See</u> <u>Law Debenture Trust Co. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum

Corp.)</u>, 339 B.R. 91, 94 (D. Del. 2006) ("[T]here is no direct conflict between Section 502(a) and

[Bankruptcy] Rule 9019 which would require the Bankruptcy Court to resolve claim objections

before approving a settlement . . . .  Moreover, . . . such a procedure would undermine the

important policy of promoting settlements in bankruptcy proceedings by requiring the parties to

litigate the very issues that the settlement seeks to resolve."); <u>In re Heritage Org., L.L.C.</u>, 375

B.R. 230, 285 (Bankr. N.D. Tex. 2007) ("Taken to its logical conclusion, the [objecting

---

[6]      Moreover, the Capco 2021 Noteholder Group provides no legal basis for the demand that the Claims
Objections must precede Confirmation, and the Debtors believe that no such basis exists in the Bankruptcy
Code.  In the event of a properly asserted claim objection (on which the Debtors reserve all of their rights
as they pertain to the Claims Objections), section 502(a) is silent as to the appropriate timing of such a
determination, and the Capco 2021 Noteholder Group cites no support for requiring such an objection to
precede confirmation of a plan, especially one that is already under solicitation and that seeks to resolve the
same claims as part of an integrated settlement of numerous issues.

- 10 -

creditors'] argument that § 502 confers not only a right to object to a claim but also a right to a

ruling would mean that the Court could <u>never</u> permit a settlement of a claim objection - the Court

would be required to deny the compromise and rule upon the merits, even though both the

claimant and the objectant desired a different result.") (emphasis in original).  Accordingly,

section 502 of the Bankruptcy Code does not permit a creditor to dictate the timing or

determination of an objection to claim.

21.    And even if, assuming for argument's sake, the Capco 2021 Noteholder Group

had the right to bring the Claims Objections pursuant to section 502(a), that right is fully

satisfied through its ability to object to the Plan and the integrated Settlement contained therein.

<u>See</u> <u>Chi. Invs.</u>, 470 B.R. at 140 (holding that a creditor objecting to a claim that was being

resolved as part of a settlement was adequately protected by the court's evaluation of the

settlement pursuant to Bankruptcy Rule 9019); <u>Kaiser</u> 339 B.R. at 93 ("[E]ven if [the creditor]

has the right bring such a claim objection under Section 502(a), that right is satisfied through the

ability to object to the settlement.").  Allowing one "captious and factious creditor" to upend a

hard-fought settlement before the Court has the opportunity to review such settlement is contrary

to the purpose of the Bankruptcy Code — "if it took a unanimous vote of all the creditors before

any claim could be compromised, any property sold, any exemption set apart, or any claim

allowed, the result would be interminable litigation and an indefinite postponement of

dividends."  <u>See</u> <u>In re Tri-State Ethanol Co.</u>, 370 B.R. 222, 236 (Bankr. D.S.D. 2007) (in context

of chapter 7 case; quoting <u>Amick v. Mortgage Sec. Corp.</u>, 30 F.2d 359, 361 (8th Cir. 1929)).

**c.    *The Court is authorized under section 105(a) of the Bankruptcy Code to strike the Claims Objections.***

22.    Bankruptcy courts in this district have used their section 105(a) authority to

implement relief in aid of confirmation of a debtor's plan or reorganization.  <u>See</u>, <u>e.g.</u>, <u>ACC</u>

Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 361 B.R. 337,

343 (S.D.N.Y. 2007) (authorizing relief to resolve several disputes that impeded plan

confirmation), appeal dismissed, 2007 U.S. App. LEXIS 30722 (2d Cir. 2007).  Such relief is

more than appropriate here, where the Debtors have been negotiating a settlement with various

constituencies for close to a year and are far along the path of seeking approval of the settlement

in the context of confirmation, and the Capco 2021 Noteholder Group, on the eve of

Confirmation, seeks to disrupt both Confirmation and the approval of the Settlement.[7]

      23.    Starting prepetition, the Debtors initiated the discussions that ultimately led to the

integrated Settlement of the Settled Claims and Disputes embodied in the Plan, which Settlement

was initially reached with the parties to the PSA over five months ago in November 2014.[8]  The

Court approved the Debtors' solicitation of votes on the Plan on April 20, 2015, that solicitation

process has begun and the Settlement is set for consideration by the Court as part of

Confirmation in a mere 23 days.  The Capco 2021 Noteholder Group has now interjected a new

process that seeks to disrupt the Plan confirmation process[9] by removing just one portion of the

claims that are proposed for resolution thereunder and having them adjudicated as part of the

Claim Objections before Confirmation can proceed.  This should not be permitted to happen — it

is only appropriate that the Debtors should be given the opportunity to see their efforts to

---

[7]    The proofs of claim filed by the indenture trustees for the Capco 2016 Notes and Capco 2019 Notes asserting the Transferred Guarantor Claims have been on file since December 2014.

