| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------x | | Hearing Date: June 3, 2015<br>Hearing Time: 10:00 a.m. |
| IN RE NII HOLDINGS, INC., <u>et al.</u>, | : | Chapter 11 |
| | : | Case No. 14-12611 (SCC) |
| Debtors | : | (Jointly Administered) |
| ------------------------------------------------------x | | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
PLAN SUPPORT AGREEMENT AND
<u>FIRST AMENDED JOINT PLAN OF REORGANIZATION</u>**

TO:  THE HONORABLE SHELLEY C. CHAPMAN
     UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through counsel, respectfully submits this objection (the "Objection") to (i) the Debtors' Motion (the "PSA Motion") for an Order, Pursuant to 11 U.S.C. §§ 105 and 363(b) Authorizing Them to Enter Into and Perform Under a Plan Support Agreement (the "PSA") and (ii) confirmation of the First Amended Joint Plan of Reorganization (the "Plan") proposed by the Debtors and the Official Committee of Unsecured Creditors.  In support of this Objection the United States Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

The United States Trustee objects to those provisions in both the PSA and the Plan that seek to allow the Debtors to pay, without application and Court review, what the Debtors deem to be the reasonable professional fees and expenses of the Requisite Consenting Noteholders on the basis of their "substantial contribution" in these cases.  The Debtors have inappropriately delegated to themselves the sole right to evaluate these fees and expenses and have, in essence, usurped the Court's authority to review and approve them under the appropriate statutory

standards. The Bankruptcy Code does not provide for the payment of these fees and expenses absent application and Court approval under 11 U.S.C. § 503(b) and the United States Trustee respectfully requests that the Court deny those provisions that permit these fees and expenses to be paid without full compliance with the requirements of Section 503(b).

## STATEMENT OF FACTS

1. On September 15, 2014, and periodically thereafter (collectively, the "Petition Date"), NII Holdings, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). ECF Doc. No. 1. The cases are being jointly administered for procedural purposes only. ECF Doc. No. 26. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

2. On September 29, 2014, and as amended on November 5, 2014, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). ECF Doc. Nos. 58, 195.

3. On November 24, 2014, the Debtors filed the first plan support agreement (the "Prior PSA"). ECF Doc. No. 249. The parties to the Prior PSA were four of the Debtors' major stakeholders: (i) entities managed by Aurelius Capital Management LP ("Aurelius"), (ii) entities managed by Capital Research and Management Company ("Capital Group"), (iii) American Tower Corporation, American Tower do Brasil – Cessao de Infraestruturas Ltda. and MATC Digital S. de R.L. de C.V. and (iv) the Creditors' Committee. Id.

4. On December 22, 2014, the Debtors filed a plan of reorganization (the "Prior Plan") and related disclosure statement. ECF Doc. Nos. 322, 323.

5. On January 26, 2015, the Debtors announced that they had reached agreement for the sale of their operations in Mexico to an affiliate of AT&T for $1.875 billion (the "Mexico Sale"). Because the Mexico Sale reflected a significant change from the economics and structure that were the basis of the Prior PSA and Prior Plan, on February 4, 2015, the Debtors withdrew their motion to approve the Prior PSA. ECF Doc. No. 426. The Mexico Sale was approved by the Court on March 23, 2015. ECF Doc. No. 575.

6. On March 5, 2015, the Board of NII Holdings approved the Debtors' entry into the instant PSA with Aurelius, Capital Group and an ad hoc group of holders of certain senior unsecured notes issued by the Luxco Group (collectively, the "Requisite Consenting Noteholders") and the Creditors' Committee. PSA Motion at ¶ 32.

7. In accordance with the PSA, on March 13, 2015, the Debtors filed the instant Plan and related disclosure statement ("Disclosure Statement"). ECF Doc. No. 527, Exhibits A-1 and B-1.

8. On March 24, 2015, the Debtors filed the PSA Motion. ECF Doc. No. 590.

9. By Order entered on April 20, 2015, the Court approved the Disclosure Statement. ECF Doc. No. 655. The hearing for the approval of the PSA and confirmation of the Plan is scheduled for June 3, 2015.

