Hearing Date and Time:  June 3, 2015 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  May 20, 2015 at 12:00 p.m. (Prevailing Eastern Time)

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Scott J. Greenberg
Michael J. Cohen
George R. Howard

- and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Michael A. Platt (admitted *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re:                                                         :   Chapter 11
                                                               :
NII Holdings, Inc., et al.,[1]                                 :   Case No. 14-12611 (SCC)
                                                               :
                    Debtors.                                   :   (Jointly Administered)
                                                               :
---------------------------------------------------------------x

**REPLY OF DEBTORS AND DEBTORS IN POSSESSION TO:  (I) OBJECTIONS
OF THE U.S. TRUSTEE TO THE DEBTORS' PSA MOTION AND
CHAPTER 11 PLAN; AND (II) LIMITED OBJECTION AND RESERVATION
OF RIGHTS OF THE CAPCO 2021 GROUP TO THE DEBTORS' PSA MOTION**

---

[1] The Debtors in the jointly administered bankruptcy cases are comprised of the following thirteen entities (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses):  NII Holdings, Inc. (1412); Nextel International (Services), Ltd. (6566); NII Capital Corp. (6843); NII Aviation, Inc. (6551); NII Funding Corp. (6265); NII Global Holdings, Inc. (1283); NII International Telecom S.C.A. (7498); NII International Holdings S.à r.l. (N/A); NII International Services S.à r.l. (6081); Airfone Holdings, LLC (1746); McCaw International (Brazil), LLC (1850); NII Mercosur, LLC (4079); and NIU Holdings LLC (5902).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1875 Explorer Street, Suite 800, Reston, VA 20190.

NAI-1500361820v1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this reply (the "Reply") to (i) the Objection of the United States Trustee to Plan Support Agreement and First Amended Plan of Reorganization [Docket No. 743] (the "UST Objection") filed by the United States Trustee (the "U.S. Trustee") and (ii) the limited objection and reservation of rights [Docket No. 742] (the "Capco 2021 Objection" and, together with the UST Objection, the "Objections") filed by the Ad Hoc Group of NII Capital 2021 Noteholders (the "Capco 2021 Group") to the *Motion of the Debtors and Debtors in Possession for an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Them to Enter into and Perform Under a Plan Support Agreement* [Docket No. 590] (the "PSA Motion").[2]

**PRELIMINARY STATEMENT**

1.  The UST Objection, the sole substantive objection to the PSA, appears to only take issue with a single provision of the PSA — the proposed payment of the Requisite Consenting Noteholders' Fees and Expenses (as defined below).  Importantly, the UST Objection does not dispute that (a) the PSA reflects a settlement of complex inter-estate and inter-creditor disputes and significant issues relevant to the First Amended Joint Plan of Reorganization Proposed by the Plan Debtors and Debtors in Possession and the Official Committee of Unsecured Creditors (the "Plan") that have been the subject of extensive and vigorous negotiations beginning prepetition and continuing postpetition, absent which these chapter 11 cases would require extensive and potentially prohibitively expensive litigation to the detriment of all stakeholders, (b) the parties to the PSA have taken substantial steps in performing the PSA to date that have significantly benefited the Debtors' estates and (c) the Debtors' entry into the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the PSA Motion.

PSA was a reasonable and appropriate exercise of the Debtors' business judgment. Instead, the UST Objection to the PSA Motion is based on a narrow and overly technical reading of section 503(b) of the Bankruptcy Code. Similarly, the U.S. Trustee's objection to confirmation of the Plan is focused solely on the narrow issue of the payment of the Requisite Consenting Noteholders' Fees and Expenses pursuant to the Plan, to the extent such fees and expenses are not paid pursuant to an order approving the Debtors' entry into, and performance under, the PSA. As a whole, the UST Objection ignores relevant case law in this District that supports the payment of the Requisite Consenting Noteholders' Fees and Expenses, whether pursuant to the PSA or the Plan, and should be overruled in its entirety.