[8]    The proposed settlement of the Transferred Guarantor Claims, as part of an integrated settlement of the other Settled Claims and Disputes, was a part of the Prior PSA and Plan filed in November and December 2014, respectively.

[9]    While the Claims Objections do not involve the dissemination of an alternative plan during solicitation that would clearly run afoul of the anti-solicitation provision of section 1125(b) of the Bankruptcy Code, their direct attack on a primary component of the Plan is nonetheless similarly undermining in nature, thus appearing to stray dangerously into the zone of a solicitation violation.  See, e.g., In re Clamp-All Corp., 233 B.R. 198, 209 (Bankr. D. Mass. 1999) (holding that a creditor's undermining conduct violated a debtor's solicitation rights and equitably subordinating such creditor's claims as a remedy).

- 12 -

conclusion, rather than to have consideration of the Settlement circumvented by the Claims
Objections.

24.    The Debtors submit that the relief sought — striking the Claims Objections — is
appropriate relief in aid of confirmation authorized pursuant to section 105(a) of the Bankruptcy
Code.  Other forms of relief in aid of confirmation have been granted in this district, and the
Debtors submit that striking the Claims Objections constitutes relief much less extensive than
that which has been provided by other courts.  See, e.g., Adelphia, 361 B.R. 337, 343 (S.D.N.Y.
2007), supra.

25.    Accordingly, the Debtors respectfully request that the Court strike the Claims
Objections as being procedurally inappropriate[10] and against the best interests of the Debtors and
their stakeholders.

## II.    Alternatively, the Claims Objections and related response deadlines should be adjourned until after the Confirmation Hearing.

26.    A proceeding to determine an objection to an allowance of a complicated and
highly disputed claim that is just one part of an integrated settlement of numerous disputes that
took the Debtors and major creditor constituencies over a year to settle has no place being heard
either on the eve of Confirmation or at the Confirmation Hearing, particularly where the
interested parties have neither begun nor been given the opportunity to prepare for such a trial.

---

[10]    In addition to being procedurally inapposite, the Claims Objections are strategically questionable.  Tactics adopted by parties to short-circuit the normal litigation process have been frowned upon by bankruptcy courts in this District.  See, e.g., Tr. of Hr'g at 65:04–09, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. July 30, 2013) (the court questioned the tactics adopted by an ad hoc creditor group, which included filing a motion to disqualify debtors' counsel and chief restructuring officer on the eve of confirmation, in part because such tactics serve to "short-circuit the normal litigation process").  Since before the approval of the Disclosure Statement, the Debtors have proceeded transparently, cooperatively and in good faith throughout the discovery process with the Capco 2021 Noteholder Group to ensure it was adequately informed for Confirmation.  Literally on the eve of the commencement of depositions, without warning or notice, the Capco 2021 Noteholder Group filed the Claim Objections — albeit using documents gathered in discovery — in contravention of the entire process on which discovery has been focused — Confirmation.

Nonetheless, the Capco 2021 Noteholder Group seeks an expedited hearing, without prior notice to the Debtors or the Creditors' Committee and, to the best of the Debtors' knowledge, without prior request and/or approval from the Court, with Confirmation less than a month away.  The Court should not reward any such behavior, nor does it have to as the Court has inherent authority over its own calendar and, pursuant to 105(d)[11] of the Bankruptcy Code, has explicit authority surrounding the dates related to confirmation of a plan of reorganization.  See 11 U.S.C. 105(a) & (d); see also Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2000) (finding court has power to manage its calendar); cf. 2 COLLIER ON BANKRUPTCY ¶ 105.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012) ("As a court hearing various disputes, the bankruptcy court has the inherent powers of all courts.").

---

[11]      Section 105(d) of the Bankruptcy Code provides, in relevant part:

   (d)  The court, on its own motion or on the request of a party in interest —

   (2)  . . . [M]ay issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—

   (B)  in a case under chapter 11 of th[e Bankruptcy Code] —

   (i)  sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

   (ii)  sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

   (iii)  sets the date by which a party in interest other than a debtor may file a plan;

   (iv)  sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

   (v)  fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or

   (vi)  provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

11 U.S.C. § 105(d)(2)(B)(i)–(vi) (emphasis added).

- 14 -

27.    Whatever its motives, the Capco 2021 Noteholder Group should not be permitted to hijack the Debtors' resolution of the Transferred Guarantor Claims and by definition all of the Settled Claims and Disputes — the outcome of which would be lose-lose for the Debtors and their estates.  Hypothetically, if the Court were to grant the Claims Objections, an appeal will most certainly follow, indefinitely delaying the Plan Confirmation process.  This delay, in turn, may result in the termination of the PSA — reopening all of the Settled Claims and Disputes.  If the Court denies the Claims Objections, the economic compromises underlying the PSA and the Plan may be altered in a manner that puts the Plan at risk.  It would be a better use of time and resources, both of the parties and the Court, to await the outcome of the Confirmation Hearing before determining to hear the Claims Objections.