10. Among the terms of the PSA is the Debtors' agreement to pay the reasonable and documented professional fees and expenses of the Requisite Consenting Noteholders in accordance with their applicable engagement letters, in full and in cash, subject to certain restrictions and caps. PSA at 4.01(j); PSA Motion at ¶ 43. More specifically, the PSA provides:

> 4.01. Company's Commitments. Subject to the Company's fiduciary duties under applicable law . . . and for so long as this Agreement has not been terminated in accordance with the terms hereof, the Company agrees to use its commercially reasonable efforts to:

3

* * *

(j) pay the reasonable and documented fees and expenses of (i) Akin Gump Strauss Hauer & Feld LLP ("Akin"), (ii) Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), (iii) Blackstone Advisory Partners, L.P. ("Blackstone"), (iv) Houlihan Lokey Capital, Inc. ("HL"), (v) Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP ("Robbins Russell"), (vi) Kirkland & Ellis LLP ("Kirkland" and, together with Akin and Paul Weiss, "RCN Counsel") and (vii) Millstein & Co. ("Millstein") in their respective capacity as counsel or financial advisor to one or more of the Requisite Consenting Noteholders, incurred prior to the effective date of the Plan (the "Plan Effective Date") in connection with the Debtors' restructuring, including restructuring, completion or transaction fees provided for or acknowledged in the engagement letters for Blackstone and HL (and, in the case of HL and Millstein, as such engagement letter has been amended), in full in cash; provided that the reasonable and documented fees and expenses payable by the Debtors of (v) Robbins Russell shall not exceed $150,000, (w) Kirkland shall not exceed $4,500,000, (x) Millstein shall not exceed $4,000,000, (y) Blackstone, only with respect to its restructuring and discretionary fees, shall not exceed $3,000,000, and (z) HL, only with respect to its restructuring fee, shall not exceed $7,000,000.

PSA at 4.01(j).

11. In the section entitled "Administrative Claims," the Plan provides:

**Requisite Consenting Noteholders Professionals Fees/Expenses[1]**

Pursuant to the Plan Support Agreement, the Debtors have sought to obtain authorization pursuant to the Plan Support Agreement Order to pay in full in Cash the Requisite Consenting Noteholders Professionals Fees/Expenses, subject to the limitations set forth in Section I.A.160. To the extent the Requisite Consenting Noteholders Professionals Fees/Expenses are not paid in full in Cash pursuant to the Plan Support Agreement Order, **in light of the substantial contribution that each of the Requisite Consenting Noteholders and their respective Requisite Consenting Noteholders Professionals have made to the Chapter 11 Cases resulting in an actual and demonstrable benefit to the Estates and all creditors, the Requisite Consenting Noteholders Professionals**

---

[1] Aurelius and Capital Group are members of the Creditors' Committee. Both have represented to the United States Trustee that they are not seeking payment of professional fees for Committee related services.

**Fees/Expenses shall constitute Allowed Administrative Claims and shall be paid in full in Cash, subject to the limitations set forth in Section I.A.160.[2]**

Plan at Section II.A.1.d (emphasis added).

12. Neither the PSA nor the Plan set forth, estimate or cap the amount of fees payable to Akin Gump and Paul Weiss as counsel to Aurelius and the Capital Group, respectively, or the total amount of fees that may be paid to Blackstone and Houlihan Lokey. See PSA and Plan.

## OBJECTION

A. **Confirmation Standards and Statutory Framework.**

Section 1129 of the Bankruptcy Code contains 16 standards that must be met for the Court to confirm a plan. 11 U.S.C. § 1129. The plan proponent bears the burden of establishing compliance with Section 1129 of the Bankruptcy Code. In re Charter Commc'ns, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (citing In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown"); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing Briscoe).

Section 1129(a)(1) of the Bankruptcy Code requires that the Court find that the plan "complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).

---

[2] Section I.A.160 of the Plan provides that: "Requisite Consenting Noteholders Professionals Fees/Expenses shall mean all unpaid fees and expenses incurred pursuant to engagement letters (as such letters have been amended) with the Debtors and, if no engagement letter is in effect, all reasonable and documented fees and expenses of the Requisite Consenting Noteholders Professionals incurred prior to the Effective Date in connection with the Debtors' restructuring; provided that the reasonable and documented fees and expenses payable by the Debtors of (i) Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP shall not exceed $150,000, (ii) Kirkland & Ellis LLP shall not exceed $4,500,000, (iii) Millstein & Co. LP shall not exceed $4,000,000, (iv) Blackstone Advisory Partners, L.P., solely with respect to its restructuring and discretionary fees, shall not exceed $3,000,000, and (v) Houlihan Lokey Capital, Inc., solely with respect to its restructuring fee, shall not exceed $7,000,000."

5

Section 1129(a)(2) provides that in order to be confirmable, the proponent of the plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). Section 1129(a)(4) requires that the Court exercise control over the fees and costs related to the Chapter 11 case. 11 U.S.C. §1129(a)(4). This section of the Bankruptcy Code is designed to ensure "compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan." See In re Journal Register Co., 407 B.R. 520, 537 (Bankr. S.D.N.Y. 2009) (internal quotation omitted) .

For the reasons set forth below, the Debtors have not met their burden of proof to show that the Plan satisfies the confirmation standards of Section 1129 of the Bankruptcy Code.

B.    **The Court Should Not Approve Payments to the Requisite Consenting Noteholders Under Either the PSA or the Plan Because They Are Not Authorized Under Section 503(b) of the Bankruptcy Code.**

The provisions in both the PSA and the Plan are inappropriate avenues for the Court to allow the payment of the "reasonable and documented" professional fees of the Requisite Consenting Noteholders. PSA at 4.01(j) and Plan at Sections II.A.1.d and I.A.160. Pursuant to the PSA, the Debtors are seeking Court approval of the payment of these fees and expenses, in full and in cash, "incurred in connection with the Debtors restructuring" since the commencement of the case. PSA at 4.01(j). Should the Court not approve these fees under the PSA, the Debtors seek their approval in the Plan as administrative expenses "in light of the substantial contribution that each of the Requisite Consenting Noteholders and their respective . . . Professionals have made to the Chapter 11 Cases resulting in an actual and demonstrable benefit to the Estates and all creditors" without the Requisite Consenting Noteholders having to meet their evidentiary burden for making a substantial contribution under Section 503(b) of the

Bankruptcy Code. Plan at Section II.A.1.d. Under both the PSA and the Plan the Debtors, and not the Court, would determine the reasonableness of the fees.

A plan support agreement is an agreement among a debtor and its significant creditors reflecting the material terms and framework for the plan of reorganization. See In re Genco Shipping & Trading Ltd. et al., 509 B.R. 455, 460 (Bankr. S.D.N.Y. 2014). Approval of a plan support agreement, however, does not assure that a plan embodying its terms will be confirmed. Id.; In re Residential Capital, LLC ("ResCap"), 2013 WL 3286198, at *2-3 (Bankr. S.D.N.Y. June 27, 2013). That issue is addressed at the confirmation hearing in a distinct inquiry which examines whether the plan satisfies the applicable standard under the Bankruptcy Code. Genco, 509 B.R. at 460 (citing ResCap, 2013 WL 3286198, at *2-3).

The Debtors argue that the agreement to pay these professional fees and expenses fall within their business judgment for assessing transactions outside the ordinary course of business under Bankruptcy Code Section 363(b). This is an incorrect analysis. The Debtors have defined these professional fees and expenses as administrative expenses in the Plan. The Bankruptcy Code has specific provisions pertaining to the reimbursement of these types of administrative expenses – Section 503(b) – which provides that "after notice and a hearing" there shall be allowed administrative expenses, including "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4)" incurred by a creditor in making a substantial contribution in a Chapter 11 case. 11 U.S.C. § 503(b)(3)(D).

The plain meaning of the Bankruptcy Code's text is clear and determinative. The "general language of a [Bankruptcy Code] statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." RadLAX Gateway Hotel, LLC v. Amalagamated Bank, 132 S. Ct. 2065, 2071

7

(2012) (internal quotation, citation, and modification omitted).  This rule "is particularly true where … Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."  Id. (internal quotation and citation omitted); see also In re Keren Ltd. P'ship, 189 F.3d 86 (2d Cir. 1999).  So too here, where Congress has enacted Section 503(b) to govern administrative expense payments from the bankruptcy estate, the broader business judgment rule of Section 363(b) should not apply.  See In re Lehman Bros. Holdings, Inc., 508 B.R. 283, 289 (S.D.N.Y. 2014) (Section 503(b) is the exclusive avenue for payment of administrative expenses).

In Lehman, the District Court, in citing and following Radlax, held that the specific provisions governing creditor reimbursement provided for in Section 503(b), with a few specific exceptions, is the exclusive avenue for the payment of administrative expenses and that the federal scheme cannot remain comprehensive if interested parties are free to "tweak" the law to fit their preferences.  Id. at 294 (quotation in original).  Here, the payment provisions in both the PSA and in the Plan conflict with the statutory standards and procedures for payment of administrative expenses because they authorize certain creditors to be paid administrative expenses without the necessity of filing an application and meeting their evidentiary burden for payment under Section 503(b).  Id. generally.  Certainly, if Sections 1123 and 1129 of the Bankruptcy Code, which were at issue in Lehman, aren't excepted from this rule, there is no logical reason that Section 363 and the broad business judgment rule should escape the same treatment.  Neither the PSA nor the Plan can "short circuit the process by effectively deeming an entity to have made a substantial contribution" without an application and a determination by the Court.  Id. at 294.

In addition, the total amount of fees and expenses at issue are unknown and the Debtors have inappropriately delegated to themselves the sole right to review these undisclosed fees and expenses. In so doing they seek to usurp the Court's authority to review and approve the fee requests under the appropriate statutory standards. See In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (professionals cannot settle fee requests among themselves because it undermines the duties of the judicial and executive branches to review bankruptcy fees).

The Court has an independent burden to review fee applications and serves a vitally important gate-keeping role in (i) enforcing the Bankruptcy Code's requirements that only reasonable fees be approved and paid and (ii) maintaining public confidence in the bankruptcy system itself. In re Temple Ret. Cmty., Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989); see also In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) ("the judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."). Lastly, other parties in interest have the right under the Bankruptcy Code to review and object to fee applications. McGuirl v. White, 86 F.3d 1232, 1246 (D.C. Cir. 1996) ("many parties including the United States Trustee and creditors, as well as the bankruptcy court itself, have the right to object to fee applications.").

Accordingly, these professional fees and expenses cannot be approved unless and until the Requisite Consenting Noteholders file an application with the Court and demonstrate to the Court's satisfaction that they made a "substantial contribution" in the case pursuant to Section 503(b)(3)(D). See generally, Lehman. To the degree that a "substantial contribution" is proven, then the standards as set forth in Section 330 of the Bankruptcy Code apply in determining the extent the fees and expenses of a professional are reimbursable under Section 503(b)(4). See,

9

e.g., In re Wind N' Wave, 509 F.3d 938, 944 (9th Cir. 2007); In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir. 2000).

## CONCLUSION

WHEREFORE, the United States Trustee requests that the Court (i) deny the provisions in the PSA and in the Plan that permit fees and expenses to be paid to the Requisite Consenting Noteholders' professionals without full compliance with the requirements of Section 503(b) and (ii) grant such other relief as is just.


Dated: New York, New York
       May 20, 2015

                                          Respectfully submitted,

                                          WILLIAM K. HARRINGTON,
                                          UNITED STATES TRUSTEE


                              By:    /s/ Susan D. Golden
                                    Susan D. Golden
                                    Trial Attorney
                                    201 Varick Street, Suite 1006
                                    New York, New York 10014
                                    Tel. No. (212) 510-0500
                                    Fax No. (212) 668-2255