2. In contrast to the UST Objection, the Capco 2021 Objection fails to articulate any objection to the PSA, asserting instead that the PSA should not be approved because the Plan is "unconfirmable" and requesting that the PSA Motion be heard after the hearing on confirmation of the Plan. The Debtors are amenable to the PSA Motion being heard after confirmation of the Plan subject to the Court's guidance at the Status Conference to be held on June 1, 2015, but to the extent the Plan is confirmed, the sole basis for the Capco 2021 Objection will be eliminated and the Capco 2021 Objection should be overruled.

### REPLY

A. **The UST Objection Should be Overruled**

3. In the exercise of their business judgment, the Debtors have agreed to pay, subject to the Court's approval, certain of the reasonable and documented fees and expenses of advisors to Aurelius, Capital Group, and the Luxco Group (collectively, the "<u>Requisite Consenting Noteholders</u>") incurred in connection with the Debtors' bankruptcy cases (the "<u>Requisite Consenting Noteholders' Fees and Expenses</u>").

4. The Requisite Consenting Noteholders, consistent with their obligations under the PSA, have not in any way impeded or interfered with the Debtors' efforts to solicit acceptances of the Plan or in the Debtors' march towards confirmation of the Plan and approval of the Settlement contained therein, nor have the Requisite Consenting Noteholders in any way disrupted the sale of the Debtors' operations in Mexico, which was completed on April 30, 2015. To the contrary, the Requisite Consenting Noteholders continue to contribute materially to the advancement of the Debtors' chapter 11 cases by, among other things, (a) continuing to review and negotiate documents essential to the Debtors' restructuring, such as the Plan, (b) undertaking significant analysis and diligence with respect to the Settled Claims and Disputes and negotiating and achieving consensus around the terms of the Settlement (both as defined in the Debtors' brief in support of confirmation, which is being filed contemporaneously herewith), (c) responding to the Capco 2021 Group's efforts to hinder the Debtors' restructuring,[3] (d) supporting the Mexico Sale Transaction, which yielded the Debtors' estates an additional $392 million of value as compared to the value contemplated by the Prior Plan and (e) providing $350 million in debtor-in-possession financing on market terms at an important juncture in the Chapter 11 Cases. These efforts have, at times, required significant involvement from both the legal and financial advisors of the Requisite Consenting Noteholders.

5. Accordingly, and as set forth below, the Debtors payment of the Requisite Consenting Noteholders' Fees and Expenses is more than warranted as a reasonable exercise of their business judgment.

---

[3] For example, the Capco 2021 Group's motion, dated March 13, 2015, requesting that the Court direct the Debtors to participate in mediation [Docket No. 522] and the objections to certain claims, filed May 4, 2015 [Docket Nos. 685 & 686].

### 1. The Debtors Should be Authorized to Pay the Requisite Consenting Noteholders' Fees and Expenses Pursuant to the PSA

6.   The U.S. Trustee has asserted that the fees and expenses reimbursement obligation under the PSA in exchange for the Requisite Consenting Noteholders' performance of their obligations thereunder is not permissible absent an application, notice and hearing pursuant to the "substantial contribution" standard under sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code.  In doing so, the U.S. Trustee ignores numerous examples in this District of orders approving a debtor's payment of such fees in the exercise of the debtor's business judgment pursuant to section 363(b) of the Bankruptcy Code in connection with plan or restructuring support agreements.  Instead, the U.S. Trustee argues that, because there is a specific provision of the Bankruptcy Code — section 503(b) — dealing with the reimbursement of actual and necessary expenses of administering a bankruptcy case, which conceivably includes professional fees and expenses of creditors, the Debtors cannot agree to pay the fees and expenses of the Requisite Consenting Noteholders pursuant to section 363(b) of the Bankruptcy Code.  See UST Obj. at 7–8.[4]

7.   Significantly, a case in this District that confronted this very argument held against the U.S. Trustee.  See U.S. Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel

---

[4]   In attempting to create a conflict between sections 363(b) and 503(b) of the Bankruptcy Code where none exists, the U.S. Trustee relies on cases and statutes that are inapplicable here.  For example, in Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings, Inc.), 508 B.R. 283 (S.D.N.Y. 2014), the District Court for the Southern District of New York invalidated a plan provision that provided for the payment of professional fees incurred by individual committee members in their capacity as members of the creditors' committee because the plan could not be used to re-write section 503 of the Bankruptcy Code to pay for fees and expenses that Congress "glaring[ly] excluded" from section 503(b)(3).  Id. at 290.  Similarly, in Cushman & Wakefield v. Keren P'ship (In re Keren P'ship), 189 F.3d 86 (2d Cir. 1999), the Court of Appeals for the Second Circuit held that a firm that did not qualify as an estate professional and therefore could not be compensated under section 503(b)(2) of the Bankruptcy Code, likewise could not be reimbursed under section 503(b)(1)(A) of the Bankruptcy Code where the protections of sections 327 and 330 did not apply.  Id. at 88.  Both of these cases pertained to conflicts within section 503 of the Bankruptcy Code, applied to *retained* professionals, and with respect to provisions where there are very clear Congressional policy concerns at play.

14-12611-scc    Doc 794    Filed 05/29/15    Entered 05/29/15 20:24:59    Main Document
                                        Pg 6 of 13


Corp.), No. 02 Civ. 2854 (MBM), 2003 U.S. Dist. LEXIS 12909, at *11 (S.D.N.Y. July 28, 2003) ("[S]ubsections 503(b)(3)(D) and (b)(4) <u>do not bar a bankruptcy court from allowing a debtor in possession to reimburse a creditor for professional fees</u> – provided, of course, that the standard for allowing transactions under § 363(b) has been met.") (emphasis added).  In <u>Bethlehem Steel</u>, the debtors agreed to reimburse one of their unions for certain professional fees and expenses that would be incurred by it during the bankruptcy cases in connection with participating in plan discussions.  <u>Id.</u> at *4.  In affirming the bankruptcy court's approval of the fee arrangement, the U.S. District Court for the Southern District of New York rejected the identical argument put forth by the U.S. Trustee here that the "sole statutory avenue for an individual creditor to have its professional fees reimbursed is as an administrative expense," as well as the argument that relying on the general provisions of section 363(b) of the Bankruptcy Code "threatens to create an exception that will swallow the Bankruptcy Code's detailed language limiting administrative expenses and professional fees."  <u>Id.</u> at *23.  After reconciling these two provisions, the court upheld the debtors' decision to pay the creditor's fees and expenses because it was "a good business reason and would help develop a reorganization plan."  <u>Id.</u> at *38.[5]

       8.       Other courts have also recognized that section 503(b) of the Bankruptcy Code is not the exclusive avenue for a debtor's payment of creditors' fees and expenses.  <u>See e.g.</u>, <u>In re Adelphia Commc'ns Corp.</u>, 441 B.R. 6, 12–13 (Bankr. S.D.N.Y. 2010) (approving payment of creditors' professional fees, which were estimated at $88 million, without the need for

---

[5] The outcome of <u>Bethlehem Steel</u> is not changed by the Supreme Court's decision in <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 132 S. Ct. 2065, 2071 (2012).  While the Supreme Court recognized that the general language of the Bankruptcy Code cannot be held to apply to a matter "specifically dealt with in another part of the same enactment," the Supreme Court also acknowledged that "the general/specific canon <u>is not an absolute rule</u>, but is merely a strong indication of statutory meaning <u>that can be overcome by textual indications that point in the other direction</u>."  <u>Id.</u> at 2072 (emphasis added).  Thus, the fact that sections 503(b)(3)(D) and (b)(4) specifically provide for the payment of a creditor's fees and expenses does not preclude the Court from approving the payment of such fees and expenses under other sections of the Bankruptcy Code.

submitting substantial contribution applications because "section 503(b) does not provide, in words or substance, that it is the *only* way by which fees of this character may be absorbed by an estate. Thus the Court is free to look at other provisions of the Code that might also authorize payment") (emphasis in original).

9.  Here, the Debtors are seeking to pay the Requisite Consenting Noteholders' Fees and Expenses pursuant to the terms of the PSA. Courts in this district and elsewhere routinely approve debtors' decisions to pay creditors' fees and expenses without requiring a fee application or showing of substantial contribution in connection with similar arrangements. See e.g., In re Altegrity, Inc., No. 15-10226 (LSS) (Bankr. D. Del. Mar. 16, 2015) (approving payment of fees and expenses pursuant to section 363(b) of the Bankruptcy Code under assumed restructuring support agreement without requiring a showing of substantial contribution); In re Legend Parent, Inc., No. 14-10701 (RG) (Bankr. S.D.N.Y. July 21, 2014) (hereafter, "Legend Parent") (confirming plan that provided for payment of fees and expenses of parties to plan support agreement "without the need of such parties to file fee applications with the Bankruptcy Court or motions seeking payment of such fees as administrative claims pursuant to Bankruptcy Code section 503(b)"); In re Genco Shipping & Trading, Ltd., No. 14-11108 (SHL) (Bankr. S.D.N.Y. Apr. 21, 2014) (hereafter, "Genco") (confirming plan that provided for the payment of fees and expenses of certain supporting noteholders in accordance with a restructuring support agreement);[6] see also In re Terrestar Networks Inc., No. 10-15446 (SHL)

---

[6] See also In re Dendreon Corp., No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) (overruling U.S. Trustee's objection that creditors must seek reimbursement for fees and expenses under sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code and approving payment of unsecured noteholders' professional fees and expenses pursuant to plan support agreements under section 363(b) of the Bankruptcy Code subject to providing the creditors' committee and U.S. Trustee with copies of invoices); In re MPM Silicones, LLC, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 23, 2014) (approving payment of creditors' fees and expenses in connection with assumed restructuring support agreement as an "actual and necessary cost and expense to preserve the Debtors' estates" without further application to the court); In re USEC Inc., No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) (approving the assumption of plan support agreements

(Bankr. S.D.N.Y. Oct. 19, 2010) (approving stipulation pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 that provided for the debtors to reimburse the members of an ad hoc group of noteholders up to $2 million of professional fees by wire transfer upon entry of court orders approving various settlements).

10. Here, the Debtors' agreement to pay the Requisite Consenting Noteholders' Fees and Expenses is more than warranted in light of the robust level of support provided by the Requisite Consenting Noteholders and their extensive performance of their numerous obligations under the PSA and in support of the Plan and the Settlement, without which the Debtors would have been unable to propose the Plan for near-term confirmation. The U.S. Trustee has not argued, nor can it be argued, that this was not a valid exercise of the Debtors' reasonable business judgment. Securing the ongoing commitments of the Requisite Consenting Noteholders as part of the PSA has proven to be of direct benefit to the Debtors, their estates and the success of these chapter 11 cases as evidenced by the successful sale of the Debtors' operations in Mexico and the development and proposal of the Plan, which was approved by approximately 95% in number and 92% in amount of the Debtors' creditors holding claims in voting classes. See Voting Decl., Exs. A & B.

11. Additionally, as set forth in detail in the Debtors' brief in support of confirmation of the Plan, the Plan now filed with the Court, and the Settlement that is incorporated therein, were the result of arms'-length, hard fought and at times contentious negotiations and give the Debtors the best chance at quickly emerging from bankruptcy and maximizing value for their stakeholders. An integral component of the Settlement, as well as a condition precedent to the effective date of the Plan, is the Debtors' agreement to pay the

---

and the payment of creditor fees and expenses without the need for further application or approval by the bankruptcy court)..

NAI-1500361820v1                                                  -8-

Requisite Consenting Noteholders' Fees and Expenses. Thus, payment of the Requisite Consenting Noteholders' Fees and Expenses should be approved as a sound exercise of the Debtors' business judgment pursuant to section 363(b) of the Bankruptcy Code without the need for a showing of substantial contribution and separate application, notice or hearing.

### 2. The Debtors are Authorized to Pay the Requisite Consenting Noteholders' Fees and Expenses Pursuant to the Plan

12. In the event that the Court considers payment of the Requisite Consenting Noteholders' Fees and Expenses pursuant to the Plan, as opposed to the PSA, the Debtors submit that the Requisite Consenting Noteholders' efforts in these Chapter 11 Cases have resulted in an actual and demonstrable benefit to the Debtors' estates and all creditors, as discussed above and as demonstrated by the overwhelming acceptance of the Plan, that supports the payment of such fees. However, the Court need not strictly adhere to section 503(b) of the Bankruptcy Code in considering the payment of the Requisite Consenting Noteholders' Fees and Expenses pursuant to the Plan.

13. Rather, Courts in this District have approved the Debtors' payment of professionals' reasonable fees and expenses as a bargained for term of a global settlement integrated into a chapter 11 plan of reorganization. See, e.g., In re Adelphia Commc'ns Corp., 441 B.R. 6, 9, 11 (Bankr. S.D.N.Y. 2010) (approving such an arrangement); see also In re Lyondell Chemical Co., No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 17, 2010) (approving settlement agreement pursuant to Bankruptcy Rule 9019 that provided for the payment of up to $1 million of professional fees of certain noteholders as an administrative priority claim pursuant to a plan, without the need for further application or a showing of substantial contribution). cf. In re AMR Corp., 497 B.R. 690 (Bankr. S.D.N.Y. 2013) (approving debtors' payment of professionals' fees pursuant to a consensual plan); In re Innkeepers USA Trust, No. 10-13800

(SCC) (Bankr. S.D.N.Y. June 29, 2011) (authorizing payment pursuant to confirmed plan of $3.5 million to ad hoc committee of preferred shareholders for professional fees as an "Allowed administrative priority Claim" payable on the effective date of the plan); Genco; Legend Parent; see also 11 U.S.C. §§ 1123(b)(6), 1129(a)(4).  Here, the agreement to pay the Requisite Consenting Noteholders' Fees and Expenses is part and parcel with the Settlement.  If such fees and expenses are not paid in connection with the approval of the PSA, then the Requisite Consenting Noteholders' Fees and Expenses must be paid in connection with the Plan in order to effectuate the Settlement and permit the Plan to go effective.  See Plan, Section VII.B.7.  Thus, the payment of the Requisite Consenting Noteholders' Fees and Expenses pursuant to the Plan is essential, in the event that such fees and expenses are not paid pursuant to the PSA.

14.    As clearly established by the precedent in this District, the Debtors may determine, as a reasonable exercise of their business judgment, to pay the Requisite Consenting Noteholders' Fees and Expenses in connection with PSA or, in the alternative and to the extent not paid in connection with the PSA, the Plan.  In the event the Court determines that a showing of a substantial contribution to the Chapter 11 Cases also is required, the Debtors respectfully submit that such a showing has been made by the Requisite Consenting Noteholders' efforts in these Chapter 11 Cases to date.[7]  Accordingly, the UST Objection should be overruled.

    **3.**    **The Debtors are Not Required to Provide Estimates of, or Limits on, the Requisite Consenting Noteholders' Fees and Expenses in Either the PSA or the Plan**

15.    The U.S. Trustee also criticizes the PSA and the Plan for not including an estimate of or cap on the amount of fees payable to certain of the Requisite Consenting

---

[7] The Debtors understand that in the event the Court approves the payment of the Requisite Consenting Noteholders' Fees and Expenses under the PSA or in connection with approval of the Settlement embodied in the Plan, the Requisite Consenting Noteholders are prepared to consent to a revision of the Plan to delete the reference in Art. II.A.1.d. of the Plan to the "substantial contribution" of the Requisite Consenting Noteholders.

NAI-1500361820v1                                  -10-

Noteholders  See UST Obj. at 5, 9.  Other courts that have approved the payment of creditors' fees and expenses as part of a plan or plan support agreement have not required estimates of, or caps on, such fees to be included in the plan or plan support agreement.  See, e.g., Adelphia at 9, n.2 (the plan did not include an estimate of nor provide a cap on the fees and expenses of the parties to the plan support agreement, though the court was provided with estimates of such fees); Altegrity (the court-approved restructuring support agreement placed no cap on nor provided an estimate of "all reasonable and documented fees and expenses" of the consenting creditors' professionals); Legend Parent (neither the court-approved plan support agreement nor plan included an estimate of nor provided a cap on the required consenting noteholders' professionals' fees and expenses); Genco (neither the court-approved restructuring support agreement nor plan provided an estimate of or cap on the supporting noteholders' professionals' fees and expenses).  As in the examples cited, the Debtors here, also have only committed to paying the "reasonable and documented fees and expenses" of the Requisite Consenting Noteholders (see  PSA § 4.01(j)).  Nonetheless, the Debtors reached out to the U.S. Trustee in an effort to achieve a consensual resolution of this issue, but none has been achieved to date.

    **B.**    **The Capco 2021 Objection Should be Overruled**

    16.    The Capco 2021 Objection is simply a request to deny the PSA Motion if the Plan is not confirmed (or is withdrawn) or the PSA is terminated.  Therefore, the Capco 2021 Objection requests that the Court reserve ruling on the PSA Motion until after the hearing on the confirmation of the Plan and includes a general reservation of rights to contest the PSA Motion.  While the Debtors do not contest the request to hear the PSA Motion after the Court has heard argument with respect to confirmation of the Plan, subject to the Court's guidance at the Status Conference to be held on June 1, 2015, to the extent the Capco 2021 Group attempts to later oppose the PSA Motion on terms not contained in the Capco 2021 Objection, the Debtors

respectfully request that the Court decline to consider any such later opposition as untimely and not appropriately before the Court for consideration. The PSA Motion was filed on March 24, 2015, and set an objection deadline of May 20, 2015. The Capco 2021 Group therefore had more than *57 days* to prepare and file a substantive objection if it wished to do so — substantially more time than the Capco 2021 Group would have had to file an objection had the PSA Motion been filed on normal 21 days' notice. The Debtors should not be prejudiced, and the Capco 2021 Group should not be rewarded, for its failure to file a substantive objection in the substantial time already allotted for timely objections to the PSA Motion. Finally, in the event that the Plan is confirmed, the Capco 2021 Objection should be overruled because the only objection to the PSA raised in the Capco 2021 Objection is that the Plan is unconfirmable.[8]

---

[8] The Debtors' response to the Capco 2021 Objection's reference to the Plan as unconfirmable is provided in the Debtors' brief in support of confirmation of the Plan.

## **CONCLUSION**

17. For the reasons set forth above, the Debtors submit that the Objections should be overruled in their entirety.

| | |
|---|---|
| Dated: May 29, 2015<br>New York, New York | Respectfully submitted,<br><br>  /s/   Scott J. Greenberg<br>Scott J. Greenberg<br>Michael J. Cohen<br>George R. Howard<br>JONES DAY<br>222 East 41st Street<br>New York, New York  10017<br>Telephone:  (212) 326-3939<br>Facsimile:  (212) 755-7306<br><br> - and -<br><br>David G. Heiman (admitted *pro hac vice*)<br>Carl E. Black (admitted *pro hac vice*)<br>Michael A. Platt (admitted *pro hac vice*)<br>JONES DAY<br>North Point<br>901 Lakeside Avenue<br>Cleveland, Ohio  44114<br>Telephone:  (216) 586-3939<br>Facsimile:  (216) 579-0212<br><br>ATTORNEYS FOR DEBTORS AND<br>DEBTORS IN POSSESSION |