28.    Unless the Court chooses to strike or, in the alternative, adjourn the Claims Objections, the Debtors and their stakeholders will suffer and these chapter 11 cases will be sent back to the starting gates.  The assertion of the Transferred Guarantor Claims were taken into account in connection with the Settlement.  Litigating these issues now could result in the prevailing side attempting to renegotiate the Settlement based on the outcome of the Claims Objections, which would upend the entire Settlement and Plan.  Accordingly, the Debtors request that the Court use its inherent power to manage its calendar and its authority to implement relief in aid of confirmation pursuant to section 105(a) of the Code (discussed above) to, at a minimum, adjourn the Claims Objections until after the Confirmation Hearing.  Given the substantial reasonableness of the Settlement, the Debtors believe that the Claims Objections will be rendered moot and that this Court will never have to adjudicate such claims objections.  See, e.g., Celotex Corp. v. Edwards, 514 U.S. 300 (1995) (finding that the bankruptcy court had the power to enjoin third-party actions that would have an adverse impact on the debtor's estate.).

- 15 -

## RESERVATION OF RIGHTS

29.     The Debtors fully reserve their rights with respect to the Transferred Guarantor

Claims and the Claims Objections, and with respect to the content of any exercise of such rights

and with respect to seeking further remedies in connection with the Capco 2021 Noteholder

Group's assertion and filing of the Claims Objections, including the right to respond to the

factual statements and substantive arguments set forth in the Claims Objections, as such

arguments may be later modified or amended, including but not limited to (a) the validity of the

Transferred Guarantor Claims, (b) the standing of the Capco 2021 Noteholder Group to

challenge the Transferred Guarantor Claims, [12] and (c) the facts, theories and grounds set forth in

the Claim Objections.

## NOTICE

30.     No trustee or examiner has been appointed in these chapter 11 cases.  Notice of

this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee;

(c) Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, New

York  10019 (Attn:  Andrew Rosenberg, Esq. and Elizabeth McColm, Esq.) on behalf of certain

noteholders; (d) Akin, Gump, Strauss, Hauer & Feld LLP, One Bryant Park, New York, New

York  10036 (Attn:  Daniel H. Golden, Esq. and David Botter, Esq.) on behalf of certain

noteholders; (e) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York  10022

(Attn:  Paul M. Basta, Esq. and Christopher Marcus, Esq.) on behalf of certain noteholders;

(f) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn:  Mitchell A. Seider,

---

[12]     The Claims Objections challenge claims asserted against Debtors Airfone Holdings, LLC, NIU Holdings LLC (including, as assignee of Claims against NIU pursuant to the Mexico Sale Order) and McCaw International (Brazil), LLC. None of the members of the Capco 2021 Noteholder Group or any holder of Capco 2021 Notes or the indenture trustee for such notes is a creditor of, or has filed a proof of claim against, any of these Debtors, which calls into question its standing to assert the Claims Objections.  The Debtors reserve all of their rights with respect to this issue.

- 16 -

Esq. and Adam J. Goldberg, Esq.) on behalf of the Capco 2021 Noteholder Group; and (g) all

parties that have filed a request for notice pursuant to Bankruptcy Rule 2002.  The Debtors

submit that no other or further notice need be provided.

## NO PRIOR REQUEST

31.    No prior request for the relief sought in this Motion has been made to this or any

other Court in connection with these Chapter 11 Cases.

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form attached hereto as Exhibit A granting the relief requested and grant such

other and further relief to the Debtors as the Court may deem proper.

Dated: May 11, 2015
      New York, New York

Respectfully submitted,

/s/  Scott J. Greenberg
Scott J. Greenberg
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

- and -

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION

NYI-524657914v1

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
NII Holdings, Inc., et al.,[1]          :    Case No. 14-12611 (SCC)
                        Debtors.        :
                                        :    (Jointly Administered)
---------------------------------------------------------------x

## ORDER TO STRIKE THE LIMITED OBJECTIONS
## OF THE AD HOC GROUP OF NII CAPITAL 2021 NOTEHOLDERS
## SEEKING TO DISALLOW AND EXPUNGE CERTAIN CLAIMS

This matter coming before the Court on the *Emergency Motion of Debtors and Debtors in Possession to Strike or, In the Alternative, to Adjourn the Limited Objections of the Ad Hoc Group of NII Capital 2021 Noteholders Seeking to Disallow and Expunge Certain Claims* (the "Motion"),[2] filed by the debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) notice of the Motion was sufficient under the circumstances and (iv) the relief requested therein is necessary, appropriate and in the best interests of these estates and their creditors; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

---

[1]     The Debtors in the jointly administered bankruptcy cases are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); McCaw International (Brazil), LLC (1850); NII Mercosur, LLC (4079); and NIU Holdings LLC (5902). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1875 Explorer Street, Suite 800, Reston, VA 20190.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Claims Objections and any related pleadings or filings shall be stricken from

the docket of these cases.

3.      This Order shall be immediately effective and enforceable upon its entry.

4.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to this Order.

Dated: _____, 2015
          New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE